**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| PRESTON WOOD & ASSOCIATES, LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 4:16-cv-01427 |
| | § | |
| RZ ENTERPRISES USA, INC. D/B/A | § | Jury Trial Demanded |
| OPPIDAN HOMES, et al., | § | |
| | § | |
| Defendants. | § | |
| | § | |

## FIRST AMENDED COMPLAINT

Plaintiff Preston Wood & Associates, LLC ("PWA"), complains of Defendants RZ Enterprises USA, Inc. d/b/a Oppidan Homes ("Oppidan"), Oppidan Homes VI Ltd. ("Oppidan 6"), Oppidan Homes VI GP, LLC ("Oppidan 6 GP"), Oppidan Homes VIII Ltd. ("Oppidan 8"), Oppidan Homes VIII GP, LLC ("Oppidan 8 GP"), Oppidan Homes IX Ltd. ("Oppidan 9"), Oppidan Homes IX GP, LLC ("Oppidan 9 GC"), Oppidan Homes XVII Ltd. ("Oppidan 17"), Oppidan Homes XVII GP, LLC ("Oppidan 17 GC"),  RZ Holdings, Inc. ("RZ Holdings"), Aviv Arieli ("Arieli"), Adi Reisner ("Reisner"), Cameron Architects, Inc. ("Cameron"), Stephen Cameron ("Stephen Cameron"),  UL, Inc. d/b/a Urban Living and d/b/a Urban Project Management ("Urban Living"), Vinod Ramani ("Ramani"), and the partnership of Urban Living and Cameron Architects (the "UL-CA Partnership").  For its causes of action, PWA shows the following:

## THE PARTIES

1.      PWA is a Texas Limited Liability Corporation.

2.      Oppidan is a Texas corporation that has appeared and answered herein.

3.      Oppidan 6 is a Texas Limited Partnership.  It may be served with process through its registered agent, Abe S. Goren, 2500 Fannin Street, Houston, Texas 77002.

4.      Oppidan 6 GP is a Texas Limited Liability Company.  It may be served with process through its registered agent, Abe S. Goren, 2500 Fannin Street, Houston, Texas 77002.

5.      Oppidan 8 is a Texas Limited Partnership that has appeared and answered herein.

6.      Oppidan 8 GP is a Texas Limited Liability Company.  It may be served with process through its registered agent, Abe S. Goren, 2500 Fannin Street, Houston, Texas 77002.

7.      Oppidan 9 is a Texas Limited Partnership.  It may be served with process through its registered agent, Abe S. Goren, 2500 Fannin Street, Houston, Texas 77002.

8.      Oppidan 9 GP is a Texas Limited Liability Company.  It may be served with process through its registered agent, Abe S. Goren, 2500 Fannin Street, Houston, Texas 77002.

9.      Oppidan 17 is a Texas Limited Partnership.  It may be served with process through its registered agent, Abe S. Goren, 2500 Fannin Street, Houston, Texas 77002.

10.     Oppidan 17 GP is a Texas Limited Liability Company.  It may be served with process through its registered agent, Abe S. Goren, 2500 Fannin Street, Houston, Texas 77002.

11.     RZ Holdings is a Texas Limited Liability Company.  It may be served with process through its registered agent, Abe S. Goren, 2500 Fannin Street, Houston, Texas 77002.

12.     Arieli is an individual residing in this district, and may be served with process at his place of business, 5909 West Loop South, Suite 580, Bellaire, Texas 77401.

13.     Reisner is an individual who may be found is this district, and may be served with process at his place of business, 5909 West Loop South, Suite 580, Bellaire, Texas 77401.  Alternatively, as he is an alien who does not maintain an agent for service of process, because he has done business in and committed torts within the State of Texas, he may be served with process through the Texas Secretary of State, with further service on him pursuant to the Hague Convention at his place of business in Tel-Avi, Israel, 5 Ha-Hilzon St. Ramat Gan 5252269.

14.     Cameron is a Texas corporation that has appeared and answered herein.

15.     Stephen Cameron is an individual residing in this district, and may be served with process at his place of business, 1535 West Loop South, Suite 322, Houston, Texas 77027.

16.     Urban Living is a Texas corporation that has appeared and answered herein.

17.     Ramani is an individual residing in this district, and may be served with process at his place of business, 5023 Washington Avenue, Houston, Texas 77007.

18.     The UL-CA Partnership is a partnership between Urban Living and Cameron Architects.  It may be served with process by serving either Stephen Cameron, as an officer of Cameron Architects, at his place of business, 1535 West Loop South, Suite 322, Houston, Texas 77027; or by serving Vinod Ramani, as an officer of Urban Living, at his place of business, 5023 Washington Avenue, Houston, Texas 77007.

## JURISDICTION AND VENUE

19.     This is copyright infringement action.  This court has exclusive federal jurisdiction over the subject matter of Plaintiff's claim under 28 U.S.C. § 1338.  This Court also has supplemental jurisdiction over PWA's claims for declaratory relief.

20.     Venue in this District is proper under 28 U.S.C. § 1400(a) because defendants may be found in this district.

## FACTUAL BACKGROUND

Parties

21.     PWA is a design firm in the business of creating and licensing the use of "architectural works" (as that term is used in Title 17, United States Code) and technical drawings depicting such architectural works that were created by PWA or its predecessors.

22.     Oppidan is a real estate developer.  At all material times, Oppidan has had the power and ability to supervise and control the activities of Oppidan 6, Oppidan 6 GP, Oppidan 8, Oppidan 8 GP, Oppidan 9, Oppidan 9 GP, Oppidan 17, and Oppidan 17 GP, and in fact has exercised such power and ability.  Oppidan's ability and power to supervise and control the activities of Oppidan 6, Oppidan 6 GP, Oppidan 8, Oppidan 8 GP, Oppidan 9, Oppidan 9 GP, Oppidan 17, and Oppidan 17 GP includes the activities of those parties that are complained of in this case.

