IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| PRESTON WOOD & ASSOCIATES, LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 4:16-cv-01427 |
| | § | |
| RZ ENTERPRISES USA, INC. D/B/A | § | |
| OPPIDAN HOMES, OPPIDAN HOMES | § | Jury Trial Demanded |
| VIII LTD., CAMERON ARCHITECTS, | § | |
| INC., and UL, INC. D/B/A URBAN | § | |
| LIVING, | § | |
| | § | |
| Defendants. | § | |

**PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT
AND BRIEF IN SUPPORT**

Plaintiff Preston Wood & Associates, LLC ("PWA") moves this Court for partial summary judgment as follows:

**I.      Nature and Stage of the Proceeding**

This is an architectural copyright case. The discovery cut off is March 2, 2018, and the case is in the dispositive motion stage.

**II.     Statement of the Issues**

This is a motion for partial summary judgment.[1] The issues to be determined are:

1.   Is there a genuine issue of material fact regarding PWA's ownership of valid copyrights in the works in suit?

---

[1] The standards for determining summary judgment motions are well known to this court. *See, e.g.*, *Allen v. Coil Tubing Servs., L.L.C.*, 846 F. Supp. 2d 678, 687 (S.D. Tex. 2012), *aff'd*, 755 F.3d 279 (5th Cir. 2014).

2. Is there a genuine issue of material fact concerning the interpretation of the contract between PWA and defendant UL, Inc. d/b/a Urban Living ("Urban Living"), especially in light of Urban Living's admissions in this case?

3. Is there a genuine issue of material fact concerning defendants' affirmative defenses of license?

4. Is there a genuine issue of material fact concerning defendants' affirmative defenses of innocent infringement?

## III. Summary of the Argument

In this motion, PWA seeks to "clear the underbrush" for trial by disposing of issues on which there is no genuine issue of material fact. First, because there is no question that PWA is the owner of valid copyrights in the architectural works and technical drawings in suit, PWA is entitled to summary judgment on that issue. Second, because the contract between PWA and Urban Living is unambiguous and because Urban Living admits that it never satisfied or performed various conditions precedent in that contract, PWA is entitled to various declarations of the parties' rights under it. Third, because Urban Living both violated the express terms of the contract and failed to satisfy the conditions precedent for licenses of the PWA works in suit, there is no evidence and no genuine issue of material fact concerning defendants' affirmative defenses of license / implied license. Finally, because defendants unquestionably had access to copies of PWA's works bearing a copyright notice, and because they knew that their use of PWA's works without satisfying the conditions of the contract would be copyright infringement, there is no evidence and no genuine issue of material fact concerning their defense of innocent infringement.

## IV.     Relevant Factual Background

This is an architectural copyright case. PWA is the owner of architectural works and technical drawings copyrights in the works in suit. *See* Exhibits 1 (Declaration of Preston Wood) and 3-13 (certificates of copyright registration and deposit materials for each of the works in suit). All of these works were the original creations of PWA employees. *See* Exhibit 1.

PWA and Urban Living entered into a contract in January 2014 (the "Agreement," copy attached as Exhibit 14).[2] *See* Exhibit 2 (Declaration of Samantha Wood). The Agreement authorized Urban Living to use PWA's architectural works and technical drawings on particular real estate projects *if Urban Living complied with various conditions precedent* (some of which will be detailed below). The Agreement also included Urban Living's acknowledgement and agreement that PWA was the sole owner of valid copyrights in the architectural works and technical drawings covered by the contract. Agreement, Section 3.

As Urban Living and Ramani have admitted and conceded, the Agreement between the parties provided, *inter alia*:

- PWA's license to Urban Living was "[s]trictly conditioned on [Urban Living]'s timely and complete performance of all obligations set forth in this Agreement" . . . Agreement, Section 1.

- PWA's license to Urban Living was "personal to [Urban Living] and, except as expressly provided herein, may not be assigned or sublicensed without PWA's written permission." Agreement, Section 1.

3

- Urban Living's failure to satisfy any of its obligations under the Agreement "shall result in the automatic termination of this Agreement for cause." Agreement, Section 1(d).

