IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| PRESTON WOOD & ASSOCIATES, LLC, § | | |
| § | | |
| Plaintiff, § | | |
| § | | |
| v. § | | Civil Action No. 4:16-cv-01427 |
| § | | |
| RZ ENTERPRISES USA, INC. D/B/A § | | |
| OPPIDAN HOMES, OPPIDAN HOMES § | | Jury Trial Demanded |
| VIII LTD., CAMERON ARCHITECTS, § | | |
| INC., and UL, INC. D/B/A URBAN § | | |
| LIVING, § | | |
| § | | |
| Defendants. § | | |

**DEFDANTS' MEMORANDUM OF LAW ON STAUTORY DAMAGES UNDER THE DIGITAL MILLENIUM COPYRIGHT ACT**

TO THE HONORABLE JUDGE OF SAID COURT:

COME NOW, Defendants UL, INC. D/B/A URBAN LIVING, VINOD RAMANI, CAMERON ARCHITECTS, INC., AND STEPHEN CAMERON ("Defendants") and file their Memorandum of Law on Statutory Damages Under the Digital Millennium Copyright Act and show the following:

**I. Statutory damages under 17 U.S.C. 1203(C)(3)(B) are based on the number of violative acts of Defendant and not the number of recipients or viewers of those acts.**

17 U.S.C. § 1202(b)(1) prohibits the intentional removal or alternation of any copyright management information ("CMI"). 17 U.S.C. § 1202(b)(3), in

1

relevant part, prohibits the distribution copies of works with knowledge that the CMI has been removed or altered without the authority of the copyright owner, knowing, or having reasonable grounds to know, that it will induce, enable, facilitate, or conceal and infringement.

17. U.S.C. § 1203 provides the civil remedies for violations of both § 1201 and § 1202. It provides, in relevant part, that an individual violating of either 1201 or 1202 is liable for *either* actual damages or statutory damages. The amount of statutory damages available varies depending on if the violation falls under 1201 or 1202. 17. U.S.C. § 1203(C)(3)(A) applies to violations of 1201 and reads:

> At any time before final judgment is entered, a complaining party may elect to recover an award of statutory damages **for each violation** of section 1201 in the sum of not less than $200 or more than $2,500 **per act** of circumvention, device, product, component, offer, or performance of service, as the court considers just. (emphasis added).

17 U.S.C. 1203(C)(3)(B) applies to violations of section 1202 and reads:

> At any time before final judgment is entered, a complaining party may elect to recover an award of statutory damages **for each violation** of section 1202 in the sum of not less than $2,500 or more than $25,000. (emphasis added).

The DMCA does not define "each violation," despite the fact that the phrase is of critical importance to determining what amount of statutory damages can be awarded. That task has therefore fallen to the courts.

The district Court for the Western District of Pennsylvania was the first to take up the issue in *McClatchey v. Associated Press*, 2007 U.S. Dist. LEXIS 40416, 2007 WL 1630261, (W.D. Pa. 2007). In *McClatchey*, the Associated Press published a story with a photograph in which it was alleged to have cropped out the copyright management information. *Id.* at *4. That story and the photo was published by AP to its PhotoStream platform where 1,147 of its subscribers received it. *Id.* at *13. McClatchey sought statutory damages for violations of Section 1202 and argued that she was entitled to 1,147 statutory awards of between $2,500 to $25,000 representing each subscriber that received the infringing work. *Id.*

The Court first noted that there is a distinction in the language between Section 1203(C)(3)(A) and (B), specifically that section (B) only includes per violation language. *Id.* at *14. The Court then concluded that the DMCA's damages provisions focus on the Defendant's conduct. *Id.* at *17-19. As such "each violation" means each "violative act performed by Defendant." *Id.* In applying this interpretation, the court held that AP only engaged in one violative act by publishing the photo. *Id.* It did not matter how many people actually viewed or received that single publication. *Id.* This interpretation logically flowed from the idea that statutory damages under the DMCA are provided as an alternative to actual damages in which it provides Plaintiff a

3

windfall. *Id.* Congress, the Court concluded, would not have intended to make the amount of any such windfall independent of Defendant's conduct. *Id.*

In *Stockwire Research Group, Inc. v. Lebed*, 577 F. Supp. 2d 1262 (S.D. Fl. 2008), the Defendant removed copyright notices from a documentary, which the court deemed a violation of Section 1202. The Defendant then posted the video—sans CMI—on a website where it was viewed many times. *Id.* at 1265-67. The Court adopted the reasoning in *McClatchey* and concluded that "the number of unlawful recipients is immaterial for purposes of statutory damages under 1203(C)(3)(B); rather, this Section focuses solely on the Defendant's conduct..." *Id.* at 1267. Rather, the number of violations consisted of "the number of times the unauthorized product was posted on the internet for distribution, regardless of the number of end-recipients." *Id.* The defendant had posted the video three separate times and was therefore committed three violative acts. *Id.* In making its decision the court in *Stockwire,* as with the court in *McClatchey*, referred back to the Congressional intent behind the DMCA. The Court did not believe that in enacting the DMCA "Congress authorized, nor intended, the requested windfall of between $29,465,000.00 to $294,650,000.00 in statutory damages, on the basis of three internet uploads." *Id.* note 8.

