IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| PRESTON WOOD & ASSOCIATES, LLC, § | | |
| § | | |
| Plaintiff, § | | |
| § | | |
| v. § | Civil Action No. 4:16-cv-01427 | |
| § | | |
| RZ ENTERPRISES USA, INC. D/B/A § | | |
| OPPIDAN HOMES, OPPIDAN HOMES § | Jury Trial Demanded | |
| VIII LTD., CAMERON ARCHITECTS, § | | |
| INC., and UL, INC. D/B/A URBAN § | | |
| LIVING, § | | |
| § | | |
| Defendants. § | | |

**PLAINTIFF'S SUPPLEMENTAL TRIAL BRIEF
ON DIRECT / INDIRECT PROFITS**

Plaintiff Preston Wood & Associates, LLC ("PWA") files this Supplemental Trial Brief on the issue of direct / indirect profits.

Defendants argue that PWA must present evidence of a "causal link" between defendants' revenues and the infringement. In support, they rely on arguments from cases involving indirect profits, which are revenues from the use of infringing copies rather than from the creation or sales of the copies themselves.

Defendants' argument ignores the distinction between direct profits and indirect profits. Put simply, direct profits require no further proof of any nexus or causal link to the infringement is required. Because defendants' revenues are from

either the creation of the infringing materials (*i.e.*, Cameron's plans; Urban Living's marketing materials) or from the sales of infringing houses (*i.e.,* Urban Living's sales commissions from its sales of the infringing houses in each of the projects in question), no further evidence is required.

**I.     Revenues From the Creation of Infringing Plans and Marketing Materials, and from the Sales Of Infringing Houses, Are Direct Profits.**

Revenues from the creation or sales of infringing copies are direct profits, not indirect profits. In *Interplan Architects*, Judge Ellison explained that infringer's profits "may be direct or indirect." *Id*. at *10. When dealing with direct profits (*i.e.*, the revenues of defendants from the creation of the infringing copies or sales of infringing copies), no additional evidence of a "causal link" is required. *Id.* at *14-15. In contrast, the revenues of the convenience store owner from the operation of the stores constructed from infringing plans were indirect profits that required additional evidence that they were the result of the copying. *Id*. *at* *15. Judge Ellison explained the distinction by quoting *William A. Graham Co. v. Haughey*, 68 F. 3d 425, 442 (3d Cir. 2009), where the court said that indirect profits are "profits earned not by selling an infringing product, but rather earned from the infringer's operations that were enhanced by the infringement." *Id*. *at* *15. He then discussed several cases involving indirect profits, including *Mackie v. Rieser*. In each, the infringing material was used by the defendants in advertising. The plaintiffs sought the

revenues from noninfringing sales generated by the advertising, not from sales of infringing copies themselves. In each case, the copyright owner was required to show a causal link between the use of the infringing material and these revenues from sales of noninfringing products. *Id.* at *17-19.

The Fifth Circuit agrees that to prove direct profits, the plaintiff must show the defendant's revenues from sales of infringing products. *M.G.E. UPS Systems, Inc. v. G.E. Consumer & Industrial, Inc.,* 612 F.3d 760, 767 (5th Cir. 2010), *following Taylor v. Meirick*, 712 F.2d 1112, 1122 (7th Cir. 1983) (finding insufficient for § 504(b) purposes that plaintiff showed defendant's gross revenues from the sales of <u>all</u> products, instead of demonstrating gross revenues from sale of the infringing products).

In this case, PWA is not asserting that it is entitled to claim a share of any defendant's revenues from all sources, or from any unrelated real estate projects. Instead, it is seeking the profits that flow directly from their activities on the creation and/or sale of the infringing copies themselves. Here, Cameron Architects' revenues are what it obtained for the creation of infringing plans – which Judge Ellison found were unquestionably direct profits. *Interplan*, op. at *14. Urban Living's revenues include half of these revenues (under the parties' "partnership" arrangement), but also for the commissions it earned from the sales of the infringing houses in the Nagle, Eado, Stanford, and Patterson projects (for which it also created the

infringing marketing materials). Revenues from the sales of these infringing houses are also direct profits. *See Powell v. Penhollow*, 260 Fed. Appx. 683, 686 (5th Cir. 2007) (gross revenues were the amount the defendant received for the house); *see also Thomas M. Gilbert Architects, P.C. v. Accent Builders and Developers, LLC*, 377 Fed. Appx. 303, 310 (4th Cir. 2010) (revenues from sales of infringing townhouse units); *Bonner v. Dawson*, 404 F.3d 290, 294 (4th Cir. 2005) (all rentals from infringing customer service center); *Frank Betz Associates v. Signature Homes*, No. 3:06-cv-911. Docket 122-1 at pp.22-24 (M.D. Tenn. 2012) (sales price of infringing houses) (copy attached); *Looney Ricks Kiss Architects, Inc. v. Bryan*, 2010 U.S. Dist. LEXIS 129200, *13-14 (W.D. La. 2010) (all revenues from infringing buildings) (copy attached); *Looney Ricks Kiss Architects, Inc. v. Bryan*, 2010 U.S. Dist. LEXIS 129347, *12-14 (W.D. La. 2010) (all rentals from apartments in infringing apartment complexes) (copy attached); *George F. Tibsheraney, Inc. v. Midby Co.*, 2007 U.S. Dist. LEXIS 72897, *8-9 (D. Nev. 2007) (revenues from infringing apartment complex as a whole) (copy attached); *Arthur Rutenberg Homes, Inc. v. Maloney*, 891 F. Supp. 1560 (M.D. Fla. 1995) (sales price of infringing house); *Richmond Homes Management, Inc. v. Raintree, Inc.*, 862 F. Supp. 1517 (W.D. Va. 1994), *aff'd in pertinent part,* 1995 U.S. App. LEXIS 26452 (4th Cir. 1995) *and* 1996 WL 708593 (4th Cir. 1996) (sales prices of infringing houses).

Section 504(b) of the Copyright Act expressly puts the burden of allocating infringer profits to "factors other than the copyrighted work" on the defendant. 17 U.S.C. § 504(b).   Defendants are improperly trying to shift this burden to PWA in violation of the statute.   Because PWA is seeking only direct profits, Defendants arguments are meritless.

        Respectfully submitted,

        Patrick Zummo
        State Bar No. 22293450
        Two HoustonCenter
        909 Fannin, Suite 3500
        Houston, Texas77010
        (713) 651-0590 (Telephone)
        (713) 651-0597 (Facsimile)
        pzummo@zoomlaw.com

        */s/ Louis K. Bonham*
        Louis K. Bonham
        State Bar No. 02597700
        Osha Liang L.L.P.
        909 Fannin Street, Suite 3500
        Houston, Texas 77010
        (713) 228-8600 (Telephone)
        (713) 228-8778 (Facsimile)
        bonham@oshaliang.com

        ATTORNEYS FOR PLAINTIFF
        PRESTON WOOD & ASSOCIATES, LLC

**Certificate of Service**

  I hereby certify that a true and correct copy of the foregoing has been served on counsel of record via electronic filing, on this the 27th day of August 2018.

            */s/ Louis K. Bonham*
            Louis K. Bonham