IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| PRESTON WOOD & ASSOCIATES, LLC. | § § § § | |
| Plaintiff, | § § | |
| | § | CIVIL ACTION NO. 4:16-cv-01427 |
| v. | § § | |
| RZ ENTERPRISES USA, INC. d/b/a OPPIDAN HOMES, OPPIDAN HOMES VII LTD., CAMERON ARCHITECTS, INC., and UL, INC. d/b/a URBAN LIVING, | § § § § § § | JURY TRIAL DEMANDED |
| Defendants. | § § | |

## DEFENDANTS' MOTION FOR ORAL HEARING ON STATUTORY DAMAGES UNDER 17 U.S.C. § 1203

TO THE HONORABLE JUDGE OF SAID COURT:

COME NOW, Defendants UL, INC. D/B/A URBAN LIVING and VINOD RAMANI ("Defendants") and file their Motion for Oral Hearing on Statutory Damages and show the following:

## I.
## Background

Trial in this matter began on August 22, 2018. On August 30, 2018, the jury returned a verdict finding Defendant's UL, Inc. and Vinod Ramani liable to Plaintiff for $7,539.60 in actual damages. As part of their verdict, the jury also

found that Defendants UL, Inc. and Vinod Ramani violated 17. U.S.C. §1202, entitling Plaintiff to statutory damages on that issue.[1] The Court has requested that the parties submit a joint proposed final judgment by October 1, 2018. However, there exists an outstanding question as to the amount of statutory damages appropriate in this matter, and Defendants request an oral hearing to determine those damages prior to the entry of final judgment.

## II.
## The amount of statutory damages awarded under the DMCA is at the discretion of the Court.

Plaintiff is seeking statutory damages under the Digital Millennium Copyright Act ("DMCA"). Specifically, Plaintiff seeks statutory damages under 17 U.S.C. § 1203(c)(3)(B) which provides:

> At any time before final judgment is entered, a complaining party may elect to recover an award of statutory damages for each violation of section 1202 in the sum of not less than $2,500 or more than $25,000. (emphasis added).

Statutory damages are determined by the court, and district courts have "wide discretion in determining the amount of statutory damages to be awarded" *Cf. Peer Intern. Corp. v. Pausa Records, Inc.*, 909 F.2d 1332, 1336 (9th Cir. 1990); *Craigslist, Inc. v. Doe*, 2011 U.S. Dist. LEXIS 53123 (N.D. Cal., April

---

[1] Defendants UL, Inc. and Vinod Ramani were the only Defendants found to have violated this statute. For the purposes of this motion, "Defendants" shall refer only to UL, Inc. and Vinod Ramani and not the other Defendants in this suit.

2011); *Nexon Am., Inc. v. Kumar,* 2012 U.S. Dist. LEXIS 47294 (C.D. Cal. Apr. 3, 2012).

There remains an outstanding question as to the amount of statutory damages Plaintiff is entitled to. Under 17 U.S.C. § 1203(c)(3)(B) the court may award a sum of not less than $2,500 or more than $25,000 for each violation of section 1202. This leaves the Court with two questions: how many violations occurred, and what amount of damages is appropriate for each violation? This motion addresses both questions below.

### III.
### Number of violations: Statutory damages under 17 U.S.C. 1203(C)(3)(B) are based on the number of *violative acts* of Defendant and not the number of recipients or viewers of those acts.

The law regarding the number of statutory violations for removal of copyright management information ("CMI") is *unmistakably* clear: the *only* relevant consideration is the number of violative acts committed by a defendant, regardless of the number of recipients or viewers of those acts. This standard has been applied to photographs, videos, films, and computer programs, and has been applied to a myriad forms of distribution methods: email, website upload, wire service, and streaming. Any argument to the contrary would ask the court to come to a different conclusion than *every court that has considered the issue.*

17 U.S.C. § 1202(b)(1) prohibits the intentional removal or alteration of any copyright management information ("CMI"). 17 U.S.C. § 1202(b)(3), in relevant part, prohibits the distribution copies of works with knowledge that the CMI has been removed or altered without the authority of the copyright owner, knowing, or having reasonable grounds to know, that it will induce, enable, facilitate, or conceal and infringement.

