**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| PRESTON WOOD & ASSOCIATES, LLC, | § § § | |
| Plaintiff, | § § | |
| v. | § | Civil Action No. 4:16-cv-01427 |
| | § | |
| RZ ENTERPRISES USA, INC. D/B/A OPPIDAN HOMES, OPPIDAN HOMES VIII LTD., CAMERON ARCHITECTS, INC., and UL, INC. D/B/A URBAN LIVING, | § § § § § § § | Jury Trial Demanded |
| Defendants. | § | |

## PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION FOR ORAL HEARING ON STATUTORY DAMAGES UNDER 17 U.S.C. §1203

Patrick Zummo
State Bar No. 22293450
Law Offices of Patrick Zummo
Two Houston Center
909 Fannin, Suite 3500
Houston, Texas 77010
(713) 651-0590 (Telephone)
(713) 651-0597 (Facsimile)
pzummo@zoomlaw.com

Louis K. Bonham
State Bar No. 02597700
Osha Liang L.L.P.
909 Fannin Street, Suite 3500
Houston, Texas 77010
(713) 228-8600 (Telephone)
(713) 228-8778 (Facsimile)
bonham@oshaliang.com

*ATTORNEYS FOR PLAINTIFF
PRESTON WOOD & ASSOCIATES, LLC*

# TABLE OF CONTENTS

I. SUMMARY OF THE ARGUMENT ................................................................2

II.  ARGUMENT ........................................................................................4

      A.    The Evidence Supports the Jury's Verdict that Urban Living Committed 11,516 Violations of the DMCA. .......................................4

           1.    The Court's Discretion Is Constrained by The Range of Statutory Damages in §1203. .......................................5

           2.    The Email Evidence Alone Supports the Jury's Verdict. ...........6

           3.    The Web Page Report Showed 8,578 Individual Acts. ............10

           4.    McClatchey and its progeny are flawed and conflict with controlling Fifth Circuit precedent. ...........................................11

      B.    The Statute Says "What Amount of Damages Is Appropriate for Each Violation." .......................................................................16

      C.    Defendants Have No Right to a Remittitur. .......................................17

III.  CONCLUSION AND PRAYER .....................................................................20

# TABLE OF AUTHORITIES

## Cases

*Agence France Presse v. Morel*, 934 F. Supp. 2d 547 (S.D.N.Y. 2013)................13

*Atlantic Recording Corp. v. Anderson*, No. H-06-3578, 2008 U.S. Dist. LEXIS 53654, 2008 WL 2316551 (S.D. Tex. March 12, 2008) ..............................19

*Baltazor v. Holmes*, 162 F.3d 368 (5th Cir. 1998) ...................................................8

*Conkling v. Turner*, 18 F.3d 1285 (5th Cir. 1994)....................................................8

*Design Basics, LLC v. Drexel Bldg. Supply, Inc.*, No. 13-C-560, 2016 U.S. Dist. LEXIS 137713 (E.D. Wis. Oct. 4, 2016).........................................................9

*Ellis v. Weasler Eng'g Inc.*, 258 F.3d 326 (5th Cir. 2001).......................................8

*Energy Intelligence Group, Inc. v. Kayne Anderson Capital Advisors, LP,* No. H-14-1903, 2018 U.S. Dist. LEXIS 74174 (S.D. Tex. May 2, 2018) ..............19

*F.W. Woolworth Co. v. Contemporary Arts, Inc.*, 344 U.S. 228 (1952) ...... 6, 18, 19

*Goldman v. Healthcare Management Systems, Inc.*, 559 F. Supp. 2d 853 (W.D. Mich. 2008).......................................................................................... 11, 12

*Granger v. One Call Lender Services, LLC*, No. 10-3442, 2012 U.S. Dist. LEXIS 104885 (E.D. Pa. July 26, 2012) .................................................................12

*Greg Young Publishing, Inc. v. Zazzle, Inc.*, No. 2:16-CV-04587-SVW-KS, 2017 U.S. Dist. LEXIS 100268 (C.D. Cal. May 1, 2017)....................................13

*Hernandez v. M/V Rajaan*, 841 F.2d 582 (5th Cir. 1988) .................................. 4, 17

*Interplan Architects, Inc. v. C. L. Thomas, Inc.*, No. 4:08-cv-03181, 2010 U.S. Dist. LEXIS 114306, 2010 WL 4366990 (S.D. Tex. Oct. 27, 2010)..... 13, 14

*Jackson v. Stranco, Inc.*, 514 F. App'x 528 (5th Cir. 2013) .................................8, 9

