UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| PRESTON WOOD & ASSOCIATES, LLC, § § § *Plaintiff*, § § v. § § RZ ENTERPRISES USA, INC. d/b/a § OPPIDAN HOMES, OPPIDAN § HOMES § VII LTD., CAMERON § ARCHITECTS, § INC., and UL, INC. d/b/a URBAN § LIVING, § § *Defendant.* § | CIVIL ACTION NO. 4:16-cv-01427 |

---

## DEFENDANTS' REPLY IN SUPPORT OF DEFENDANTS' MOTION FOR ORAL HEARING ON STATUORY DAMAGES UNDER 17 U.S.C. § 1203

UL, Inc. d/b/a Urban Living and Vinod Ramani ("Defendants") file this Reply in Support of Defendants' Motion for Oral Hearing on Statutory Damages under 17 U.S.C. § 1203.[1]

---

[1] Defendants' arguments herein are premised on an assumption that they will be held liable for some number of § 1202 violations and thus address only the question of how many violations exist. Defendants continue to maintain that they cannot be held liable for any § 1202 violations, and this reply is not intended to waive any arguments on liability.

# **TABLE OF CONTENTS**

**Page**

Argument...........................................................................................................................1

I. As matter of law, Defendants' conduct constitutes two violations of § 1202, not the thousands that Plaintiff claims. ...............................................1

   A. All of the § 1202 cases cited in the briefing support the conclusion that Defendants' upload and blast email count as two violations, not thousands. .................................................................2

   B. None of Plaintiff's arguments overcome the governing case law. ...............................................................................................................5

II. Because, as a matter of law, Defendants committed only two violations of § 1202, the Court should disregard the jury's finding of 11,516 violations and award statutory damages based on two violations............................................................................................................9

Conclusion .......................................................................................................................9

# **TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*Agence France Presse v. Morel*,
　934 F. Supp. 2d 547 (S.D.N.Y. 2013) ............................................................2, 4

*Design Basics, LLC v. Drexel Building Supply, Inc.*,
　No. 13-C-560, 2016 WL 5794746 (E.D. Wis. Oct. 4, 2016) ..............................6

*Goldman v. Healthcare Management Systems, Inc.*,
　559 F. Supp. 2d 853 (W.D. Mich. 2008) ........................................................3, 4

*Granger v. One Call Lender Services, LLC*,
　No. 10-3442, 2012 WL 3065271 (E.D. Pa. July 26, 2012) .................................2

*Greg Young Publ'g, Inc. v. Zazzle, Inc.*,
　No. 2:16-CV-04587-SVW-KS, 2017 WL 2729584 (C.D. Cal. May
　1, 2017) ................................................................................................................2

*McClatchey v. Associated Press*,
　No. 305-CV-145, 2007 WL 1630261 (W.D. Pa. June 4, 2007) ......................4, 6

*Reilly v. Commerce*,
　No. 15CV05118PAEBCM, 2016 WL 6837895 (S.D.N.Y. Oct. 31,
　2016) ....................................................................................................................3

*Stockwire Research Group, Inc. v. Lebed*,
　577 F. Supp. 2d 1262 (S.D. Fla. 2008) ......................................................2, 4, 5

*United States v. Sosa-Pintor*,
　No. 17-40342, 2018 WL 3409657 (5th Cir. July 11, 2018) ............................7, 8

**STATUTES**

17 U.S.C. § 1201 ...................................................................................................4, 5

17 U.S.C. § 1202 ............................................................................................. *passim*

17 U.S.C. § 1203 ...............................................................................................2, 4, 9

# ARGUMENT

**I.     As matter of law, Defendants' conduct constitutes two violations of § 1202, not the thousands that Plaintiff claims.**

Defendants committed only two violations of § 1202, not the thousands that Plaintiff claims. The first occurred when Defendants uploaded the allegedly infringing plans onto its website. The second happened when Defendants sent a single blast email containing renderings based on the allegedly infringing plans. Plaintiff claims that the number of violations depends not on Defendants' conduct, but rather on the number of website viewers and recipients of the blast email. But all of the case law cited by both sides rejects that approach in similar mass-distribution contexts. The precedents focus instead on the specific instances of volitional conduct by the defendant—here the act of uploading the plans onto the website and the separate act of hitting "send" on the blast email. The Court should join the consensus on this issue and hold that, as a matter of law, there were only two separate violations of § 1202, not thousands. Such a holding would not only be legally correct, but it would also avoid inflicting crushing and disproportionate damages on a small business that caused no more than $7,539.60 in actual harm. Doc. 177 at 2.