23.     On information and belief, Oppidan has had a financial interest in the activities of Oppidan 6, Oppidan 6 GP, Oppidan 8, Oppidan 8 GP, Oppidan 9, Oppidan 9 GP, Oppidan 17, and Oppidan 17 GP, including those activities that are complained of herein.

24.     Oppidan 6 GP is the general partner of Oppidan 6.

25.     Oppidan 8 GP is the general partner of Oppidan 8.

26.     Oppidan 9 GP is the general partner of Oppidan 9.

27.     Oppidan 17 GP is the general partner of Oppidan 17.

28.     RZ Holdings is a real estate developer.  At all material times, RZ Holdings has had the power and ability to supervise and control the activities of Oppidan 6, Oppidan 6 GP, Oppidan 9, and Oppidan 9 GP.

29.     On information and belief, RZ Holdings has had a financial interest in the activities of Oppidan 6, Oppidan 6 GP, Oppidan 9, and Oppidan 9 GP, including their activities that are complained of herein.

30.     Arieli is an officer and director of Oppidan and RZ Holdings, and is a manager of Oppidan 6, Oppidan 6 GP, Oppidan 8, Oppidan 8 GP, Oppidan 9, Oppidan 9 GP, Oppidan 17, and Oppidan 17 GP.

31.     At all material times, Arieli has had the power and ability to supervise and control the activities of Oppidan, RZ Holdings, Oppidan 6, Oppidan 6 GP, Oppidan 8, Oppidan 8 GP, Oppidan 9, Oppidan 9 GP, Oppidan 17, and Oppidan 17 GP, and in fact has exercised such power and ability.  Arieli's ability and power to supervise and control the activities of Oppidan, RZ Holdings, Oppidan 6, Oppidan 6 GP, Oppidan 8, Oppidan 8 GP, Oppidan 9, Oppidan 9 GP, Oppidan 17, and Oppidan 17 GP includes the activities of those parties that are complained of herein.

32.      On information and belief, Arieli has had a financial interest in the activities of Oppidan, RZ Holdings, Oppidan 6, Oppidan 6 GP, Oppidan 8, Oppidan 8

GP, Oppidan 9, Oppidan 9 GP, Oppidan 17, and Oppidan 17 GP, including their activities that are complained of herein.

33. Reisner is an officer and director of Oppidan and RZ Holdings.

34. At all material times, Reisner has had the power and ability to supervise and control the activities of Oppidan, RZ Holdings, Oppidan 6, Oppidan 6 GP, Oppidan 8, Oppidan 8 GP, Oppidan 9, Oppidan 9 GP, Oppidan 17, and Oppidan 17 GP, and in fact has exercised such power and ability. Reisner's ability and power to supervise and control the activities of Oppidan, RZ Holdings, Oppidan 6, Oppidan 6 GP, Oppidan 8, Oppidan 8 GP, Oppidan 9, Oppidan 9 GP, Oppidan 17, and Oppidan 17 GP includes the activities of those parties that are complained of herein.

35. On information and belief, Reisner has had a financial interest in the activities of Oppidan, RZ Holdings, Oppidan 6, Oppidan 6 GP, Oppidan 8, Oppidan 8 GP, Oppidan 9, Oppidan 9 GP, Oppidan 17, and Oppidan 17 GP, including their activities that are complained of herein.

36. Cameron is an architectural firm. Stephen Cameron is the CEO of Cameron. At all material times, Stephen Cameron has had the power and ability to supervise and control the activities of Cameron, and in fact has exercised such power and ability. Stephen Cameron's ability and power to supervise and control the activities of Cameron includes Cameron's activities that are complained of herein.

37. Stephen Cameron has had a financial interest in Cameron's activities, including Cameron's activities that are complained of herein.

38. Urban Living is a real estate development firm. Ramani is the CEO of Urban Living.

39.     At all material times, Ramani has had the power and ability to supervise and control the activities of Urban Living, and in fact has exercised such power and ability.   Ramani's ability and power to supervise and control the activities of Urban Living includes Urban Living's activities that are complained of herein.

40.     Ramani has had a financial interest in Urban Living's activities, including Urban Living's activities that are complained of herein.

41.     Since at least February 2014, Urban Living and Cameron Architects have been engaged in a partnership (the "UL-CA Partnership") for the creation, licensing, and further exploitation of architectural plans.

Works in Suit

42.     PWA is owner of all copyrights in the following architectural works and in certain technical drawings depicting such architectural works (hereinafter, the "Copyrighted Works"):

    a.   Buckingham Job 98-044-1937.   PWA has filed applications for registration of its copyrights in this architectural work and in technical drawings depicting this architectural work, has paid the requisite fees, and has deposited the necessary copies of the works with the United States Copyright Office.   The United States Copyright Office has received all such materials, and the applications have been given Case Nos. 1-3431765731 and 1-3431765910.

    b.   Ashford Job 00-258-2262. PWA has filed applications for registration of its copyrights in this architectural work and in technical drawings depicting this architectural work, has paid the requisite fees, and has

deposited the necessary copies of the works with the United States Copyright Office.  The United States Copyright Office has received all such materials, and the applications have been given Case Nos. 1-3431765864 and 1-3431765975. The Ashford Job 00-258-2262 works are derivatives of the Buckingham Job 98-044-1937 works.

c.   Job D5-214. PWA has filed applications for registration of its copyrights in this architectural work and in technical drawings depicting this architectural work, has paid the requisite fees, and has deposited the necessary copies of the works with the United States Copyright Office. The United States Copyright Office has received all such materials, and the applications have been given Case Nos. 1-3431766041 and 1-3431766116. The Job D5-214 works are derivatives of the Buckingham Job 98-044-1937 and Ashford Job 00-258-2262 works.

d.   D8057-2.  PWA has filed applications for registration of its copyrights in this architectural work and in technical drawings depicting this architectural work, has paid the requisite fees, and has deposited the necessary copies of the works with the United States Copyright Office. The United States Copyright Office has received all such materials, and the applications have been given Case Nos. 1-4426459483 and 1-4426459673.