- "Unless previously terminated for cause, the term of this Agreement shall be for a period of one year from the date set forth below [January 14, 2014]," after which it "shall automatically terminate" unless it had been renewed. Agreement, Section 1(b).

- Upon termination, "[c]onstruction of individual houses that were properly licensed prior to termination may be completed and sold, but no other use of PWA's architectural works, technical drawings, or derivatives thereof, is permitted after termination." Agreement, Section 1(b).

- Urban Living was allowed to sublicense other builders to "construct and market" PWA's architectural works, but only if, *inter alia*, it first "deliver[ed] to PWA the sublicensee's written acknowledgement and agreement to be bound by the terms of this Agreement." Agreement, Section 1(c)(2).

- Similarly, Urban Living – but not any sublicensee -- was allowed to engage "outside draftsmen, designers, engineers, or architects" to modify PWA's works, but only if, *inter alia*, PWA was first sent an Acknowledgement and Agreement executed by such outside persons in the form attached to the Agreement. Agreement, Section 2.

- "This Agreement may not be modified except by a writing signed by all parties." Agreement, Section 7.

---

2 The Agreement was described in PWA's First Amended Complaint (Docket #39, ¶¶44-45), and attached as Exhibit 1 to that pleading. Urban Living and Ramani have admitted that the parties executed the Agreement and

4

Urban Living never requested to renew the agreement, and PWA did not agree to do so.[3] *See* Exhibit 2.  The Agreement therefore automatically terminated no later than January 17, 2015.[4]

Urban Living never delivered to PWA *any* written acknowledgement and agreement to be bound by the terms of the Agreement for any putative Urban Living sublicensee or any outside draftsman, designer, engineer, or architect.  *See* Exhibit 2.[5]  Urban Living admits that it was not the builder or seller of the houses for any of the projects at issue.  *See* Exhibit 15 (UL's Amended Responses to PWA's Requests for Admission).

PWA's copyright infringement claims, stated simply, are that Urban Living and its clients used PWA's architectural works and technical drawings on various projects without PWA's authorization and without complying with the conditions precedent set forth in the Agreement, and such unauthorized use of PWA's works thus constituted copyright infringement. *See Mid-Continent Cas. Co. v. Kipp Flores Architects, L.L.C.*, 602 Fed. Appx. 985, 997 (5th Cir. 2015).  For the projects known as Patterson Street Landing, Stanford Street Landing, EaDo Place, and 4504 Mount Vernon, Urban Living never requested any license or paid the requisite fees.  See Exhibit 2.  For the project known as Nagle Park Place, Urban Living originally requested a license but subsequently cancelled it and advised PWA that it would not be using

---

that this is a true and correct copy of it.  *See* Docket #76 at p.5 (admitting these allegations of PWA's First Amended Complaint).

[3]     PWA's First Amended Complaint (Docket #39, ¶¶46-47) contained these averments, which Urban Living and Ramani have admitted.  *See* Docket #76 at p.5 (admitting these allegations of PWA's First Amended Complaint).

[4]     PWA's First Amended Complaint (Docket #39, ¶¶48) contained these averments, which Urban Living and Ramani have admitted.  *See* Docket #76 at p.5 (admitting these allegations of PWA's First Amended Complaint).

[5]     PWA's First Amended Complaint (Docket #39, ¶¶49-50) contained these averments, which Urban Living and Ramani have admitted.  *See* Docket #76 at p.5 (admitting these allegations of PWA's First Amended Complaint).

PWA's works at that location. *See id.*

Despite failing to comply with the conditions precedent of the Agreement, Cameron and Cameron Architects literally used PWA's works to create plans for Nagle Park Place and 4504 Mount Vernon.[6] *See* Exhibits 16 and 17; *compare with* Exhibits 5 and 13. As the Court will observe, these plans that Cameron generated still bear PWA's copyright notice and warnings across the left border. Cameron knew (or at the very least was on actual notice) that his actions on these projects were unauthorized because, besides PWA's copyright notice and warnings, his contracts with his clients explicitly referenced the PWA-Urban Living Agreement *and even included a portion of its text as an attachment*. *See* Exhibit 18.