4

The Eastern District of Pennsylvania likewise adopted the *McClatchey* interpretation of Section 1203 in *Granger v. One Call Lender Servs., LLC*, 2012 U.S. Dist. LEXIS 104885 (E.D.P.A. 2012). In *Granger* the Defendant placed an infringing version of a software program on their website. *Id.* at *3-4. The Court followed *McClatchey* and *Stockwire* and reaffirmed that "each violative act performed by defendant" is the relevant metric by which to determine statutory damages. *Id.* at *12. The Court further concluded that the number of individual pieces of CMI on a work that were removed is immaterial: all that mattered the numbers of times the infringing product was posted. *Id.* at *13-14. In applying this interpretation, the Court found that the software was posted six times, allowing for six statutory damages awards only, regardless of the number of individuals that used the software. *Id.*

In *Agence Fr. Presse v. Morel*, 934 F. Supp. 2d 547 (S.D.N.Y. 2013), the Southern District of New York adopted the same interpretation of Section 1203. The Court highlighted the differences between damages for violations of 1201 and 1202 as follows:  the statutory damages available for violations of §1201 are "an award of statutory damages for each violation of section 1201 in the sum of not less than $200 or more than $2,500 per act of circumvention." *Id.* at 583. In contrast, the statutory award available for violations of § 1202 is merely assessed "for each violation of § 1202," and contains no parallel reference to

5

damages "per act." *Id.* The omission of the references to damages "per act" differentiates the damages available for violations of § 1202 from those available for violations of § 1201 and demonstrates that damages should not be multiplied based on the number of recipients of the infringing material. *Id.* Damages are instead based on defendant's actions in uploading or distributing the infringing material, regardless of the number of recipients of these images. *Id.* The Court further noted that Defendant could not point to a single case that adopts the view that damages may be assessed under § 1203(c)(3)(B) for each download or receipt of an image with false, removed, or altered CMI. *Id.*

Finally, this Court has adopted *McClatchey* in *Interplan Architects, Inc. v. C.L. Thomas, Inc.,* 2010 U.S. Dist. LEXIS 114306 (S.D. Tex. October 27, 2010)—a case dealing with architectural copyright. In *Interplan* the Court endorsed the *McClatchey* definition of "each violation" to mean each "violative act performed by Defendant." *Id.* at *132.

In the present case, Plaintiff seeks statutory damages for violations of § 1202. In discovery Plaintiff has sought information regarding the number of page views for the webpages containing the allegedly infringing plans. Plaintiff has even included a document listing the page views of these websites as a trial exhibit. The only conceivable relevance of the page views numbers would be to evidence "each violation" of Section 1202 for which Plaintiff seeks statutory

6

damages. As detailed above, there is simply no support in the law for this measure of statutory damages. The number of recipients, or in this case, viewers of a webpage, are irrelevant to the number of violations Defendants allegedly committed for the purposes of Sections 1202 and 1203.

## II. An award of statutory damages under the DMCA must have a plausible relationship to the actual damages suffered by Plaintiff.

Courts have wide discretion in determining the appropriate amount of statutory damages and must consider what is reasonable under the circumstances of the case. *See Craigslist, Inc. v. Doe*, 2011 U.S. Dist. LEXIS 53123 (N.D. Cal., April 2011). In *Craigslist v. Doe* the court rejected Craigslist's request for statutory damages under the DMCA of between $575 million and $7.2 billion. *Id* at *13-14. The court rejected this "exorbitant" award for several reasons. First, it would offend the "canon that [courts] should avoid endorsing statutory interpretations that would lead to absurd results." *Id.* at *14 (Citing *Arista Records LLC v. Lime Group LLC,* 2011 U.S. Dist. LEXIS 24455, 2011 WL 832172 at *3 (S.D.N.Y. 2011). The Court concluded that broad interpretations of the DMCA's "each violation" language which could produce billions in damages would produce an absurd result not intended by Congress. *Id.*

7

Rather, an award of statutory damages under the DMCA, must meet two factors: (1) whether a Plaintiff's actual damages bear a "plausible relationship" to the statutory damages requested, and (2) if the damages award deters defendants as well as other defendants from violating the DMCA rather than just resulting in a windfall for the plaintiff. *Id.* (citing *Adobe Systems, Inc. v. Tilley*, 2010 U.S. Dist. LEXIS 3781, 2010 WL 309249 at *5 (N.D. Cal. 2010). In applying this standard, the court concluded that when Defendant's actual profits from infringement are approximately $315,938, a statutory award of hundreds of millions of dollars is not plausibly related and appropriate. *Id.* at *17.

        Respectfully submitted,

        **STROTHER LAW FIRM**

        _____
        JUSTIN STROTHER
        State Bar No.: 24008100
        Southern District Bar No. 27331
        3000 Weslayan St., Suite 348
        Houston, Texas 77027
        713.545.4937
        jstrother@strotherlawfirm.com

        ATTORNEY FOR DEFENDANTS

**CERTIFICATE OF SERVICE**

I hereby certify that on this the 27th day of August 2018, a true and correct copy of the foregoing document was forwarded to all counsel of record pursuant to the Texas Rules of Civil Procedure.

_____
Justin Strother