17. U.S.C. § 1203 provides the civil remedies for violations of both § 1201 and § 1202. It provides, in relevant part, that an individual violating of either § 1201 or § 1202 is liable for *either* actual damages or statutory damages. The amount of statutory damages available varies depending on if the violation falls under § 1201 or § 1202. 17. U.S.C. § 1203(C)(3)(A) applies to violations of § 1201 and reads:

> At any time before final judgment is entered, a complaining party may elect to recover an award of statutory damages ***for each violation*** of section 1201 in the sum of not less than $200 or more than $2,500 ***per act*** of circumvention, **device,** product, component, offer, or performance of service, as the court considers just. (emphasis added).

17 U.S.C. 1203(C)(3)(B) applies to violations of section 1202 and reads:

> At any time before final judgment is entered, a complaining party may elect to recover an award of statutory damages ***for each violation*** of section 1202 in the sum of not less than $2,500 or more than $25,000. (emphasis added).

The DMCA does not define "each violation," despite the fact that the phrase is of critical importance to determining what amount of statutory damages may be awarded. That task has therefore fallen to the courts.

### A. *McClatchey* sets the standard.

The district Court for the Western District of Pennsylvania was the first to take up the issue in *McClatchey v. Associated Press*, 2007 U.S. Dist. LEXIS 40416, 2007 WL 1630261, (W.D. Pa. 2007). In *McClatchey*, the Associated Press published a story with a photograph in which it was alleged to have cropped out the copyright management information. *Id.* at *4. That story and the photo was published by AP to its PhotoStream platform where 1,147 of its subscribers received it. *Id.* at *13. McClatchey sought statutory damages for violations of Section 1202 and argued that she was entitled to 1,147 statutory awards of between $2,500 to $25,000 representing each subscriber that received the infringing work. *Id.*

The Court first noted that there is a distinction in the language between Section 1203(C)(3)(A) and (B), specifically that section (B) only includes per violation language. *Id.* at *14. The Court then concluded that the DMCA's damages provisions focus on the Defendant's conduct. *Id.* at *17-19. As such "each violation" means each "violative act performed by Defendant." *Id.* In applying this interpretation, the court held that AP only engaged in one

5

violative act by publishing the photo. *Id.* It did not matter how many people actually viewed or received that single publication. *Id.* This interpretation logically flowed from the idea that statutory damages under the DMCA are provided as an alternative to actual damages in which it provides Plaintiff a windfall. *Id.* Congress, the Court concluded, would not have intended to make the amount of any such windfall independent of Defendant's conduct. *Id.*

### B. The *McClatchy* standard is well-settled, and it has been widely adopted and followed.

In *Stockwire Research Group, Inc. v. Lebed*, 577 F. Supp. 2d 1262 (S.D. Fl. 2008), the defendant removed copyright notices from a documentary, which the court deemed a violation of Section 1202. The Defendant then posted the video—sans CMI—on a website where it was viewed many times. *Id.* at 1265-67. The Court adopted the reasoning in *McClatchey* and concluded that "the number of unlawful recipients is immaterial for purposes of statutory damages under 1203(C)(3)(B); rather, this Section focuses solely on the Defendant's conduct…" *Id.* at 1267. Rather, the number of violations consisted of "the number of times the unauthorized product was posted on the internet for distribution, regardless of the number of end-recipients." *Id.* The defendant had posted the video three separate times and was therefore committed three violative acts. *Id.* In making its decision the court in

6

*Stockwire,* as with the court in *McClatchey*, referred back to the Congressional intent behind the DMCA. The Court did not believe that in enacting the DMCA "Congress authorized, nor intended, the requested windfall of between $29,465,000.00 to $294,650,000.00 in statutory damages, on the basis of three internet uploads." *Id.* note 8.