*Johnson v. Sawyer*, 120 F.3d 1307 (5th Cir. 1997) ................................................17

*L.A. Westermann Co. v. Dispatch Printing Co*., 249 U.S. 100 (1919).................5, 6

*Lyons Partnership, LP v. Morris Costumes, Inc.*, 243 F.3d 789 (4th Cir. 2001) ....18

*McClatchey v. Associated Press,* No. 305-CV-145, 2007 U.S. Dist. LEXIS 40416, 2007 WL 1630261 (E.D. Pa. June 4, 2007)................................. 9, 10, 11, 14

*McCoy v. Housing Auth. of New Orleans*, No. 15-398, 2016 U.S. Dist. LEXIS 190621 (E.D. La. Oct. 9, 2016) ....................................................................13

*Peer Int'l Corp. v. Pausa Records, Inc.*, 909 F.2d 1332 (9th Cir. 1990)........ 2, 5, 19

*Petrella v. MGM*, Inc. 572 U.S. 663, 134 S. Ct. 1962, 188 L.Ed.2d. 979 (2014)...17

*Point 4 Data Corp. v. Tri-State Surgical Supply & Equip., Ltd.*, No. 11-CV-726 CBA, 2012 WL 3306600 (E.D.N.Y. June 13, 2012) ....................................17

*Reilly v. Plot Commerce*, No. 15-CV-05118 (PAE) (BCM), 2016 U.S. Dist. LEXIS 152154 (S.D.N.Y. Oct. 31, 2016)..................................................................12

*Sony Computer Entertainment Amer., Inc. v. Filipiak*, 406 F. Supp. 2d 1068 (N.D. Cal. 2005) ....................................................................................................18

*Stockwire Research Group, Inc. v. Lebed*, 577 F. Supp. 2d 1262, Finding of Fact No.15 (S.D. Fla. 2008) ....................................................................................12

*United States v. Sosa-Pintor*, No. 17-40342, 2018 U.S. App. LEXIS 18868 (5th Cir. July 11, 2018) .........................................................................................15

**Statutes**

17 U.S.C §1202 ............................................................................ 1, 4, 8, 13

17 U.S.C. §1203 ............................................................................ 1, 4, 9, 16

17 U.S.C. §501(a) ................................................................................14

17 U.S.C. §504(c) ............................................................................ 5, 18

18 U.S.C. §2252A ................................................................................15

**Other Authorities**

21 Charles Alan Wright & Kenneth W. Graham, Jr., *Fed. Prac. & Proc*. § 5037.18 (2d ed. West 2009)..........................................................................................13

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| PRESTON WOOD & ASSOCIATES, LLC, | § § § | |
| Plaintiff, | § § | |
| v. | § § | Civil Action No. 4:16-cv-01427 |
| RZ ENTERPRISES USA, INC. D/B/A OPPIDAN HOMES, OPPIDAN HOMES VIII LTD., CAMERON ARCHITECTS, INC., and UL, INC. D/B/A URBAN LIVING, | § § § § § § § | Jury Trial Demanded |
| Defendants. | § | |

## PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION FOR ORAL HEARING ON STATUTORY DAMAGES UNDER 17 U.S.C. §1203

Plaintiff Preston Wood & Associates, LLC ("PWA") responds to Defendants' Motion for Oral Hearing on Statutory Damages Under 17 U.S.C. §1203, Document No. 176. ("Motion").  Defendants do not deny that they violated §1202 of the Digital Millennium Copyright Act ("DMCA"). Motion p. 2. Instead, they ask for a hearing on two questions: "how many violations occurred, and what amount of damages is appropriate for each violation?" Motion at p. 3.  There is no need for a hearing.  The first question has been answered by the jury, and the second is answered by the statute.  The Motion should be denied.

1

## I.  SUMMARY OF THE ARGUMENT

Defendants claim that the Court has discretion to set aside the jury's answer to Question No. 10, that Urban Living committed 11,516 violations of DMCA §1202, and to substitute a new answer that there were only two violations.  The Court has no such discretion.  While it is true that the Court has discretion to set statutory damages within the statutory range, *Peer Int'l Corp. v. Pausa Records, Inc.*, 909 F.2d 1332, 1336 (9th Cir. 1990), this discretion is "***constrained … by the specified maxima and minima***" in the statute.  *Id.* (emphasis added).  PWA seeks only the minimum damages in the range allowed by DMCA §1203.  The cases cited by Defendants on the Court's discretion to set damages within the statutory range do not apply.