### A. All of the § 1202 cases cited in the briefing support the conclusion that Defendants' upload and blast email count as two violations, not thousands.

The § 1202 authority before the Court is uniform on the question presented here. It endorses Defendants' position that the upload and the blast email each qualify as one violation of § 1202 and rejects Plaintiff's argument that those two acts count as thousands of violations because of their distributive reach.

The case law is replete with holdings that a website upload counts as a single violation, regardless of the number of people who view the infringing material on the website. The key holdings of those cases are as follows:

- "[T]he number of unlawful recipients is immaterial for purposes of statutory damages under § 1203(c)(3)(B); rather, this Section focuses solely on the Defendants' conduct, or in other words, the number of times the Unauthorized Product was posted on the internet for distribution, regardless of the number of end-recipients." *Stockwire Research Group, Inc. v. Lebed*, 577 F. Supp. 2d 1262, 1267 (S.D. Fla. 2008).

- "[F]or purposes of §§ 1202 and 1203(c)(3)(B), Defendants posted the infringing product onto the internet on six separate occasions . . . , thereby committing six violative acts." *Granger v. One Call Lender Services, LLC*, No. 10-3442, 2012 WL 3065271, at *5 (E.D. Pa. July 26, 2012).

- "[D]amages should be assessed per violation—*i.e.,* based on AFP and Getty's actions in uploading or distributing the Photos-at-Issue, regardless of the number of recipients of these images." *Agence France Presse v. Morel*, 934 F. Supp. 2d 547, 583 (S.D.N.Y. 2013).[2]

---

[2] Plaintiff points out that one court has criticized an entirely separate holding in *Agence France Presse*, Doc. 180 at 13 n.2 (citing *Greg Young Publ'g, Inc. v. Zazzle, Inc.*, No. 2:16-CV-04587-SVW-KS, 2017 WL 2729584, at *7 (C.D. Cal.

- "Where, as here, the violator posts a single image to a single website, I cannot conclude that each page within that website on which the image appears necessarily implies a separate 'violative act' by the defendant." *Reilly v. Commerce*, No. 15CV05118PAEBCM, 2016 WL 6837895, at *11 (S.D.N.Y. Oct. 31, 2016).

The reasoning of these cases extends to other forms of mass distribution, such as email blasts. Email blasts convey information in a similar manner as website uploads because both involve a single act by the defendant. And both depend on a third party's taking action to view the information—the third party must choose to open and read the email or website.

Plaintiff points the Court to a particularly helpful case that illustrates this point. *See Goldman v. Healthcare Management Systems, Inc.*, 559 F. Supp. 2d 853 (W.D. Mich. 2008). Plaintiff block-quotes the relevant section of the opinion that analyzes how to count the number of § 1202 violations. Doc. 180 at 11-12. Relevant here, the court distinguished the context of that case—in which "Defendants allegedly provided computer programs at *different* times, under *different* circumstances, to multiple hospitals"—from situations that count as only a single violation: "Unlike a television signal or an AP wire story sent *simultaneously* to all subscribers, the alleged 'violation' here is not a singular, isolated event." *Goldman*, 559 F. Supp. 2d at 868 (emphases added). A blast email, however, *is* a one-time mass distribution like a television signal or AP wire

---

May 1, 2017)), but that only underscores the lack of criticism of the number-of-violations holding at issue here.

story. By pressing send one time, the infringing material is "sent simultaneously to all" the recipients on the distribution list. Thus, under *Goldman*, a blast email qualifies as a single violation, rather than thousands of violations.

The seminal case in this area of law, *McClatchey v. Associated Press*, No. 305-CV-145, 2007 WL 1630261 (W.D. Pa. June 4, 2007), provides further support. There, the court held that "AP committed only one alleged violative act by distributing the [infringing] photograph to its PhotoStream subscribers, even though there were 1,147 recipients." *Id.* at *6. Applied here, Defendants "committed only one alleged violative act by distributing the" infringing plans in the single email blast, "even though there were [thousands of] recipients."