e.   E0042.  PWA has filed applications for registration of its copyrights in this architectural work and in technical drawings depicting this architectural work, has paid the requisite fees, and has deposited the

necessary copies of the works with the United States Copyright Office. The United States Copyright Office has received all such materials, and the applications have been given Case Nos. 1-4426375935 and 1-4426376160.  The E0042 works are derivatives of the D8057-2 works.

f.  <u>E0175-A1.1-V5.</u>   PWA has filed applications for registration of its copyrights in this architectural work and in technical drawings depicting this architectural work, has paid the requisite fees, and has deposited the necessary copies of the works with the United States Copyright Office. The United States Copyright Office has received all such materials, and the applications have been given Case Nos. 1-4426258113 and 1-4426258148.  The E1075-A1.1-V5 works are derivatives of the D8057-2 and E042 works.

g.  <u>E2246-A3.1.</u>  PWA has filed applications for registration of its copyrights in this architectural work and in technical drawings depicting this architectural work, has paid the requisite fees, and has deposited the necessary copies of the works with the United States Copyright Office. The United States Copyright Office has received all such materials, and the applications have been given Case Nos. 1-4434775595 and 1-4434775735.   The E2246-A3.1 works are derivatives of the D8057-2, E042, and E0175 works.

h.  <u>E2066 A2.1.</u>  PWA has filed applications for registration of its copyrights in this architectural work and in technical drawings depicting this architectural work, has paid the requisite fees, and has deposited the

necessary copies of the works with the United States Copyright Office. The United States Copyright Office has received all such materials, and the applications have been given Case Nos. 1-4434663702 and 1-4434663913.  The E2066 A2.1 works are derivatives of the D8057-2, E042, and E0175 works.

i.  00-071-2265A. PWA has filed applications for registration of its copyrights in this architectural work and in technical drawings depicting this architectural work, has paid the requisite fees, and has deposited the necessary copies of the works with the United States Copyright Office. The United States Copyright Office has received all such materials, and the applications have been given Case Nos. 1-4416742791 and 1-4416742981.

j.  D6050 Lot 1057.  PWA has filed applications for registration of its copyrights in this architectural work and in technical drawings depicting this architectural work, has paid the requisite fees, and has deposited the necessary copies of the works with the United States Copyright Office. The United States Copyright Office has received all such materials, and the applications have been given Case Nos. 1-4416743094 and 1-4416809204.  The D6050 Lot 1057 works are derivatives of the 00-071-2265A works.

k.  E1171-B1.1L.  PWA has filed applications for registration of its copyrights in this architectural work and in technical drawings depicting this architectural work, has paid the requisite fees, and has deposited the

10

necessary copies of the works with the United States Copyright Office. The United States Copyright Office has received all such materials, and the applications have been given Case Nos. 1-4434775770 and 1-4434775950.

These works will hereinafter be referred to as the "Copyrighted Works."

43.     Each of the Copyrighted Works is an original work that is copyrightable subject matter under federal law.

PWA – Urban Living Contract

44.     On January 17, 2014, PWA and defendant Urban Living executed a "Design Only / Stock Plan License Agreement" (the "Agreement").

45.     A true and correct copy of the Agreement as executed by the parties is attached as Exhibit 1.

46.     Urban Living never made a written request to renew the Agreement, nor did it ever identify which PWA works it wished to continue using or tender payment for any such renewal.

47.     PWA never agreed to renew the Agreement.

48.     The Agreement therefore automatically terminated no later than January 17, 2015.

49.     During the term of the Agreement, Urban Living did not deliver to PWA a written acknowledgement and agreement to be bound by the terms of the Agreement for each putative Urban Living sublicensee.

50.     During the term of the Agreement, Urban Living did not deliver to PWA an Acknowledgement and Agreement executed by each outside draftsman, designer, engineer, or architect that Urban Living engaged to modify PWA works.

51.     During the term of the Agreement, each outside draftsman, designer, engineer, or architect that Urban Living engaged to modify PWA works did not assign to PWA all copyrights in all derivatives of PWA's works that they created.

52.     During the term of the Agreement, each outside draftsman, designer, engineer, or architect that Urban Living engaged to modify PWA works did not deliver to PWA any modified plans that were based on a PWA work within ten days of the completion of such plans.

53.     By no later than March 4, 2014, the partnership of Urban Living and Cameron Architects was entering into contracts with customers such as Oppidan that envisioned Cameron Architects creating derivatives of PWA's works.  One such proposal and contract is attached as Exhibit 2.

54.     The contract form utilized by the Urban Living / Cameron Architects partnership did not provide that PWA was the sole author of all derivatives of PWA's works.

55.     Instead, this contract form claimed that Cameron Architects and its consultants would retain for themselves the copyrights in all materials they created.

56.     Between January 17, 2014 and the termination of the Agreement (which was no later than January 17, 2015), Urban Living routinely created and distributed two-dimensional derivatives of PWA's works (in the form of floorplans, elevations, and exterior renderings) that were used in marketing and advertising materials, including but

not limited to materials on Urban Living's website.   None of these materials included the PWA Copyright Management Information required under the Agreement.

57.    At all material times, all defendants had actual notice of the terms of the Agreement, including the provisions regarding PWA's copyrights, the conditions precedent to licenses to use PWA's works, the requirements concerning PWA's Copyright Management Information, and provisions governing termination of the Agreement.