### V.     Argument

#### A.    PWA is the Owner of Valid Copyrights in the Works in Suit.

To establish a claim for copyright infringement, PWA must prove (1) it owns valid copyrights and (2) the defendant "copied" the plaintiff's copyrighted materials.[7] *Peel & Co. v. The Rug Market*, 238 F.3d 391, 394 (5th Cir. 2001). Because there is no genuine issue of material fact that PWA does in fact own valid copyrights in the works at issue, PWA is entitled to summary judgment on this first element.

"Ownership of a valid copyright is established by proving the originality and copyrightability of the material and compliance with the statutory formalities." *Norma Ribbon & Trimming, Inc. v. Little,* 51 F.3d 45, 47 (5th Cir. 1995) (internal citations omitted). A plaintiff's

---

[6]     Cameron Architects was not involved with the Patterson Street Landing, Stanford Street Landing, and EaDo Place projects.

[7]     As used in copyright cases, "copying" is shorthand for any violation of the copyright holder's exclusive rights under 17 U.S.C. § 106, not just literal copying. *Dun & Bradstreet Software Services, Inc. v. Grace Consulting, Inc.*, 307 F.3d 197, 206 (3rd Cir. 2002), 17 U.S.C. § 501(a).

ownership of valid copyrights is an appropriate subject for partial summary judgment. *See, e.g.*, *Hewlett Custom Home Design, Inc. v. Frontier Custom Builders*, No. H-10-4837, Docket #97 at p.11 (S.D. Tex. 2013); *Kipp Flores Architects v. Hallmark Design Homes*, No. H-09-850, Docket #176 at p.4 (S.D. Tex. 2012); *Danze & Davis Architects v. Legend Classic Homes*, No. H-10-216, Docket #53 at p.14 (S.D. Tex. 2011).

The Copyright Act protects "original works of authorship..." 17 U.S.C. § 102(a). To be "original" and capable of being protected by copyright means that the work was independently created by the author, rather than copied from other works, and "possesses at least some minimal degree of creativity." *Feist Publications, Inc. v. Rural Tel. Service Co.*, 499 U.S. 340, 345 (1991).

The statutory definition of an architectural work expressly states that while the individual standard features are not themselves protectable, the original arrangement and composition of those features is protectable. As defined in the Copyright Act,

> An "architectural work" is the design of a building as embodied in any tangible medium of expression, including a building, architectural plans, or drawings. The work includes the overall form as well as the arrangement and composition of spaces and elements in the design, but does not include individual standard features.

17 U.S.C. § 101. Courts in architectural works copyright cases regularly explain that the overall work is original even though it is made up of individual elements that are not protectable. For example, in *Sturdza v. United Arab Emirates*, the court said that "[c]onsidering the works as a whole is particularly important because protectable expression may arise through the ways in which artists combine even unprotectable elements." 281 F.3d 1287, 1296 (D. C. Cir. 2002).

Thus, and by way of example, "while color is not protectable, the manner in which an artist 'selects, coordinates, and arranges,' color may be." *Sturdza*, 281 F.3d at 1296.  Similarly, in *Arthur Rutenberg Homes, Inc. v. Maloney*, the court explained that the "underlying component parts of a creation are not subject to protection, but a creator's independent selection and arrangement of component parts into an original design is copyrightable."  891 F. Supp. 1560, 1566 (M. D. Fla. 1995).