The Eastern District of Pennsylvania likewise adopted the *McClatchey* interpretation of Section 1203 in *Granger v. One Call Lender Servs., LLC*, 2012 U.S. Dist. LEXIS 104885 (E.D.P.A. 2012). In *Granger* the Defendant placed an infringing version of a software program on their website. *Id.* at *3-4. The Court followed *McClatchey* and *Stockwire* and reaffirmed that "each violative act performed by defendant" is the relevant metric by which to determine statutory damages. *Id.* at *12. The Court further concluded that the number of individual pieces of CMI on a work that were removed is immaterial: all that mattered the numbers of times the infringing product was posted. *Id.* at *13-14. In applying this interpretation, the Court found that the software was posted six times, allowing for six statutory damages awards only, regardless of the number of individuals that used the software. *Id.*

In *Agence Fr. Presse v. Morel*, 934 F. Supp. 2d 547 (S.D.N.Y. 2013), the Southern District of New York adopted the same interpretation of Section 1203. The Court highlighted the differences between damages for violations of

7

1201 and 1202 as follows: the statutory damages available for violations of §1201 are "an award of statutory damages for each violation of section 1201 in the sum of not less than $200 or more than $2,500 per act of circumvention." *Id.* at 583. In contrast, the statutory award available for violations of § 1202 is merely assessed "for each violation of § 1202," and contains no parallel reference to damages "per act." *Id.* The omission of the references to damages "per act" differentiates the damages available for violations of § 1202 from those available for violations of § 1201 and demonstrates that damages should not be multiplied based on the number of recipients of the infringing material. *Id.* Damages are instead based on defendant's actions in uploading or distributing the infringing material, regardless of the number of recipients of these images. *Id.* The Court further noted that Plaintiff could not point to a single case that adopts the view that damages may be assessed under § 1203(c)(3)(B) for each download or receipt of an image with false, removed, or altered CMI. *Id.*

Most recently, the "well-accepted *McClatchey* rule" was applied in case where a photograph was stripped of its CMI and uploaded to a website. *Reilly v. Plot Commerce,* 2016 U.S. Dist. LEXIS 152154, *33 (S.D.N.Y. October 2016). The *Reilly* court further clarified the application of statutory damages under § 1202 in the instance when an image is uploaded to a website. In doing so, the

8

court further solidified the concept that each act of the defendant is the only relevant measure of violations. In *Reilly,* the plaintiff—likely because the argument has already been soundly rejected by all other courts—did not attempt to argue that the number of webpage views was the relevant measure of violations. Instead, the Plaintiff argued that each individual page within defendant's website in which her photograph appeared counted as a separate violation. *Reilly* at *31. Since the image appeared on five pages, she argued she was entitled to five statutory violations. In applying *McClatchey* the court rejected this argument: the act of uploading the infringing image onto the site was one violation, regardless of how any individual pages it could be viewed on. *Id.* at *32.

### C. The Southern District, through Judge Ellison, has adopted the well-accepted *McClatchey* rule.

The Southern District of Texas has adopted *McClatchey* in *Interplan Architects, Inc. v. C.L. Thomas, Inc.,* 2010 U.S. Dist. LEXIS 114306 (S.D. Tex. October 27, 2010)—a case dealing with architectural copyright. In *Interplan,* Judge Ellison endorsed the *McClatchey* definition of "each violation" to mean each "violative act performed by Defendant." *Id.* at *132. Judge Ellison in fact, takes the § 1202 analysis a step further and cites to a Minnesota district court case from which he concludes "a DMCA "violation" for purposes of calculating

9

statutory damages as Defendant's removal of a digitally embedded watermark from plaintiff's copyrighted photograph rather than Defendant's distribution of plaintiff's photograph in print and web advertisements". *Id.* at *133.

The courts could not be clearer on this issue: the number violations of § 1202 is measured by each violative act of a defendant without regard to the number of recipients or viewers. This is not a disputed question: there is no split or disagreement among any courts that have considered it. The only question for the Court in the present case then is how many individual acts Defendants engaged in that violate § 1202.

### D. The maximum number of § 1202 violations in this case is two.

The application of the well settled law to this case poses a number of issues. First, the jury was allowed to see evidence of the number of page views of the Urban Living website that contained the allegedly violative marketing image. Plaintiff's motive here was obvious: the evidence of page views served no purpose other than allow Plaintiff to make arguments that were contrary to the law. Second, the Jury was instructed that they could consider each violative act of the Defendants in determining violations, but were not instructed, despite Defendants' request, that they could not consider the number of page views. Not only should the jury never have been asked how many "violations" occurred—a legal question left for the court to determine—

10

if they were to be asked that question they should have been fully instructed on the law. The damage here is, again, obvious: during closing the Plaintiff argued—despite being contrary to the law—that the jury should consider the number of page views in determining violations. And the verdict shows that the Jury obviously did so: the only way they could have come to the extreme number of "violations" they found was by considering page views. These errors are obvious and plain and would easily provide grounds for a new trial should the Court not correct this issue when entering judgment.