Defendants do not dispute the jury's answer to Question No. 9 -- that Urban Living violated DMCA §1202.  Instead, the Motion addresses only Question No. 10, which asked the jury how many times Urban living violated §1202.  This was a fact question, on which the evidence was disputed.  The jury's answer is supported by the evidence.

The evidence showed that Urban Living distributed copies or derivatives of PWA's works without PWA's copyright management information in two ways, by emails and by sending images from the Urban Living website.  Vinod Ramani testified that Urban Living sent between 8,000 and 15,000 emails with infringing

Nagle images that each violated §1202.  The jury's answer to Question No. 10 is within this range, and the evidence of Urban Living's email distributions by itself is sufficient to support the answer to Question No. 10.

Defendants' claim that the emails were distributed in only one "violative act" is contrary to Agreed and Stipulated Fact 34, that Urban Living's distributions of Nagle marketing materials included "e-mail distributions to prospective purchasers and real estate agents, and e-mail transmissions to other persons." Document No. 170-1, page 25 of 26.  Defendants' claim is also contrary to the testimony of Vinod Ramani, that "somewhere between 8,000 and 15,000 e-mails were sent out" by Urban Living with the Nagle marketing materials.  Document No. 178-2 ("Transcript"), p. 4 at 10:36.

Defendants' claim that the distributions by the Urban Living website were only one "violative act" is also contrary to Agreed and Stipulated Fact 34, that Urban Living's distributions of Nagle marketing materials included "distributions via Urban Living's webpages for those projects…."  Unlike the cases cited by defendants involving wire services and websites with no evidence of actual transmissions to individual addresses, the evidence at trial was that the analytics report of the Nagle web page summarized the number of times that remote computers received images from the Urban Living website, 8,578 times. Transcript, p. 9 at 10:43, and Plaintiff's Exhibit 113.  This specific testimony about

actual, distinct distributions is additional support for the jury's answer to Question No. 10.

Defendants' request for remittitur is outside the scope of remittitur. Remittitur allows a court to reduce an excessive damage verdict to the maximum amount a trier of fact could have awarded. *Hernandez v. M/V Rajaan*, 841 F.2d 582, 587 (5th Cir. 1988). Because PWA limited its DMCA §1203 claim to the minimum statutory damages, the jury was not asked a damages question and there is no excessive damages verdict for the Court to address or remit. Moreover, if there had been one, the Court could only order remittitur to the statutory maximum of $25,000 per violation. Finally, there is nothing inequitable about damages of thousands of dollars for every intentional violation of a federal statute.

## II.  ARGUMENT

### A.    *The Evidence Supports the Jury's Verdict that Urban Living Committed 11,516 Violations of the DMCA.*

In response to Question No. 10, the jury found that Urban Living committed 11,516 violations of DMCA §1202(b).  Verdict, Document No. 170-1, p. 42. At Defendants' request, the Court instructed the jury: "To determine the number of violations you are to consider only the number of individual acts committed by a Defendant that violate this law." *Id.* at 29. The evidence supports the jury's verdict.

> 1.    *The Court's Discretion Is Constrained by The Range of Statutory Damages in §1203.*

Defendants misquote their very first case citation to claim that the Court has discretion to set aside the jury's answer to Question No. 10 and substitute a new answer that there were only two violations. The Court has no such discretion.

Defendants quote *Peer Int'l Corp. v. Pausa Records, Inc.*, 909 F.2d 1332 (9th Cir. 1990), for the proposition that the Court has "wide discretion" in determining statutory damages, Motion p. 2, but leave out a critical limit on such discretion. In *Peer Int'l*, the district court awarded the maximum amount of statutory damages under 17 U.S.C. §504(c)(1). At that time, the statutory maximum was $50,000 per violation, and the court entered summary judgment for a total of $4,000,000 based on 80 willful infringements. The Ninth Circuit affirmed, explaining that "the court has wide discretion in determining the amount of statutory damages to be awarded, ***constrained only by the specified maxima and minima***." *Id. at* 1336 (emphasis added). Defendants left out this last phrase when they quoted this opinion in their Motion. *See* p. 2. Contrary to Defendants' argument, *Peer Int'l* does not hold that courts have discretion to deviate from a damage range established by statute; in fact, it holds just the opposite.

The Supreme Court has long held that a court has no discretion to award statutory damages below the statutory minimum. In *L.A. Westermann Co. v. Dispatch Printing Co.*, 249 U.S. 100 (1919), the court held:

In other words, the court's conception of what is just in the particular case, considering the nature of the copyright, the circumstances of the infringement and the like, is made the measure of the damages to be paid, *but with the express qualification that in every case the assessment must be within the prescribed limitations, that is to say, neither more than the maximum nor less than the minimum. Within these limitations the court's discretion and sense of justice are controlling, but it has no discretion when proceeding under this provision to go outside of them.*

*Id.* at 106-07) (emphasis added); *see also F.W. Woolworth Co. v. Contemporary Arts, Inc.*, 344 U.S. 228, 232 (1952) (same).