Sound statutory interpretation supports this monolithic authority. Whereas the statutory damages for § 1201 violations are assessed "per act of circumvention, device, product, component, offer, or performance of service," damages for violations of § 1202 are assessed "for each violation." 17 U.S.C. § 1203(c)(3). The distinction indicates that § 1201 damages are more granular in nature, aiming to punish each circumvention performed or device produced. By the same token, the lack of any such qualifying language in § 1202 indicates that § 1202 imposes statutory damages at a higher level of generality, for each violative act that the defendant commits. *See Agence France Presse*, 934 F. Supp. 2d at 583; *Stockwire*, 577 F. Supp. 2d at 1268 n.10; *McClatchey*, 2007 WL 1630261, at *5-6. That the

damages per violation are ten times higher for § 1202 violations strongly supports this approach to tallying § 1202 violations. And § 1202's focus on the defendant's conduct in "distribut[ing]" infringing material, with no reference to the downstream recipients of the distribution, confirms this defendant-focused approach.[3]

Common sense leads in the same direction. The court in *Stockwire* captured the essence of this point discussing a potential damages award that is remarkably similar to the one here: "[T]he Court does not believe Congress, in enacting the DMCA legislation, authorized, nor intended, the requested windfall of between $29,465,000.00 to $294,650,000.00 in statutory damages, on the basis of three internet uploads." 577 F. Supp. 2d at 1267 n.8. The same reasoning applies to the requested windfall of $28,790,000 for the one upload and one email blast at issue here. The Court should not construe the statute to sanction such an absurd result unless there is clear statutory text dictating that outcome.

B.  **None of Plaintiff's arguments overcome the governing case law.**

Plaintiff cannot dispute the plain holdings of the above-discussed cases. It finds itself without a single § 1202 case supporting its position. The closest

---

[3] In plaintiff's reply in support of its motion for judgment, plaintiff attempts to invert § 1201 and § 1202, arguing that § 1202's language lends itself to finding a *far greater* number of violations than does § 1201's. Doc. 183 at 5-6. This cannot be squared with the analysis set forth above—and accepted by the courts—in particular, the much higher per-unit damages available under § 1202.

38919477.4                    5

Plaintiff comes is *Design Basics, LLC v. Drexel Building Supply, Inc.*, No. 13-C-560, 2016 WL 5794746 (E.D. Wis. Oct. 4, 2016), but that court endorsed *McClatchey*'s reasoning and merely clarified that if instead of sending one blast email, "the [*McClatchey*] defendant had sent 1,147 emails, that would result in 1,147 violations even if the emails contained the same copyrighted photo." *Id.* at *3. *Design Basics* thus actually supports Defendants' position on the blast-email issue.

Undeterred, Plaintiff attempts to rewrite the trial record in an effort to leverage the *Design Basics* language, citing vague references to "emails" to give the impression that Defendants sent thousands of individual emails instead of one blast email. Doc. 180 at 6-7. But the record is clear that there was only one relevant blast email—the one sent regarding the Nagle Park Place project. Plaintiff's own question to Mr. Ramani acknowledged that fact, inquiring whether "this particular e-mail blast . . . went out to between 8,000 and 15,000 individual e-mail recipients." Ex. 1, Ramani Cross 3:11-14. Mr. Ramani's testimony on direct and redirect further confirmed that there was only one email blast regarding the Nagle Park Place project,[4] and he was the only witness to testify on that point at

---

[4] Defendants do not yet have a full transcript and are thus unable to cite to this specific part of Mr. Ramani's testimony.

38919477.4                                6

trial.  Thus, as a matter of law, the record can support only the conclusion that Defendants sent a single email blast, not thousands of individual emails.[5]

Plaintiff also cites its evidence on the number of page views of Urban Living's website as if that distinguishes the uniformly adverse authority on that issue.  Doc. 180 at 10-11.  It does not.  The question is legal in nature, not factual.  Page views simply do not qualify as § 1202 violations.  Plaintiffs cannot overcome that legal hurdle by marshaling particularly precise evidence regarding the number of page views.  That fact is legally immaterial.