Nagle Park Place

58.    Defendants Oppidan, Oppidan 8, Oppidan 8 GP, Arieli, Cameron, Stephen Cameron, Urban Living, Ramani, and the UL-CA Partnership (collectively, the "Nagle Defendants") have each infringed PWA's copyrights in the architectural works and technical drawings copyrights covered by PWA works Buckingham Job 98-044-1937, Ashford Job 00-258-2262, and Job D5-214 described above (hereinafter collectively referred to as the "Nagle Works") through their activities associated with a development known as Nagle Park Place, which is located at 403-411 North Nagle Street, Houston, Texas.   The Nagle Defendants have each committed numerous acts of copyright infringement in their activities associated with Nagle Park Place, including the following:

a.  They have each made copies and/or derivatives of the Nagle Works by creating, or causing to be created, paper and digital drawings and plans for Nagle Park Place that are based on the Nagle Works.

b.  They have each distributed, or caused to be distributed, copies and/or derivatives of the Copyrighted Works by distributing paper and digital drawings and plans based on the Nagle Works for Nagle Park Place.

c. Oppidan, Oppidan 8, and Oppidan 8 GP have made copies and/or derivatives of the Nagle Works by constructing, or causing to be constructed, structures at Nagle Park Place that are based on the Nagle Works.

d. Oppidan, Oppidan 8, Oppidan 8 GP, and Urban Living have sold and have offered for sale structures at Nagle Park Place based on the Nagle Works that are copies and/or derivatives of the Nagle Works.

59. Additionally, in their activities associated with Nagle Park Place, Urban Living, Oppidan, Oppidan 8, and Oppidan 8 GP have created, published and used non-pictorial depictions of structures that are based on the Nagle Works in promotional and advertising materials. They have published and used these infringing materials in the course of advertising the infringing structures, including but not limited to advertising on the Internet. Furthermore, they have used the structures themselves to advertise their infringing structures. These infringing advertising activities have resulted in the sales of infringing structures described above. Additionally, these infringing advertising activities, and the resulting infringing sales, are and have been a substantial factor in the value of any infringing structures that defendants have not yet sold, and the prices that buyers would be willing to pay for such structures.

60. Further, Defendants Oppidan, Oppidan 8, Oppidan 8 GP, Arieli, and Reisner each had at all material times the ability to supervise and control the infringing activities of the other Nagle Defendants in connection with their activities on Nagle Park Place. Defendants Oppidan, Oppidan 8, Oppidan 8 GP, Arieli, and Reisner each had a financial interest in the infringing activities associated with Nagle Park Place.

61.     Further, Defendants Oppidan, Oppidan 8, Oppidan 8 GP, Arieli, Reisner, Cameron, Stephen Cameron, Urban Living, Ramani, and the UL-CA Partnership have each, with knowledge of the infringing activities of each of the other Nagle Defendants, induced, caused, and materially contributed to such infringing conduct.

Patterson Street Landing

62.     Defendants Oppidan, RZ Holdings, Oppidan 9, Oppidan 9 GP, Arieli, Urban Living, and Ramani (collectively, the "Patterson Defendants") have each infringed PWA's copyrights in D8057-2, E0042, E0175-A1.1-V5, and E2066 A2.1 (hereinafter collectively referred to as the "Patterson Works") through their activities associated with a development known as Patterson Street Landing, which is located at 1026-34 Center Street, Houston, Texas.  The Patterson Defendants have each committed numerous acts of copyright infringement in their activities associated with Patterson Street Landing, including the following:

> a.   They have each made copies and/or derivatives of the Patterson Works by creating, or causing to be created, paper and digital drawings and plans for Patterson Street Landing that are based on the Patterson Works.
>
> b.   They have each distributed, or caused to be distributed, copies and/or derivatives of the Copyrighted Works by distributing paper and digital drawings and plans based on the Patterson Works for Patterson Street Landing.
>
> c.   Oppidan, RZ Holdings, Oppidan 9, and Oppidan 9 GP have made copies and/or derivatives of the Patterson Works by constructing, or causing to be

constructed, structures at Patterson Street Landing that are based on the Patterson Works.

d.   Oppidan, RZ Holdings, Oppidan 9, Oppidan 9 GP, and Urban Living have sold and have offered for sale structures at Patterson Street Landing based on the Patterson Works that are copies and/or derivatives of the Patterson Works.

63.   Additionally, in their activities associated with Patterson Street Landing, Urban Living, Oppidan, RZ Holdings, Oppidan 9, and Oppidan 9 GP have created, published and used non-pictorial depictions of structures that are based on the Patterson Works in promotional and advertising materials.  They have published and used these infringing materials in the course of advertising the infringing structures, including but not limited to advertising on the Internet.  Furthermore, they have used the structures themselves to advertise their infringing structures. These infringing advertising activities have resulted in the sales of infringing structures described above.  Additionally, these infringing advertising activities, and the resulting infringing sales, are and have been a substantial factor in the value of any infringing structures that defendants have not yet sold, and the prices that buyers would be willing to pay for such structures.

64.   Further, Defendants Oppidan, RZ Holdings, Oppidan 9, Oppidan 9 GP, Arieli, and Reisner each had at all material times the ability to supervise and control the infringing activities of the other Patterson Defendants in connection with their activities on Patterson Landing.  Defendants Oppidan, Oppidan 9, and Arieli each had a financial interest in the infringing activities associated with Patterson Landing.

65.   Further, Defendants Oppidan, RZ Holdings, Oppidan 9, Oppidan 9 GP, Arieli, and Reisner have each, with knowledge of the infringing activities of each of the

other Patterson Defendants, induced, caused, and materially contributed to such infringing conduct.