The Declaration of Preston Wood (Exhibit 1) establishes that each of the Copyrighted Works is an original architectural work or technical drawing that was independently created by PWA or its predecessors, and that PWA is the owner of each of those copyrights.  It also authenticates the Certificates of Registration that verify that PWA has complied with the statutory formalities, as well as copies of the works in suit.  *See id.;* Exhibits 3-13.  As the Court will observe from the Exhibit 1 and the copies of the works at issue, the works contain far more than the minimal degree of creativity required for copyright protection.  *Cf. Danze & Davis Architects v. Legend Classic Homes*, No. H-10-216, Docket #53 at pp.11-14 (S.D. Tex. 2011).  This evidence establishes a prima facie case for PWA's ownership of valid copyrights and a basis for a partial summary judgment.  *See id.*

In the face of such a showing, defendants must come forward with admissible summary judgment evidence to raise any question of fact as to PWA's ownership of valid copyrights. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

B.  PWA is Entitled to its Requested Declaratory Relief Interpreting the Agreement.

The Agreement is unambiguous.  Based on the pleadings and summary judgment record, there is no fact question regarding many of the issues on which PWA has pleaded for declaratory

relief. In order to narrow the issues in this case, PWA moves the Court to grant it partial summary judgment on the following:[8]

### 1. *Urban Living Never Complied with the Conditions Precedent to Sublicense.*

As detailed above, for Urban Living to sublicense other builders (such as those involved in the projects in suit) to construct and sell houses based on PWA's works, the Agreement set forth a specific protocol that Urban Living was required to follow, including the putative sublicensee first agreeing in writing to be bound by all the terms of the Agreement and delivery of a copy of that document to PWA. Urban Living admits that it never complied with this provision. PWA is thus entitled to the declaration it requested (Exhibit #39, ¶ 116(A)) to declare that Urban Living never satisfied the conditions precedent to sublicense PWA's works to anyone and therefore has not and never had any right under the Agreement to sublicense any of PWA's works.

### 2. *Construction of Houses by Purported Urban Living Sublicensees Was Not Authorized Under the Agreement.*

The Agreement allowed Urban Living to sublicense the right to construct houses based on PWA's designs *only* if Urban Living and the putative sublicensee satisfied the conditions precedent in the Agreement. Urban Living admits that it did not do so. PWA is thus entitled to the declaration it requested (Exhibit #39, ¶ 116(B)) to declare that any construction, marketing, and sale of any houses by any party claiming or asserted to be a sublicensee of Urban Living under the Agreement was not authorized by PWA under the Agreement.

### 3. *Urban Living Did Not Comply with the Conditions Precedent to Engage Outside Design Professionals to Modify PWA's Works.*

---

[8] PWA previously requested a Judgment on the Pleadings on these issues. Docket #62. This Court denied such relief, but did so without prejudice to PWA's right to move for summary judgment on this issue. Docket #77.

The Agreement allowed Urban Living to engage outside draftsmen, designers, engineers, or architects (such as Cameron Architects) to modify PWA's designs *only* if Urban Living and the outside design professionals first satisfied the conditions precedent in the Agreement. Urban Living admits that it did not do so. PWA is thus entitled to the declaration it requested (Exhibit #39, ¶ 116(E)) to declare that Urban Living failed to satisfy the conditions precedent to authorize it to allow outside draftsmen, designers, engineers, or architects to modify any of PWA's works.

### 4. Urban Living's Purported Sublicensees Did Not Have Any Right to Modify or Engage Outside Design Professionals to Modify PWA's Works.

While the Agreement allowed Urban Living to modify and, under certain conditions, engage outside draftsmen, designers, engineers, or architects to modify PWA's designs, Urban Living's purported sublicensees – even assuming they complied with the conditions precedent to become sublicensees – never had that right. *See* Agreement, Section 1(c) (providing that Urban Living was permitted to sublicense other builders to "construct and market" the architectural works under certain conditions, but not providing that sublicensees had any right to modify the works); Section 2 (while Urban Living was authorized to modify and, under certain conditions, engage outside design professionals to modify PWA works, PWA expressly did not allow "Client [to] sublicense the modification of the works to other builders without PWA's express permission"); *see also* Section 1 (license was personal to Urban Living and could not be assigned or sublicensed except as provided). Urban Living and Ramani admit the terms of the Agreement. PWA is thus entitled to the declaration it requested (Exhibit #39, ¶ 116(H)) to declare that under the Agreement, any putative sublicensee of Urban Living lacked the authority to modify any of PWA's works, or to authorize any outside draftsman, designer, engineer, or architect

10

to do so.