The number of violations of § 1202 for which there was evidentiary support at trial is two: one for the email blast and one for the upload of the marketing image to UL's website. This is the only conclusion that comports with the law, and the Court should consider no more than two awards of statutory damages when entering judgment. The number of viewers or recipients of the page views or email do not increase the number of violations beyond the number of individual acts committed by Defendant.

Plaintiff is requesting the Court enter an absurd result of imposing $28,790,000 in statutory damages from a total of 11,516 violations. The only argument that this is the correct figure is the argument that every federal judge that has considered and interpreted the statute is wrong and that Plaintiff is right. Yet only Plaintiff's interpretation produces an absurd

11

result—tens of millions of dollars in statutory damages when the actual damages attributed to the Defendants is only $7,529—while the interpretation of every federal judge produces the fair and just result. It is impossible to conclude that congress intended an infringement which resulted from the failure to pay a $250 licensing fee to result in a Plaintiff becoming a multimillionaire.

This court should rule consistently with every other federal court that has considered this question previously and consider only the violative acts of Defendants. Based on the evidence at trial, that number is two.

### IV.
### Amount of Damages: the appropriate award of statutory damages is the minimum amount of $2,500 per violation for a total of $5,000.

**A. The Court should not stray from Plaintiff's request for the minimum statutory damages of $2,500 per violation.**

The second question for the court is what the proper amount of damages, on a range from $2,500 to $25,000, is proper for each violation. This question should be easy: Plaintiff—perhaps in an attempt to prevent its already absurd request from becoming a historically absurd one—has requested the minimum amount of $2,500 per violation. The Court should not stray from this request, even if it finds a lower number of violations than anticipated by Plaintiff. Under Plaintiff's interpretation of the law this Court

has the ability to award Plaintiff $287,900,000. Such an award would provide a ratio of actual to statutory damages of approximately 1:38,239. Even an award of the minimum damages under Plaintiff's theory would produce a ratio of 1:3,824.

### B. An award of statutory damages must have a plausible relationship to the actual harm in the case.

Courts have wide discretion in determining the appropriate amount of statutory damages and must consider what is reasonable under the circumstances of the case. *See Craigslist, Inc. v. Doe*, 2011 U.S. Dist. LEXIS 53123 (N.D. Cal., April 2011). In *Craigslist v. Doe* the court rejected Craigslist's request for statutory damages under the DMCA of between $575 million and $7.2 billion. *Id* at *13-14. The court rejected this "exorbitant" award for several reasons. First, it would offend the "canon that [courts] should avoid endorsing statutory interpretations that would lead to absurd results." *Id.* at *14 (Citing *Arista Records LLC v. Lime Group LLC,* 2011 U.S. Dist. LEXIS 24455, 2011 WL 832172 at *3 (S.D.N.Y. 2011). The Court concluded that broad interpretations of the DMCA's "each violation" language which could produce billions in damages would produce an absurd result not intended by Congress. *Id.*

13

Rather, an award of statutory damages under the DMCA, must meet two factors: (1) whether a Plaintiff's actual damages bear a "plausible relationship" to the statutory damages requested, and (2) if the damages award deters defendants as well as other defendants from violating the DMCA rather than just resulting in a windfall for the plaintiff. *Id.* (citing *Adobe Systems, Inc. v. Tilley,* 2010 U.S. Dist. LEXIS 3781, 2010 WL 309249 at *5 (N.D. Cal. 2010). The result must be tied to the conduct of Defendants as "Congress would not have intended to make the statutory damages windfall totally independent of the defendant's conduct." *McClatchey,* at *6.

C. **Any award of damages beyond the minimum—and any award for more than two violations—would result in a windfall for Plaintiff that is in no way tied to Defendants' conduct in this case.**

Here the resulting windfall requested by Plaintiff is wholly unmoored from the conduct of the Defendants. At trial there was evidence of two actions by Defendants which violated § 1202: one email blast of marketing materials and one upload of a marketing image to a website. Plaintiff argues that the acts of third parties—the individuals who log on to Urban Livings website—should be imputed on Defendants. Further, Plaintiff has not even alleged that the Defendants emailed or uploaded the copyrighted plans themselves, but that Defendants distributed marketing materials for homes that were constructed based on a derivative of the infringing work. It is not as if

14

Defendants took the copyrighted plans themselves and sold or emailed then to builders, or that the marketing materials themselves had any inherent value outside of advertising the infringing homes. Rather, the marketing materials complained of severed only to advertise the infringing homes—the profits from the sale of which Plaintiff has already been awarded—and therefore the number of times they were viewed had no additional impact on Plaintiff's damages.