2.   *The Email Evidence Alone Supports the Jury's Verdict.*

Urban Living stipulated that it distributed the Nagle marketing materials in e-mails and on its website.  Agreed and Stipulated Fact 34, Document No. 170-1, page 25 of 26.  Vinod Ramani agreed that "somewhere between 8,000 and 15,000 e-mails were sent out" by Urban Living with the Nagle marketing materials. Transcript, p. 4 at 10:36.  The jury's answer to Question No. 10 is within this range, and the email distributions alone are sufficient to support this verdict.

Defendants claim that the email evidence showed a single violation, "one for the email blast." Motion p. 11.  This is contrary to the trial evidence that Urban Living sent multiple emails with the Nagle marketing materials.  In Agreed and Stipulated Fact 34, the jury heard and saw that Urban Living's distributions of the Nagle materials included "e-mail distributions to prospective purchasers and real estate agents, and e-mail transmissions to other persons." Document No. 170-1,

page 25 of 26.   Defendants' claim is also contrary to the testimony of Vinod Ramani, that "somewhere between 8,000 and 15,000 ***e-mails*** were sent out" by Urban Living with the Nagle marketing materials.   Transcript, p. 4 at 10:36 (emphasis added).   This evidence of multiple emails — ***plural*** — are of "individual acts committed by a Defendant," and supports the jury's answer to Question No. 10.

Defendants' claim that there was only one email blast would have to be based on Vinod Ramani's testimony, as he was the only witness from Urban Living at trial.   Mr. Ramani had no personal knowledge of how "blast emails" were actually sent.   "We have a marketing team that does this. So I don't know every email blast that goes out."   Transcript, p. 5 at 10:38.   The Court asked him: "Who would know that if it's not you?" He answered:

> Sir, we have almost 50 people. We have a marketing team that does that. So I'm not involved in every e-mail blast that goes out, Your Honor. I apologize. I wouldn't know that off the top of my head right now.

*Id.*   Mr. Ramani had no personal knowledge of how Urban Living sent these emails.

It was up to the jury to decide whether to accept all, some or none of the Ramani testimony.   A court reviewing the sufficiency of the evidence views the entire record in the light most favorable to the non-movant, drawing all factual inferences in   favor   of   the   non-moving   party,   and   "leaving   credibility

determinations, the weighing of evidence, and the drawing of legitimate inferences from the facts to the jury." *Conkling v. Turner*, 18 F.3d 1285, 1300 (5th Cir. 1994).

> We accord great deference to the jury's verdict when evaluating the sufficiency of the evidence. Under this standard, we view all of the evidence in the light most favorable to the verdict and reverse only if the evidence points "so strongly and overwhelmingly in favor of one party that the court believes that reasonable [jurors] could not arrive at any contrary conclusion."

*Baltazor v. Holmes*, 162 F.3d 368, 373 (5th Cir. 1998), quoting *Boeing v. Shipman*, 411 F.2d 365, 374 (5th Cir. 1969) (en banc). A court "may not make credibility determinations or weigh the evidence.'" *Ellis v. Weasler Eng'g Inc.*, 258 F.3d 326, 337 (5th Cir. 2001).

The Court instructed the jury to consider "individual acts committed by a defendant" to determine the number of DMCA §1202 violations. There was evidence of multiple emails sent by Urban Living with the Nagle marketing materials. Defendants argued that this was only a single act, but their only evidence was testimony from a witness who admitted he had no knowledge of or involvement in how it was done. The jury was within its rights to disregard this testimony and to answer based on the total number of emails — ***plural*** — that Urban Living admittedly sent.

To Defendants, their view of the evidence is the only one that matters, a common but unavailing position. In *Jackson v. Stranco, Inc.*, 514 F. App'x 528 (5th Cir. 2013), the jury believed the plaintiff and answered the damage question based

on his records and testimony. The defendant "resists this conclusion primarily by arguing that Jackson lacked credibility and construing conflicting evidence in *its* favor." *Id.* at 531. "We decline this invitation to substitute our own views for that of the jury. *Id.*, citing *Foradori v. Harris*, 523 F.3d 477, 485 (5th Cir. 2008).