Plaintiff next goes well outside the § 1202 context and turns to child-pornography law for support.  Doc. 180 at 15-16.  Comparisons between two such disparate areas of law should be met with suspicion.  But even if the lessons of child-pornography law were applicable to § 1202, Plaintiff's authority would still be inapposite.  Plaintiff's lone case in this area does not even address a number-of-violations issue.  Instead, the only issue before the court was whether there was "insufficient evidence presented at trial to support the jury's verdict that [the defendant] *knowingly* distributed the child pornography."  *United States v. Sosa-Pintor*, No. 17-40342, 2018 WL 3409657, at *2 (5th Cir. July 11, 2018).  The

---

[5] The two references to "emails"—one in the stipulated facts and one in Mr. Ramani's testimony on cross-examination—must be viewed in light of the more specific record testimony that there was only one email blast.  The references to "emails" merely indicated that the blast went to multiple recipients, not that there were multiple email blasts.

analysis focused solely on whether defendant had the requisite knowledge to understand the implications of using file-sharing software. *Id.* at *2-3. Nothing in that analysis is relevant here.

In sum, Plaintiff may not recover statutory damages as a matter of law for thousands of violations based upon a single email blast and a single website upload. But even if Plaintiff were legally correct that each recipient of a single blast email could count as a separate violation, then surely Plaintiff would at least have to produce evidence comparable to what it did regarding the website upload and demonstrate the number of recipients who actually opened the email and viewed the allegedly infringing information. Yet although Plaintiff trumpets its evidence regarding page views of the website, Doc. 180 at 10-11, it offered no evidence whatsoever as to the number of recipients who viewed the blast email rather than deleting it or simply allowing it to languish unopened in the inbox. Thus, even if Plaintiff could prevail on the law, it would still lack the evidence necessary for each email recipient to qualify as a separate violation.

Plaintiff thus has done nothing to chip away at the consistently adverse authority that bars its path to a multi-million dollar windfall. Consequently, there is no good reason to impose crushing damages on a small business that caused minimal actual harm. The inescapable conclusion remains that Defendants committed two violative acts, not thousands of them.

**II.    Because, as a matter of law, Defendants committed only two violations of § 1202, the Court should disregard the jury's finding of 11,516 violations and award statutory damages based on two violations.**

Under the legal framework discussed above, the trial record permits only one lawful conclusion: Defendants committed two violations of § 1202. Nonetheless, the jury found that Defendants committed 11,516 violations. Because this finding is barred as a matter of law, the Court should disregard the jury's unsupportable finding and proceed on the basis that Defendants committed only two violations.

At that point, there will be no further contested issues on statutory damages, as both sides agree that the minimum $2,500 should be awarded for each violation. Doc. 180 at 16. That results in a statutory damages award of $5,000 for Defendants' two violations.

## CONCLUSION

Defendants therefore pray that the Court grant their Motion for Oral Hearing on Statutory Damages Under 17 U.S.C. § 1203, schedule an oral hearing on statutory damages, disregard the jury's finding that Defendants committed 11,516 violations, hold that, as a matter of law, Defendants committed only two violations, and award statutory damages of $5,000.

Respectfully Submitted,

*/s/ Justin Strother*
Justin Strother
Texas Bar No. 24008100
STROTHER LAW FIRM
13000 Weslayan St., Suite 348
Houston, Texas  77027
(713) 545-4937
jstrother@strotherlawfirm.com

Aaron M. Streett
Texas Bar No. 24037561
J. Mark Little
Texas Bar No. 24078869
BAKER BOTTS L.L.P.
910 Louisiana Street
Houston, Texas  77002
(713) 229-1234
(713) 229-7855 (Facsimile)
aaron.streett@bakerbotts.com
mark.little@bakerbotts.com

ATTORNEYS FOR DEFENDANTS UL, INC. D/B/A URBAN LIVING AND VINOD RAMANI

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a copy of the above and foregoing has been served upon all counsel of record by electronic filing on this 31st day of October, 2018.

*/s/ Justin Strother*
Justin Strother