Stanford Street Landing

66.    Defendants Oppidan, Oppidan 17, Oppidan 17 GP, Arieli, Reisner, Urban Living, and Ramani (collectively, the "Stanford Defendants") have each infringed PWA's copyrights in 00-071-2265A and D6050 Lot 1057 (hereinafter collectively referred to as the "Stanford Works") through their activities associated with a development known as Stanford Street Landing, which is located at 4312 A&B Stanford Street, Houston, Texas. The Stanford Defendants have each committed numerous acts of copyright infringement in their activities associated with Stanford Street Landing, including the following:

a.   They have each made copies and/or derivatives of the Stanford Works by creating, or causing to be created, paper and digital drawings and plans for Stanford Street Landing that are based on the Stanford Works.

b.   They have each distributed, or caused to be distributed, copies and/or derivatives of the Copyrighted Works by distributing paper and digital drawings and plans based on the Stanford Works for Stanford Street Landing.

c.   Oppidan, Opppidan 17, and Oppidan 17 GP have made copies and/or derivatives of the Stanford Works by constructing, or causing to be constructed, structures at Stanford Street Landing that are based on the Stanford Works.

d.  Oppidan, Oppidan 17, Oppidan 17 GP, and Urban Living have sold and have offered for sale structures at Stanford Street Landing based on the Stanford Works that are copies and/or derivatives of the Stanford Works.

67.  Additionally, in their activities associated with Stanford Street Landing, Urban Living, Oppidan, Oppidan 17, and Oppidan 17 GP have created, published and used non-pictorial depictions of structures that are based on the Stanford Works in promotional and advertising materials.  They have published and used these infringing materials in the course of advertising the infringing structures, including but not limited to advertising on the Internet.  Furthermore, they have used the structures themselves to advertise their infringing structures. These infringing advertising activities have resulted in the sales of infringing structures described above.  Additionally, these infringing advertising activities, and the resulting infringing sales, are and have been a substantial factor in the value of any infringing structures that defendants have not yet sold, and the prices that buyers would be willing to pay for such structures.

68.  Further, Defendants Oppidan, Oppidan 17, Oppidan 17 GP, Arieli, and Reisner each had at all material times the ability to supervise and control the infringing activities of the other Stanford Defendants in connection with their activities on Stanford Landing.  Defendants Oppidan, Oppidan 17, Oppidan 17 GP, Arieli, and Reisner each had a financial interest in the infringing activities associated with Stanford Landing.

69.  Further, Defendants Oppidan, Oppidan 17, Oppidan 17 GP, Arieli, Reisner, Urban Living, and Ramani have each, with knowledge of the infringing activities of each of the other Stanford Defendants, induced, caused, and materially contributed to such infringing conduct.

EaDo Place

70.      Defendants Oppidan, RZ Holdings, Oppidan 6, Oppidan 6 GP, Arieli, Urban Living, and Ramani (collectively, the "EaDo Defendants") have each infringed PWA's copyrights in D8057-2, E0042, E0175-A1.1-V5, E2066 A2.1, and E2246-A3.1 (hereinafter collectively referred to as the "Eado Works") through their activities associated with a development known as EaDo Place, which is located at 2602-10 Polk Street, Houston, Texas.  The EaDo Defendants have each committed numerous acts of copyright infringement in their activities associated with EaDo Street Landing, including the following:

    a.  They have each made copies and/or derivatives of the EaDo Works by creating, or causing to be created, paper and digital drawings and plans for EaDo Place that are based on the EaDo Works.

    b.  They have each distributed, or caused to be distributed, copies and/or derivatives of the Copyrighted Works by distributing paper and digital drawings and plans based on the EaDo Works for EaDo Place.

    c.  Oppidan, RZ Holdings, Oppidan 17, and Oppidan 17 GP have made copies and/or derivatives of the EaDo Works by constructing, or causing to be constructed, structures at EaDo Place that are based on the EaDo Works.

    d.  Oppidan, RZ Holdings, Oppidan 17, Oppidan 17 GP, and Urban Living have sold and have offered for sale structures at EaDo Place based on the EaDo Works that are copies and/or derivatives of the EaDo Works.

71.     Additionally, in their activities associated with EaDo Place, Urban Living, Oppidan, RZ Holdings, Oppidan 17, and Oppidan 17 GP have created, published and used non-pictorial depictions of structures that are based on the EaDo Works in promotional and advertising materials.  They have published and used these infringing materials in the course of advertising the infringing structures, including but not limited to advertising on the Internet.  Furthermore, they have used the structures themselves to advertise their infringing structures. These infringing advertising activities have resulted in the sales of infringing structures described above.  Additionally, these infringing advertising activities, and the resulting infringing sales, are and have been a substantial factor in the value of any infringing structures that defendants have not yet sold, and the prices that buyers would be willing to pay for such structures.

72.     Further, Defendants Oppidan, RZ Holdings, Oppidan 17, Oppidan 17 GP, Arieli, and Reisner each had at all material times the ability to supervise and control the infringing activities of the other EaDo Defendants in connection with their activities on Eado Place.  Defendants Oppidan, RZ Holdings, Oppidan 17, Oppidan 17 GP, Arieli, and Reisner each had a financial interest in the infringing activities associated with Eado Place.

73.     Further, Defendants Oppidan, RZ Holdings, Oppidan 17, Oppidan 17 GP, Arieli, Reisner, Urban Living, and Ramani have each, with knowledge of the infringing activities of each of the other EaDo Defendants, induced, caused, and materially contributed to such infringing conduct.

4504 Mount Vernon

74.      Defendants Cameron, Stephen Cameron, Urban Living, Ramani, and the UL-CA Partnership (collectively, the "Mount Vernon Defendants") have each infringed PWA's copyrights in E1171-B1.1L (the "Mount Vernon Works") through their activities

associated with plans for houses to be constructed at 4504 Mount Vernon Street, Houston, Texas ("Mount Vernon"). The Mount Vernon Defendants have each committed numerous acts of copyright infringement in their activities associated with Mount Vernon, including the following:

      a. They have each made copies and/or derivatives of the Mount Vernon Works by creating, or causing to be created, paper and digital drawings and plans for Mount Vernon that are based on the Mount Vernon Works.

      b. They have each distributed, or caused to be distributed, copies and/or derivatives of the Copyrighted Works by distributing paper and digital drawings and plans based on the Mount Vernon Works for Mount Vernon.

75.    Additionally, in their activities associated with Mount Vernon, Urban Living has created, published and used non-pictorial depictions of structures that are based on the Mount Vernon Works in promotional and advertising materials. They have published and used these infringing materials in the course of advertising the infringing structures, including but not limited to advertising on the Internet.