>    5. *Urban Living's Engagement of Outside Design Professionals to Modify PWA's Works Caused the Automatic Termination of the Agreement.*

As detailed above, Urban Living admits that it did not satisfy the conditions precedent for its engaging outside design professionals (including Cameron Architects) to modify PWA's works, nor did it satisfy the requirement for sublicensing. The Agreement provides that any failure of Urban Living to satisfy its obligations under the Agreement caused the automatic termination of the Agreement and all licenses thereunder for cause. *See Mid-Continent Cas. Co. v. Kipp Flores Architects, L.L.C.*, 602 F. App'x 985, 997 (5th Cir. 2015) (referencing similar provision).

PWA is thus entitled to the declaration it requested (Exhibit #39, ¶ 116(N)) to declare that the Agreement terminated automatically as of the date that Urban Living first engaged any outside draftsmen, designers, engineers, or architects to modify any of PWA's works.

>    6. *Other Than Completing the Construction of Houses Properly Licensed as of the Date of Termination, No Other Use of PWA's Works Was Authorized by the Agreement.*

The Agreement is unambiguous regarding the rights of Urban Living and any sublicensees after termination: while completion of the construction of individual houses that had been properly licensed before that date was allowed, as was the sale of such houses, "no other use of PWA's architectural works, technical drawings, or derivatives thereof, is permitted after termination." Urban Living admits the terms of the Agreement. PWA is thus entitled to the declaration it requested (Exhibit #39, ¶ 116(P)) to declare that upon the termination of the agreement (which was in no case later than January 17, 2015), neither Urban Living or anyone else had any rights under the Agreement to make any further use of PWA's works except to

complete the construction and sale of houses that had been properly licensed as of the date of termination.

    C.    <u>There is No Evidence to Support Defendants' License Defenses.</u>

As an affirmative defense, Defendants bear the burden of proving any license defense. *See generally Lulirama Ltd., Inc. v. Axcess Broadcasting Services, Inc.*, 128 F.3d 872, 884 (5th Cir. 1997). The issue is not whether a defendant claims to have "believed" that he had a license, but whether PWA manifested any acquiescence to the conduct at issue. *See Johnson v. Jones*, 149 F.3d 494, 500 (6th Cir. 1998). Where, for example, a written contract provides for a single use license, the fact that a defendant disagrees with such provisions is meaningless. *See Jack Preston Wood: Design, Inc. v. B.L. Builders*, No. H-03-713, Docket #69 at *34-36 (S.D. Tex. 2004).

Defendants cannot establish an express license defense. As to all of the projects except Nagle, they never even *attempted* to obtain permission to use PWA's work, and there is no evidence that they ever satisfied *any* of the conditions precedent for any license to use PWA works for them. Regarding Nagle, while Urban Living initially requested a license, it subsequently cancelled that request (and credited itself for the funds paid), and never satisfied any of the conditions precedent that were required to allow Cameron Architects to modify PWA's work or to sublicense anyone else to build or sell it. Indeed, Urban Living's actions in violation of the Agreement (purporting to sublicense without satisfying the required conditions; engaging outside design professionals without satisfying the required conditions; etc.) caused an automatic termination of any license Urban Living might have had from PWA. *See Mid-Continent Cas. Co. v. Kipp Flores Architects, L.L.C.*, 602 Fed. Appx. 985, 997 (5th Cir. 2015).

Defendants cannot assert an implied license because the parties had an express contract on this subject. Interpretation of an agreement concerning a copyright license is governed by state law. *Fantastic Fakes v. Pickwick,* 661 F.2d 479 (5th Cir. 1981). In Texas, where an express contract covers the subject matter in dispute, a party cannot assert an implied contract.