Compare the distribution of the marketing materials at issue in this case to that of the distribution of a copyrighted photograph in *McClatchey* or the distribution of a film as in *Stockwire.* In those cases, the material being distributed was the actual copyrighted work, which the plaintiffs would have otherwise sold, so each distribution could arguably be considered a lost sale. The additional impact of increased views in that scenario is obvious (although in both cases the court *still* declined to consider the number of viewers). In this case the distributed materials are marketing materials for a derivative work of the underlying copyrighted work. They are not the copyrighted work nor are they even derivatives of the copyrighted work: they are derivatives of the derivative. Their sole purpose was to advertise the Nagle properties. Unlike a film or photograph, which could be sold theoretically an unlimited

number of times, once the Nagle properties were sold the marketing materials had no further value.

The Court should not stray from Plaintiff's request of minimum statutory damages of $2,500 per violation. This request is supported by law and the facts of this case.

## V.
## Alternatively, remittitur is appropriate.

Alternatively, should the Court reject the case law on statutory damages under § 1202 and find that an award of tens of millions or hundreds of millions of dollars is required by the law, remittitur is appropriate. Generally, remittitur is appropriate under two circumstances: (1) when the court discerns "an error that caused the jury to include in the verdict a quantifiable amount that should be stricken" or (2) when the award is "intrinsically excessive" in the sense that no reasonable jury could have awarded the amount, whether or not the excessiveness can be attributed to "a particular, quantifiable error." *Agence Fr. Presse v. Morel,* 2014 U.S. Dist. LEXIS 112436 (S.D.N.Y 2014) (internal quotations omitted). Where there is no discernible error, the jury's verdict should be set aside as intrinsically excessive only if "the award is so high as to shock the judicial conscience and constitute a denial of justice." *Id.*

Remittitur is appropriate for two reasons: first the Jury's finding of 11,516 violations of § 1202 (which is effectively a finding of $28,790,000 to $287,900,000 in statutory damages) is a clear error and against the well settled law—as detailed at length above— and should be stricken. Even if, hypothetically, this were not a particular, quantifiable error such an award is intrinsically excessive. Second, even if the court were to find that this was not an error, the award is so high as to shock the judicial conscience and constitute a denial of justice. An award of statutory damages of $28,790,000 to $287,900,000 based on a finding of $7,539 in actual damages—a ratio of 1:3,824 and 1:38,239 respectively— is shocking, particularly considering the minimal actions taken by Defendants and the actual impact of such actions on Plaintiff. Far from simply compensating Plaintiff for its damages and providing a deterrent to Defendant, such an award would provide an enormous windfall to Plaintiff that bears zero relation to the actual circumstances of the case.

## VI.
## Prayer

WHEREFORE, PREMISES CONSIDERED, Defendants respectfully request that the Court grant this motion and schedule an oral hearing to determine statutory damages.

Respectfully submitted,

**STROTHER LAW FIRM**

_____
JUSTIN STROTHER
State Bar No.: 24008100
Southern District Bar No. 27331
3000 Weslayan St., Suite 348
Houston, Texas 77027
713.545.4937
jstrother@strotherlawfirm.com

ATTORNEY FOR DEFENDANTS

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 1st day of October 2018, a true and correct copy of the foregoing has been forwarded to all counsel of record via electronic service through the court clerk.

_____
Justin Strother

Respectfully submitted,

**STROTHER LAW FIRM**

_____
JUSTIN STROTHER
State Bar No.: 24008100
Southern District Bar No. 27331
3000 Weslayan St., Suite 348
Houston, Texas 77027
713.545.4937
jstrother@strotherlawfirm.com

ATTORNEY FOR DEFENDANTS

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 1st day of October 2018, a true and correct copy of the foregoing has been forwarded to all counsel of record via electronic service through the court clerk.

_____
Justin Strother