Finally, Defendants rely heavily on *McClatchey v. Associated Press,* No. 305-CV-145, 2007 U.S. Dist. LEXIS 40416, 2007 WL 1630261 (E.D. Pa. June 4, 2007), and claim that it "sets the standard" that the number of recipients or viewers of individual "violative acts" is irrelevant. Motion p. 5.  They attempt to extend *McClatchey* to emails by arguing that it "has been applied to a myriad forms of distribution methods: ***email***, . . ." Motion p. 3 (emphasis added).  This claim is false.  Not one of the cases cited in their Motion, pp. 5-10, involved distributions by email.

Although Defendants say that "*every court that has considered the issue*" has held that the number of individual recipients is irrelevant to the number of violations of §1203, Motion p. 3 (emphasis in orginal), at least one court has explained that if McClatchey had involved emails, there would have been over a thousand violations. In *Design Basics, LLC v. Drexel Bldg. Supply, Inc.*, No. 13-C-560, 2016 U.S. Dist. LEXIS 137713 (E.D. Wis. Oct. 4, 2016), a case not mentioned by Defendants, the court explained that each email would be a separate violation:

Under *McClatchy*'s line of reasoning, if the defendant had sent 1,147 emails, that would result in 1,147 violations even if the emails contained the same copyrighted photo. Accordingly, the motion in limine [to exclude the plaintiff's damages expert] is denied.

*Id.* at *10.  The jury in this case was entitled to find that each Urban Living email was a discrete distribution to each recipient, and that sending each email involved some individual act, such as including that addressee on the "To" bar.

### 3.     *The Web Page Report Showed 8,578 Individual Acts.*

Defendants also claim that the website evidence showed a single violation, "one for the upload of the marketing image." Motion p. 11.  Like their email argument, this is also contrary to Agreed and Stipulated Fact 34, that Urban Living's distributions of Nagle marketing materials included "**distributions** via Urban Living's webpages for those projects…." Document No. 170-1, page 25 of 26 (emphasis added).  Urban Living stipulated that these were "distributions" — *plural* — not a single "violative act."

The other evidence at trial confirmed Defendants' stipulation that there were multiple "distributions" via Urban Living's website.  Urban Living's Google Analytics report of its Nagle web page summarized the number of times that the Urban Living website sent images to other computers. Transcript, p. 9 at 10:43 and Plaintiff's Exhibit 113.  This happened 8,578 times. *Id.* This specific evidence of

actual, distinct distributions is additional support for the jury's answer to Question No. 10.

> ### 4. *McClatchey and its progeny are flawed and conflict with controlling Fifth Circuit precedent.*

Defendants' Motion is predicated almost entirely on *McClatchey v. Associated Press,* No. 305-CV-145, 2007 U.S. Dist. LEXIS 40416, 2007 WL 1630261 (E.D. Pa. June 4, 2007) and cases that cite it. These cases do not involve emails and do not hold that e-mails are not discrete distributions, each of which can be a §1202 violation. The evidence that Urban Living sent 8,000 – 15,000 e-mails is thus more than enough to support the jury's verdict, and this Court does not need to address *McClatchey* to decide this Motion.

Defendants claim that "*every court that has considered the issue*" has held that the number of individual recipients is irrelevant to the number of violations of §1202. Motion at p. 3 (emphasis in original). This is not true: in *Goldman v. Healthcare Management Systems, Inc.*, 559 F. Supp. 2d 853 (W.D. Mich. 2008), the court refused to follow *McClatchey*:

> The DMCA authorizes statutory damages for each instance in which a copy of an infringed program was provided to a third party. Unlike a television signal or an AP wire story sent simultaneously to all subscribers, the alleged "violation" here is not a singular, isolated event. Instead, Defendants allegedly provided computer programs at different times, under different circumstances, to multiple hospitals. The computer program in the case at bar might be the same, but the conduct of distributing the software is variable.

> Neither party provides any legal authority to resolve the issue of whether a computer program "update" is a distribution of an infringed copyright. . . . This Court concludes whether any particular update constitutes a distribution of an infringed copyright is a factual question that should be resolved by a jury. Plaintiff may offer evidence attempting to establish that a particular update constitutes a violation of 17 U.S.C. §1202.

*Id.* at 867-68.   The court correctly held that whether distributions are separate violations depends on the evidence of how infringing copies were distributed.

This is exactly what happened when PWA's case went to trial.   The jury heard evidence of how the Urban Living website worked.   Vinod Ramani testified that every time a computer connected to the Urban Living website, it received images from the website of the Nagle marketing materials.   Transcript, p. 9 at 10:43.   Significantly, Defendants did not offer any contrary evidence after Mr. Ramani agreed that with each "unique page view" the Urban Living website delivered a copy of the Nagle material to a different computer.