76.    Further, each of the Mount Vernon Defendants have, with knowledge of the infringing activities of each of the other Mount Vernon Defendants, induced, caused, and materially contributed to such infringing conduct.

## COUNT I: COPYRIGHT INFRINGEMENT

77.    PWA complains of defendants for copyright infringement, and incorporates paragraphs 1-76 by reference.

78.    The creation of the structures and the creation and distribution of associated design and construction drawings based on PWA's Copyrighted Works by defendants has infringed and continues to infringe PWA's copyrights in the Copyrighted Works.

79.     The sales of the structures that are based on PWA's Copyrighted Works by defendants has infringed and continues to infringe PWA's copyrights in the Copyrighted Works

80.     The acts of defendants in the creation and publication of non-pictorial representations based on PWA's Copyrighted Works have infringed and are infringing PWA's copyrights in the Copyrighted Works.

81.     Pursuant to 17 U.S.C. § 504(b), each defendant is liable to PWA for its own profits associated with the activities described above.

82.     Stephen Cameron is vicariously liable for all acts of copyright infringement committed by Cameron, and as such is jointly and severally liable for any award for copyright infringement entered in favor of PWA against Cameron.

83.     Ramini is vicariously liable for all acts of copyright infringement committed by Urban Living, and as such is jointly and severally liable for any award for copyright infringement entered in favor of PWA against Urban Living.

84.     Arieli is vicariously liable for all acts of copyright infringement committed by Oppidan, RZ Holdings, Oppidan 6, Oppidan 6 GP, Oppidan 8, Oppidan 8 GP, Oppidan 9, Oppidan 9 GP, Oppidan 17, and Oppidan 17, and as such is jointly and severally liable for any award for copyright infringement entered in favor of PWA against any of those parties.

85.     Reisner is vicariously liable for all acts of copyright infringement committed by Oppidan, RZ Holdings, Oppidan 6, Oppidan 6 GP, Oppidan 8, Oppidan 8 GP, Oppidan 9, Oppidan 9 GP, Oppidan 17, and Oppidan 17, and as such is jointly and severally liable for any award for copyright infringement entered in favor of PWA against any of those parties.

86.     Oppidan is vicariously liable for all acts of copyright infringement committed by Oppidan 6, Oppidan 6 GP, Oppidan 8, Oppidan 8 GP, Oppidan 9, Oppidan 9 GP, Oppidan

17, and Oppidan 17 GP, and as such is jointly and severally liable for any award for copyright infringement entered in favor of PWA against any of those parties.

87.    RZ Holdings is vicariously liable for all acts of copyright infringement committed by Oppidan 6, Oppidan 6 GPOppidan 9, and Oppidan 9 GP, and as such is jointly and severally liable for any award for copyright infringement entered in favor of PWA against any of those parties.

88.    With respect to the copyright infringement claims associated with Nagle Park Place:

    a.   As the general partner of Oppidan 8, Oppidan 8 GP is jointly and severally liable for any judgment against Oppidan 8.

    b.   Oppidan, Oppidan 8, Oppidan 8 GP, Arieli, and Reisner are each vicariously liable for all acts of copyright infringement committed by Cameron, Stephen Cameron, Urban Living, and Ramani, and as such are each jointly and severally liable for any award for copyright infringement entered in favor of PWA against Cameron, Stephen Cameron, Urban Living, and Ramani for infringements associated with Nagle Park Place.

    c.   Reisner and each of the Nagle Defendants are each liable for every other Nagle Defendants' acts of infringement associated with Nagle Park Place under the doctrine of contributory infringement or inducement of infringement.  As such, Reisner and each Nagle Defendant are jointly and severally liable for any award for copyright infringement entered in favor of PWA against any other Nagle Defendant.

89.    With respect to the copyright infringement claims associated with Patterson Street Landing:

a.  As the general partner of Oppidan 9, Oppidan 9 GP is jointly and severally liable for any judgment against Oppidan 9.

b.  Oppidan, RZ Holdings, Oppidan 9, Oppidan 9 GP, Arieli, and Reisner are each vicariously liable for all acts of copyright infringement committed by Urban Living and Ramani, and as such are each jointly and severally liable for any award for copyright infringement entered in favor of PWA against Urban Living, and Ramani  for infringements associated with Patterson Street Landing.

c.  Reisner and each of the Patterson Defendants are each liable for every other Patterson Defendants' acts of infringement associated with Patterson Street Landing under the doctrine of contributory infringement or inducement of infringement.   As such, Reisner and each Patterson Defendant are each jointly and severally liable for any award for copyright infringement entered in favor of PWA against any other Patterson Defendant.

90.   With respect to the copyright infringement claims associated with Stanford Street Landing:

a.  As the general partner of Oppidan 17, Oppidan 17 GP is jointly and severally liable for any judgment against Oppidan 17.

b.  Oppidan, Oppidan 17, Oppidan 17 GP, Arieli, and Reisner are each vicariously liable for all acts of copyright infringement committed by Urban Living and Ramani, and as such are each jointly and severally liable for any award for copyright infringement entered in favor of PWA against Urban Living and Ramani for infringements associated with Stanford Street Landing.

c.  Reisner and each of the Stanford Defendants are each liable for every other Stanford Defendants' acts of infringement associated with Stanford Street Landing under the doctrine of contributory infringement or inducement of infringement.  As such, Reisner and each Stanford Defendant are jointly and severally liable for any award for copyright infringement entered in favor of PWA against any other Stanford Defendant.