> Generally speaking, when a valid, express contract covers the subject matter of the parties' dispute, there can be no recovery under a quasi-contract theory. *Fortune Prod. Co. v. Conoco, Inc.,* 52 S.W.3d 671 (Tex. 2000); *TransAm. Natural Gas Corp. v. Finkelstein,* 933 S. W.2d 591, 600 (Tex. App. --San Antonio 1996, *writ denied*); Lone Star Steel Co. v. Scott, 759 S. W.2d 144, 154 (Tex. App.--Texarkana 1988, *writ denied*). Parties should be bound by their express agreements and when a valid agreement already addresses the matter, recovery under an equitable theory is generally inconsistent with the express agreement. *See TransAm. Natural Gas,* 933 S. W.2d at 600.

*Prime Income Asset Management Inc. v. One Dallas Centre Associates LP,* 358 F. Appx. 569, 572 (5th Cir. 2009). Similarly, under Texas law a party cannot claim to have reasonably relied on alleged oral representations that contradict the express, unambiguous terms of a contract. *E.g.*, *Mut. of Omaha Bank v. Mayer*, No. 4:15-CV-01598, 2016 WL 3654652, at *3 (S.D. Tex. July 7, 2016).

Such is the case here. PWA and Urban Living negotiated an Agreement whereby PWA would license the use of its copyrighted works *only* if Urban Living satisfied certain conditions. Defendants cannot now ignore those provisions as "technicalities" and argue that PWA actually somehow meant to allow defendants to use PWA works regardless of the explicit terms of the Agreement. Nor can they argue any alleged (and to date undisclosed) purported oral modifications of the Agreement where that contract unambiguously provided that any modifications must be in writing.

Because Urban Living and Cameron Architects never complied with the conditions that the parties agreed to in the Agreement for any license, they simply cannot assert any license defense in this case.

D. <u>Defendants Cannot Establish Any Defense of Innocent Infringement.</u>

Finally, defendants assert that even if they infringed PWA's copyrights, any such infringement was "innocent."[9] This defense fails for three reasons. First, there is no competent evidence that defendants' infringement was innocent. Second, as detailed above, all defendants were actually aware of the Agreement – including the acknowledgement that PWA owned valid copyrights in the works covered by it, the specific conditions required for use of PWA's works, and the fact that any unauthorized use would be copyright infringement. There is simply no way that the defendants can credibly assert that they were not on actual notice that what they were doing was unauthorized and would infringe PWA's copyrights. *See Schuchart & Assocs. v. Solo Serve Corp.*, No. SA-81-CA-5, 1983 WL 1147, at *13 (W.D. Tex. June 28, 1983).

Third, all defendants had access (indeed, actual possession) of copies of PWA's works that bore a copyright notice. *See, e.g.*, Ex. 16 and 17. In such circumstances, "no weight shall be given" to the assertion of an innocent infringement defense. 17 U.S.C. §402.[10]

WHEREFORE, PREMISES CONSIDERED, Plaintiff Preston Wood & Associates, LLC prays this Court grant it partial summary judgment as detailed above, and for such and other relief as it may be entitled.

---

[9] Innocent infringement is even not a defense to liability, but only operates to allow for the potential reduction of statutory damages.

[10] The exception mentioned in the last clause of § 402(d) (referencing the last sentence of § 504(c)(2)) is inapplicable because defendants are neither nonprofit educational institutions nor public broadcasting entities.

Respectfully submitted,

Patrick Zummo
State Bar No. 22293450
Two HoustonCenter
909 Fannin, Suite 3500
Houston, Texas77010
(713) 651-0590 (Telephone)
(713) 651-0597 (Facsimile)
pzummo@zoomlaw.com

*/s/ Louis K. Bonham*
Louis K. Bonham
State Bar No. 02597700
Osha Liang L.L.P.
919 Congress Avenue, Suite 919
Austin, Texas78701
(512) 480-0667 (Telephone)
(713) 228-8778 (Facsimile)
bonham@oshaliang.com

ATTORNEYS FOR PLAINTIFF
PRESTON WOOD & ASSOCIATES, LLC

**Certificate of Service**

     I hereby certify that a true and correct copy of the foregoing has been served on counsel of record via hand delivery and electronic filing, on this the 2nd day of March 2018.

                                            */s/ Louis K. Bonham*
                                            Louis K. Bonham