This full trial record is why the jury verdict in this case cannot be set aside based on Defendants' cited opinions involving default judgments,[1] summary

---

[1]   *Stockwire Research Group, Inc. v. Lebed*, 577 F. Supp. 2d 1262, 1266, Finding of Fact No.15 (S.D. Fla. 2008) (number of times product "viewed," but mode of operation not explained); *Granger v. One Call Lender Services, LLC*, No. 10-3442, 2012 U.S. Dist. LEXIS 104885, *4 (E.D. Pa. July 26, 2012) (no discussion of how defendant's web site worked); *Reilly v. Plot Commerce*, No. 15-CV-05118 (PAE) (BCM), 2016 U.S. Dist. LEXIS 152154, *32 (S.D.N.Y. Oct. 31, 2016) (no evidence of architecture of defendant's web site). A common pattern in default judgment cases is that lack of discovery hampers the plaintiffs' ability to

judgments,[2] and – in *McClatchy*– a motion in limine.[3] Motion pp. 5-9.  Unlike those cases, here there has been full evidentiary development of how Urban Living distributed PWA's materials in violation of §1202, with the jury deciding any contested facts in that regard.

Defendants also misread Judge Ellison's opinion in *Interplan Architects, Inc. v. C. L. Thomas, Inc.*, No. 4:08-cv-03181, 2010 U.S. Dist. LEXIS 114306, 2010 WL 4366990 (S.D. Tex. Oct. 27, 2010). Motion pp. 9-10.  Judge Ellison did not "adopt" *McClatchey* as the sole test for determining a violation for purposes of §1203.  In *Interplan*, a defendant claimed that the definition of "violation" was limited to "each instance in which a copy of an infringed [work] was provided to a third party." Judge Ellison cited *McClatchey* as an example of how the defendant's

make a record of how the defendants' technology actually communicated the subject material.

[2]     *Agence France Presse v. Morel*, 934 F. Supp. 2d 547 (S.D.N.Y. 2013). This decision has been criticized for adopting a limitation on the DMCA's safe harbor that is not found in the statute.  "*Morel* is an outlier for a reason: its analysis is not persuasive." *Greg Young Publishing, Inc. v. Zazzle, Inc.*, No. 2:16-CV-04587-SVW-KS, 2017 U.S. Dist. LEXIS 100268, *16, 18 (C.D. Cal. May 1, 2017).

[3]     *McClatchey* ruled on §1203 in the context of granting a defendant's motion in limine. Courts in the Fifth Circuit do not allow a motion in limine to be used in this way as a back door motion for summary judgment. *McCoy v. Housing Auth. of New Orleans*, No. 15-398, 2016 U.S. Dist. LEXIS 190621, *5-6, n. 26, 27 (E.D. La. Oct. 9, 2016)(collecting cases from courts in Fifth Circuit and throughout country). *See also* 21 Charles Alan Wright & Kenneth W. Graham, Jr., *Fed. Prac. & Proc.* § 5037.18 (2d ed. West 2009) ("the preexisting caselaw provides ammunition against those who would use the motion in limine as a substitute for a motion for summary judgment").

removal of the plaintiff's title block could also be a violation. *Id.* at * 132.  If Judge Ellison intended to hold that providing a copy to a third party could *never* be a violation — Urban Living's position here — he would have said so. Instead, he explained that the court in *Goldman v. Healthcare Management System* (discussed above at pp. 1-12) "held, in that case, that 'violation' would mean each time the defendant distributed the infringed program to hospitals." *Id.  Interplan Architects* stands for assessing damages under §1203 using a broad definition of "violation" depending on the facts of each case.

In *McClatchey*, the court perceived a failure in §1203 to define what "each violation" means, so that the court had added its own definition of a "violative act." 2007 U.S. Dist. LEXIS at * 17-18.  As PWA showed in its Supplemental Trial Brief on DMCA Claims, Document No. 156, pp. 9-16, this approach to statutory construction is contrary to the Fifth Circuit's requirement that unambiguous statutes are given their plain meaning.  The *McClatchey* approach is a manufactured problem, as most statutes referring to "violations" do not define the term.  For example, the Copyright Act states: "Anyone who ***violates*** any of the exclusive rights of the copyright owner . . . is an infringer . . . ." 17 U.S.C. §501(a) (emphasis added).  Courts have decided thousands of copyright infringement cases without finding §501(a) deficient for not defining "violates."