91.  With respect to the copyright infringement claims associated with EaDo Place:

a.  Oppidan, RZ Holdings, Oppidan 6, Oppidan 6 GP, Arieli, and Reisner are each vicariously liable for all acts of copyright infringement committed by Urban Living and Ramani, and as such are each jointly and severally liable for any award for copyright infringement entered in favor of PWA against Urban Living and Ramani  for infringements associated with EaDo Place.

b.  Reisner and each of the EaDo Defendants are each liable for every other EaDo Defendants' acts of infringement associated with EaDo Place under the doctrine of contributory infringement or inducement of infringement. As such, Reisner and each EaDo Defendant is jointly and severally liable for any award for copyright infringement entered in favor of PWA against any other EaDo Defendant.

92.  With respect to the copyright infringement claims associated with Mount Vernon, each of the Mount Vernon Defendants are liable for every other Mount Vernon Defendants' acts of infringement associated with Mount Vernon under the doctrine of contributory infringement or inducement of infringement.  As such, each Mount Vernon

25

Defendant is jointly and severally liable for any award for copyright infringement entered in favor of PWA against any other Mount Vernon Defendant.

93.     As partners in the UL-CA Partnership, Cameron and UL are each jointly and severally liable for any judgment against the UL-CA Partnership for copyright infringement.

94.     In addition, PWA is entitled to preliminary and permanent injunctive relief pursuant to 17 U.S.C. § 502 prohibiting defendants from further infringement of PWA's copyrights, including but not limited to the further use or distribution of infringing plans and drawings and the construction, sale, or rental of infringing structures.

95.     Furthermore, this Court should issue an order pursuant to 17 U.S.C. § 503 directing the United States Marshal's Service to (a) impound all copies of the Copyrighted Works, in possession of defendants or their agents or contractors that infringe PWA's copyrights during the pendency of this lawsuit; and (b) upon final hearing of this case, to destroy or otherwise dispose of those copies.

## COUNT II: DMCA § 1202 VIOLATIONS

96.     PWA complains of Urban Living, Ramani, Oppidan, RZ Holdings, Oppidan 6, Oppidan 6 GP, Oppidan 8, Oppidan 8 GP, Oppidan 9, Oppidan 9 GP, Oppidan 17, Oppidan 17 GP, Arieli, and Reisner for violations of section 1202 of the Digital Millennium Copyright Act ("DMCA"), and incorporates paragraphs 1-95 by reference.

97.     Urban Living has created marketing materials for Nagle Park Place, Patterson Street Landing, Stanford Street Landing, Eado Place, and Mount Vernon, in the form of floorplans, elevation drawings, and renderings.

98.     Urban Living has distributed copies of such marketing materials for Nagle Park Place, Patterson Street Landing, Stanford Street Landing, Eado Place, and Mount

Vernon, in the form of floorplans, elevation drawings, and renderings. Such distribution included distributions via Urban Living's webpages for those projects, e-mail distributions to prospective purchasers and real estate agents, and e-mail transmissions to other persons associated with each such project.

99.     Such marketing materials are copies or derivatives of the associated PWA works:

A.  The Urban Living marketing materials for Nagle Park Place are copies or derivatives of the Nagle Works;

B.  The Urban Living marketing materials for Patterson Street Landing are copies or derivatives of the Patterson Works;

C.  The Urban Living marketing materials for Stanford Street Landing are copies or derivatives of the Stanford Works;

D.  The Urban Living marketing materials for EaDo Place are copies or derivatives of the EaDo Works;

E.  The Urban Living marketing materials for Mount Vernon are copies or derivatives of the Mount Vernon Works;

100.    Such marketing materials lacked the PWA Copyright Management Information that was a condition precedent to such use of PWA's works.

101.    As such, the creation and distribution of such marketing materials were not authorized by the Agreement, and were thus acts of copyright infringement.

102.    Urban Living's creation and distribution of such marketing materials that omitted or deleted PWA's Copyright Management Information were done without PWA's consent.

103.     Urban Living's creation and distribution of such marketing materials that omitted or deleted PWA's Copyright Management Information was done intentionally.

104.     Urban Living's creation and distribution of such marketing materials that omitted or deleted PWA's Copyright Management Information was done either knowing or having reasonable grounds to know that such would induce, enable, facilitate, or conceal its infringement of PWA's copyrights.  Specifically, Urban Living actually knew or reasonably should have known that PWA's authorization to use its works in such marketing materials was strictly conditioned on the proper maintenance of PWA's Copyright Management Information on all such works, and that use without PWA's Copyright Management Information would be copyright infringement.

105.     Each creation of marketing materials that improperly failed to bear PWA's Copyright Management Information by Urban Living was a distinct violation of 17 U.S.C. § 1202(b)(1).

106.     Each distribution of marketing materials that improperly failed to bear PWA's Copyright Management Information by Urban Living was a distinct violation of 17 U.S.C. § 1202(b)(3).

107.     Urban Living is therefore liable to PWA for statutory damages pursuant to 17 U.S.C. § 1203(c)(3)(B) of not less than $2,500 or more than $25,000 for each violation of 17 U.S.C. § 1202.

108.     PWA is also entitled to its reasonable attorneys fees pursuant to 17 U.S.C. § 1203(b)(5).

109.    Ramini is vicariously liable for all DMCA violations committed by Urban Living, and as such is jointly and severally liable for any judgment against Urban Living for DMCA violations.

110.    Oppidan, Oppidan 8, Oppidan 8 GP, Arieli, and Reisner are each vicariously liable for all DMCA violations committed by Urban Living associated with Nagle Park Place, and as such are each jointly and severally liable for any judgment against Urban Living for such claims.

111.    Oppidan, RZ Holdings, Oppidan 9, Oppidan 9 GP, Arieli, and Reisner are each vicariously liable for all DMCA violations committed by Urban Living associated with Patterson Street Landing, and as such are each jointly and severally liable for any judgment against Urban Living for such claims.

112.    Oppidan, Oppidan 17, Oppidan 17 GP, Arieli, and Reisner are each vicariously liable for all DMCA violations committed by Urban Living associated with Stanford Street Landing, and as such are each jointly and severally liable for any judgment against Urban Living for such claims.