The Fifth Circuit has no problem applying statutes that punish or provide remedies for "violations" but do not specifically define what "violate" means. As an unfortunately common example, it is against the law to distribute child pornography. 18 U.S.C. §2252A(a)(2). That statute continues: "Whoever *violates*, or attempts or conspires to *violate*, paragraph (1), (2), (3), (4), or (6) of subsection (a) shall be fined under this title and imprisoned . . . ." 18 U.S.C. §2252A(b)(1) (emphasis added).  There is no additional definition of the terms "violate" or "violates."  In *United States v. Sosa-Pintor*, No. 17-40342, 2018 U.S. App. LEXIS 18868 (5th Cir. July 11, 2018), the defendant made child pornography videos available on a "peer-to-peer" file sharing network.  Two agents were independently investigating him, and both downloaded at least one file containing child pornography from his IP address. *Id.* at *1-3. He was charged with two counts of distributing child pornography under §2252A(a)(2), one count for each download from his IP address, and found guilty on both counts. *Id.* at *4-5. The Fifth Circuit affirmed his conviction on both counts. *Id.* at *9.

Thus, in the Fifth Circuit, when a statute prohibits distribution, each distribution is a violation of the statute. In contrast, in *McClatchey* and the courts following it, when a statute prohibits distribution, actual distributions are somehow not violations of the statute.  In this case, the DMCA should be applied as written

unless and until the Fifth Circuit decides that it has been getting it wrong all these years.

As PWA showed in its Supplemental Trial Brief on DMCA Claims, Document No. 156, pp. 8-16, each e-mail and each transmission of website images to a visitor are distinct "distributions" under DMCA § 1202(b)(3).  The evidence could thus have supported a verdict of up to 25,664 violations, but the jury found a number at the low end of this potential range.  The evidence supports the jury's answer to Question No. 10 on the number of DMCA § 1202 violations.

> **B.**     *The Statute Says "What Amount of Damages Is Appropriate for Each Violation."*

In their second question for the Court, Defendants ask, "what amount of damages is appropriate for each violation?" Motion p. 3.  PWA seeks only the minimum statutory damages for each violation of §1202, which is $2,500. 17 U.S.C. §1203(c)(3)(B).  Their second question is not one for the jury or the Court. Its answer is in the text of the DMCA.  PWA is entitled to judgment against Urban Living and Vinod Ramani for these minimum statutory damages for each of the 11,516 violations found by the jury.  Multiplying the number of violations found by the jury by $2,500, the total statutory damages are $28,790,000.

If Urban Living believes that the DMCA's statutory damages range is too harsh, it should petition Congress, not ask this Court to substitute its judgment for those of our elected representatives.  *See Johnson v. Sawyer*, 120 F.3d 1307, 1319,

1322 (5th Cir. 1997) ("We are a federal appellate court, not a super-legislature; we are not vested with plenary authority to re-evaluate the policy choices made by our elected representatives"); *Point 4 Data Corp. v. Tri-State Surgical Supply & Equip., Ltd.*, No. 11-CV-726 CBA, 2012 WL 3306600, at *14 (E.D.N.Y. June 13, 2012) ("Any criticism of the range mandated by the language of the DMCA's statutory damages provision should be addressed to Congress, not to the Court").

## C.    *Defendants Have No Right to a Remittitur.*

Defendants end their Motion with a request for remittitur. Motion pp. 16-17. Remittitur allows a court to reduce an excessive damage verdict to the maximum amount a trier of fact could have awarded. *Hernandez v. M/V Rajaan*, 841 F.2d 582, 587 (5th Cir. 1988). PWA limited its DMCA §1203(c)(2)(B) claim to the minimum statutory damages, so the jury was not asked a damages question and there is no damages verdict for the Court to address or remit.  If there had been one, the Court could only order remittitur to the statutory maximum of $25,000 per violation.

Remittitur is an equitable doctrine, and equitable doctrines cannot be used to alter remedies established by statute. *See Petrella v. MGM*, Inc. 572 U.S. 663, 134 S. Ct. 1962, 1973-74, 188 L.Ed.2d. 979, 992-93 (2014) (equitable doctrine of laches not applicable to change limitations period established in Copyright Act);

*Lyons Partnership, LP v. Morris Costumes, Inc.*, 243 F.3d 789, 797-98 (4th Cir. 2001) (same).

Defendants claim that these statutory damages are excessive because they are substantially greater than PWA's actual damages.   As PWA showed in its motion for entry of judgment, DMCA statutory damages are intended to deter wrongdoing. Document No. 178, p. 13, citing *Sony Computer Entertainment Amer., Inc. v. Filipiak*, 406 F. Supp. 2d 1068, 1076 (N.D. Cal. 2005) (under §1203(c)(3)(A), "[w]hile this award of damages [$6,018,000] is substantial, the Court concludes that it is both consistent with Congressional intent and necessary to discourage wrongful conduct.")