113.    Oppidan, RZ Holdings, Oppidan 6, Oppidan 6 GP, Arieli, and Reisner are each vicariously liable for all DMCA violations committed by Urban Living associated with EaDo Place, and as such are each jointly and severally liable for any judgment against Urban Living for such claims.

## COUNT III: DECLARATORY RELIEF

114.    Pursuant to the Declaratory Judgment Act, 28 U.S.C. 2201, PWA requests a declaratory judgment regarding the parties' rights under the Agreement.    PWA incorporates by reference paragraphs 1-113 above.

115.    There is an actual controversy between PWA and UL regarding their rights under the Agreement, including but not limited to the license defenses asserted by Urban Living and parties asserting a license defense through Urban Living.  As this Court already has jurisdiction over the copyright case between PWA and Urban Living, this request for declaratory relief is within this Court's supplemental jurisdiction.

116.    PWA asks the Court:

A.    To declare that Urban Living never satisfied the conditions precedent in the Agreement for Urban Living to sublicense PWA's works to anyone, and therefore has not and had had no right under the Agreement to sublicense any of PWA's works.

B.    To declare that under the Agreement, any construction, marketing, and sale of any houses by each party claiming or asserted to be a sublicensee of Urban Living under the Agreement was not authorized by PWA under the Agreement.

C.    Alternatively, if Urban Living contends that pursuant to the Agreement, it somehow effectively sublicensed any of PWA's works to anyone, to declare who such sublicensees are and the extent and nature of their purported sublicense, including but not limited to when such sublicense terminated.

D.    To declare that under the Agreement, Urban Living is jointly and severally liable with its putative sublicensees for any use of PWA works by such putative sublicensees that was not in accordance with the terms of the Agreement.

E.    To declare that Urban Living never satisfied the conditions precedent in the Agreement to authorize it to allow any outside draftsman, designer, engineer, or architect to modify any of PWA's works.

G.      Alternatively, if Urban Living contends that pursuant to the Agreement, it somehow had the authority to allow an outside draftsman, designer, engineer, or architect to modify any of PWA's works, to declare the extent and nature of such authority, including but not limited to identifying the specific outside draftsmen, designers, engineers, or architects that were so authorized, which PWA works they were authorized to modify, and when such authority terminated.

H.      To declare that under the Agreement, any putative sublicensee of Urban Living lacked the authority to modify any of PWA's works, or to authorize any outside draftsman, designer, engineer, or architect to do so.

I.      To declare that any use, reproduction, or modification of PWA's works after January 17, 2014 by outside draftsmen, designers, architects, and engineers engaged by Urban Living or a putative sublicensee of Urban Living was not authorized by PWA under the Agreement.

J.      Alternatively, if Urban Living contends that any particular use, reproduction, or modification of PWA's works after January 17, 2014 by an outside draftsman, designer, architect, or engineer engaged by Urban Living or a putative sublicensee of Urban Living was somehow authorized under the Agreement, to declare the extent and nature of such authority, including but not limited to identifying the specific uses, reproductions, or modifications of particular PWA works that were so authorized, and when such authority terminated.

K.      To declare that the creation and distribution of two-dimensional derivatives of PWA's works in Urban Living marketing materials after

January 17, 2014 that did not include the Copyright Management Information required by the Agreement constituted a failure to satisfy an obligation of the Agreement.

L.    To declare that the creation and distribution of two-dimensional derivatives of PWA's works in Urban Living marketing materials after January 17, 2014 that did not include the Copyright Management Information required by the Agreement caused the automatic termination of the Agreement as of the date of the first such creation or distribution.

M.    To declare that Urban Living's engagement of outside draftsmen, designers, engineers, or architects to modify PWA's works without having such outside persons first execute and deliver to PWA the required Acknowledgement and Agreement constituted a failure to satisfy an obligation of the Agreement.

N.    To declare that Urban Living's engagement of outside draftsmen, designers, engineers, or architects to modify PWA's works without having such outside persons first execute and deliver to PWA the required Acknowledgement and Agreement caused the automatic termination of the Agreement as of the date of the first such engagement.

O.    To declare the date on which the Agreement terminated (whether automatically for cause, or automatically as of January 17, 2015).

P.    To declare that, except for the sale and completing the construction of individual houses that had been properly licensed prior to the date the Agreement automatically terminated (which in no case was later than January 17, 2015), after the Agreement automatically terminated neither Urban Living, nor any putative

sublicensee of Urban Living, nor any outside draftsman, designer, architect, or engineer engaged by Urban Living or any putative sublicensee of Urban Living, had any right under the Agreement to make any further use of any PWA architectural work, technical drawing, or derivatives thereof.

### CONDITIONS PRECEDENT

117.    PWA generally avers that all conditions precedent to its rights of recovery have occurred or have been performed, or have been waived or excused by defendants.

### JURY DEMAND

118.    Pursuant to Federal Rule of Civil Procedure 38, PWA demands trial by jury on all issues so triable.

WHEREFORE, PREMISED CONSIDERED, Preston Wood & Associates, LLC prays that defendants cited to appear and answer, and that upon final trial it have and recover from defendants as set forth above, that it have injunctive relief, declaratory relief, and other relief against defendants as requested herein, and that it have such and other relief as it may show itself to be entitled.

Respectfully submitted,

Patrick Zummo
State Bar No. 22293450
Two HoustonCenter
909 Fannin, Suite 3500
Houston, Texas 77010
(713) 651-0590 (Telephone)
(713) 651-0597 (Facsimile)
pzummo@zoomlaw.com

*/s/ Louis K. Bonham*
Louis K. Bonham
State Bar No. 02597700
Osha Liang L.L.P.
909 Fannin Street, Suite 3500
Houston, Texas 77010
(713) 228-8600 (Telephone)
(713) 228-8778 (Facsimile)
bonham@oshaliang.com

ATTORNEYS FOR PLAINTIFF
PRESTON WOOD & ASSOCIATES, LLC