Other defendants have made the same complaint about statutory damages for copyright infringement under 17 U.S.C. §504(c), and courts uniformly have rejected them.   In *F.W. Woolworths Co. v. Contemporary Arts*, 344 U.S. 228 (1952), the Supreme Court noted that statutory damages can be awarded "[e]ven for uninjurious and unprofitable invasions of copyright . . . to sanction and vindicate the statutory policy."   344 U.S. at 233.   In other words, even when a copyright owner has *no* actual damages and the infringer makes *no* profits, the Supreme Court still holds that an award of statutory damages within the range specified by Congress is permissible – and the district court does not have

discretion to go below the statutory minimum.  344 U.S. at 232 (*quoting* L.A. Westermann Co. v. Dispatch Printing Co., 2249 U.S. 100, 106-07 (1919)).

In *Energy Intelligence Group, Inc. v. Kayne Anderson Capital Advisors, LP,* No. H-14-1903, 2018 U.S. Dist. LEXIS 74174, *30-32 (S.D. Tex. May 2, 2018), Judge Lake rejected a claim that statutory damages were unconstitutionally excessive because they greatly exceeded the actual damages.  In *Peer Int'l v. Pausa Records,* the first case cited in Defendants' Motion, Pausa Records argued that statutory damages "should not be converted into a windfall where, as a practical matter, the plaintiff has suffered only nominal damages." The Ninth Circuit rejected this plea. 909 F.2d at 1337.

In *Atlantic Recording Corp. v. Anderson*, No. H-06-3578, 2008 U.S. Dist. LEXIS 53654, 2008 WL 2316551 (S.D. Tex. March 12, 2008), Judge Gilmore rejected the defendant's argument that the actual damages were the 99 cent cost of music downloads.

> Yet the true cost . . . is incalculable. That is, there is no way to ascertain the precise amount of damages caused by Defendant's actions in not only downloading Plaintiff's Copyrighted Recordings himself but also subsequently distributing some or all . . . to a vast community of other persons on KaZaA.

*Id.* at * 24-25. Judge Gilmore awarded the minimum statutory damages per work infringed. *Id.* at * 26.  In this case, tens of thousands of copies of PWA's works have been disseminated to the public without PWA's copyright management

information.  It is highly likely that PWA's designs will be copied with no way for PWA to detect or prevent it.  This is exactly the reason the DMCA provides for statutory damages.

Finally, there is nothing inequitable or shocking to the conscience about enforcing the DMCA against defendants, including the per-violation remedies provided by §1203.  Urban Living was on actual notice of the DMCA, and agreed that PWA's works included "copyright management information" specifically identified in the License Agreement with PWA. Plaintiff's Exhibit 1, p. 3, §4. Indeed, Urban Living agreed to the concept of thousands of dollars in damages for each improper transmission of PWA's works; the "Confidentiality" section provided for liquidated damages for each unauthorized distribution of PWA's CAD files. *Id.*, p. 4, §6. The only thing that should shock the conscience is that Defendants would pose as victims when they agreed, in writing, that the DMCA governed PWA's works, and then knowingly and intentionally violated the DMCA 11,516 times.

## III.  CONCLUSION AND PRAYER

For all of the foregoing reasons, Plaintiff Preston Wood & Associates, LLC, moves and prays that Defendants' Motion for Oral Hearing on Statutory Damages Under 17 U.S.C. §1203 be denied, and that it have Final Judgment in its favor against defendants in the form PWA previously submitted to the Court.

Respectfully Submitted,

*/s/ Patrick Zummo*

Patrick Zummo
State Bar No. 22293450
Law Offices of Patrick Zummo
Two Houston Center
909 Fannin, Suite 3500
Houston, Texas77010
(713) 651-0590 (Telephone)
(713) 651-0597 (Facsimile)
pzummo@zoomlaw.com

Louis K. Bonham
State Bar No. 02597700
Osha Liang L.L.P.
909 Fannin Street, Suite 3500
Houston, Texas 77010
(713) 228-8600 (Telephone)
(713) 228-8778 (Facsimile)
bonham@oshaliang.com

ATTORNEYS FOR PLAINTIFF
PRESTON WOOD & ASSOCIATES, LLC

## Certificate of Service

I hereby certify that a true and correct copy of the foregoing has been served on counsel of record via electronic filing, on October 22, 2018.

*/s/ Louis K. Bonham*
Louis K. Bonham