IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| PRESTON WOOD & ASSOCIATES, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | NO. H-16-CV-1427 |
| | ) | |
| v. | ) | August 30, 2018 |
| | ) | |
| CAMERON ARCHITECTS, INC., | ) | |
| STEPHEN CAMERON, UL, INC., d/b/a | ) | |
| URBAN LIVING, and VINOD RAMANI | ) | |
| | ) | |
| Defendants. | ) | |

TRIAL
BEFORE THE HONORABLE DAVID HITTNER
AND A JURY

VOLUME 7 of 7
PAGES 7-1 to 7-17

For the Plaintiff: Louis K. Bonham
Califf T. Cooper
Osha Liang, LLP
909 Fannin, Suite 3500
Houston, TX 77010

For the Defendants: Justin Strother
Strother Law Firm, PLLC
3000 Weslayan, Suite 348
Houston, TX 77027

Court Reporter: Bruce Slavin, RPR, CMR

Proceedings reported by mechanical stenography and produced by computer-aided transcription.


                    I N D E X

| | Page |
|---|---|
| Jury Notes 3 and 4 withdrawn | 7-4 |
| Jury Note 5 | 7-3 |
| Verdict | 7-11 |

THE COURT: On the record.

We have Jury Note No. 5: "We have reached a partial verdict."

What's the Plaintiff's position?

11:40 MR. BONHAM: Do we know what issues they have reached a partial verdict or are they still just hung up on Stanford?

THE COURT: I have no idea.

MR. STROTHER: Your Honor, I would propose the

11:40 Court inquiring as to what does this mean so you can further direct them.

MR. BONHAM: Again, if it's just on Stanford, as we talked about yesterday, the last thing we want to do is hang this thing up over a fairly small issue.

11:41 THE COURT: All right. I am going to issue one order at this time and say, "Please continue your deliberations." That's all they're going to get at this time.

If they come back and say, 'We can't go any

11:41 further,' then I will consider your input vis-à-vis an *Allen* charge or something else at that time. But I want them to go back --

And, Ellen, you can say -- if they want a clarification, just say, you know, 'Do the best you can on

11:41 what's left.' That's all I want.

But I think the easiest thing right now is to say, "Please continue your deliberations," and they'll get that message. And then, if we get another one, we can start taking a little more -- jumping into it a little more.

11:41 Any objection by the Plaintiff?

MR. BONHAM: No, sir.

THE COURT: Any objection by the defense?

MR. STROTHER: No, Your Honor.

THE COURT: All right. Off the record.

11:42 (Recess)

THE COURT: Let's get on the record, please.

All right. We have Jury Note No. 5. Is this No. 5? I guess that is --

CASE MANAGER: 3 and 4, Judge, they withdrew.

13:33 THE COURT: 3 and 4 they withdrew.

"We have reached an impasse on the following questions (since yesterday morning). Stanford project" -- which is -- "Stanford project," which is on Question 1. Question 9, "Stanford, Patterson and EaDo. Due to the 13:33 deadlock, we are unable to answer Question 10 in regards to Stanford, Patterson and EaDo. All other questions are unanimously agreed upon."

What's the Plaintiff's position?

MR. BONHAM: Given that they have been hung up 13:33 since yesterday on Stanford and it's only --

13:34 13:34 13:34 13:34 13:34

THE COURT: It's not just Stanford they're hung up.

MR. BONHAM: Well, initially, they're hung up on Stanford as far as infringement, and then they're also hung up on the DMCA on Stanford, Patterson and EaDo.

THE COURT: He's not sure.

What about the Defendant?

MR. STROTHER: I'm looking at it as being outside of my area of "influence" or some other word. I don't know that I have a position.

THE COURT: Hold it. Then, you've got my position.

MR. STROTHER: Yes, Your Honor.

THE COURT: I am going to give you additional summation on those points. You're restricted to those points.

How much time does the Plaintiff want for additional summation? You've got it. You tell me how much time you want.

MR. BONHAM: Five minutes.

MR. STROTHER: Five minutes is fine.

THE COURT: No way. No way. I am giving each side 15 minutes. You don't have to take it all. I am giving each side 15 minutes. You can reserve a little bit just like --

Ellen, tell the jury we'll get back in at 1:40.

Sit down. Start making notes. You get a copy of your charge. Tell the jury to be ready to come back in with their charge at 1:45. I've got a criminal matter coming in. We'll call them when it's time to come in. It will be about 1:15 to 1:20. Give each side 20, 40. You don't have to take all your time. Start putting all your ideas together. We'll be back with you in about, oh, eight minutes.

13:35

CASE MANAGER: Did you say 1:40?

THE COURT: I said 1:40 -- Wait. Yeah. That's about seven minutes. Put your ideas together. I tell you what. Hold it. We'll get back in at 1:45. Get your ideas together and I will keep time.

13:35

We'll see you back at 1:45.

(Brief recess)

13:42

THE COURT: Do you want to get something on the record?

MR. BONHAM: Sure, Your Honor. Again, it was very close. I was hesitant to do this until I heard from my co-counsel. I now have.

13:42

We will withdraw our claims on Question 1 on Stanford and on EaDo, Stanford and Patterson on, you know, Questions 9 and 10, which should mean we're --

THE COURT: All right. Let's take a look at the jury charge.

13:42

Let's see. So, how do we craft No. 1 or do we -- This is Instruction 1. What page is Question No. 1 on? What page? Page 33?

MR. STROTHER: Yes, Your Honor.

13:43 THE COURT: All right. 33.

Now, they say Stanford projects, No. 1. So, they can't answer No. 1 as to the Stanford project. Correct?

MR. BONHAM: Correct.

13:43 THE COURT: The next thing is let's look at Question No. 9.

MR. STROTHER: Your Honor, that is Page 41.

THE COURT: Page 41. I am on Page 41. "Disregard the necessity to answer anything for Patterson Street, 13:44 Stanford Street or EaDo Place." Correct?

MR. BONHAM: That is correct.

THE COURT: All right. Then we tell them, what, to move on to No. 10?

MR. BONHAM: Well, 10 they said -- I think if they 13:44 were hung up on 9 and they couldn't answer Patterson, Stanford and EaDo on 10 -- If it's withdrawn as to 9, it becomes moot on 10. Because you only answer -- 10 is conditioned.

THE COURT: Well, 9 they could answer "Yes" as to 13:44 Nagle Place, right, or "No" as to Nagle Place?

 13:45
13:46
13:46
13:46
13:47

MR. BONHAM: Correct. That's what I am saying. If they're saying they have answered everything else except for Patterson, Stanford and EaDo on 9.

THE COURT: All right. Let's dictate this out. I am going to dictate this out on a separate piece of paper and then I will write it on here. Okay?

Let's look at Question No. 1. Question 1. "Stanford" blank. "Stanford" what? Stanford --

MR. BONHAM: It says "Stanford Street Landing".

THE COURT: "Stanford Street Landing". "Question 1 as to Stanford Street Landing is withdrawn." Right?

MR. BONHAM: That is correct, Your Honor.

THE COURT: "Withdrawn".

And, Ellen, you can tell them that means they don't have to answer it. Okay? I am going to write this down separately.

Now, the next thing is look at No. 9. "Question 9 as to..." what? Patterson, Stanford and EaDo.

MR. BONHAM: Yes, Your Honor.

THE COURT: "...as to Patterson, Stanford and EaDo withdrawn."

MR. BONHAM: That is correct, Your Honor.

THE COURT: And that's all we need to tell them. Correct?

MR. BONHAM: I think so. They're saying they have

reached agreement on everything else. So...

THE COURT: Then they can go on to 10.

MR. STROTHER: Yeah. Your Honor, I am wondering if it would be useful to tell them they also don't need to answer 10 with regard to those three just so they're not confused.

THE COURT: "Question as to Patterson, EaDo withdrawn" and then "No need to consider..." Right?

MR. BONHAM: Correct.

THE COURT: "...consider Patterson, Stanford and EaDo on Question 10." Is that correct?

MR. BONHAM: That is correct.

MR. STROTHER: That is correct.

THE COURT: I am going to write it on here. "Question No. 1 as to Stanford Street Landing is withdrawn. Question No. 9 as to Patterson, Stanford and EaDo withdrawn. No need to consider Patterson, Stanford and EaDo on Question 10."

MR. BONHAM: That is correct. And correct.

MR. STROTHER: Yes, Your Honor.

THE COURT: Have a seat and then let me write this out.

MR. BONHAM: Your Honor, while you're doing this may I text my co-counsel as to what we're doing?

THE COURT: I'm not changing it.

MR. BONHAM: Never mind -- No. No. No. I am just wanting to advise --

THE COURT: You can advise him whatever you want, but I am not changing it.

13:48 MR. BONHAM: I just want to use my cell phone in the courtroom.

THE COURT: I am going to show this to you -- okay? -- before I sign it and send it back. See if this comports to what we have just said. Okay?

13:50 (Counsel review Court's proposed reply)

MR. STROTHER: Yes, Your Honor.

MR. BONHAM: It does.

THE COURT: Both sides agree? All right. Let me sign it. That's being sent now in to the jury.

13:51 I have got a criminal matter coming at one o'clock. We're going to go off the record.

(Recess)

THE COURT: I now have 2:16 on my clock. We will take the verdict. We have a decision from the jury. We 14:18 have a verdict. We will take that at 2:25. We'll take it in about ten minutes from now and we can wrap it up.

Okay. That's all we have right now.

(Brief recess)

(Jury present)

14:40 THE COURT: Be seated, please.

Mr. , I see where you're the presiding juror. I ask you two questions:

No. 1, has the jury reached a verdict?

JURY FOREPERSON: Yes, we have, Your Honor.

14:40 THE COURT: Is it a unanimous verdict?

JURY FOREPERSON: Yes.

THE COURT: Would you hand it to the marshal, please.

All right. "Question No. 1: Did Urban Living

14:40 infringe the copyrights of Preston Wood & Associates?" That's Question No. 1 on Page 33.

"Nagle Park: Yes.

"Patterson Street Landing: Yes.

"Stanford Street Landing: Withdrawn.

14:41 "EaDo Place: Yes.

"Mount Vernon: Yes.

"Question No. 2. Did Urban Living contributorily infringe the copyrights of Preston Wood & Associates? Answer 'Yes' or 'No'..."

14:41 "Nagle Park: Yes.

"Patterson Landing: Yes.

"Stanford Street: Yes.

"EaDo Place: Yes.

"Mount Vernon: Yes.

14:41 "Question No. 3. Did Cameron Architects

infringe...?"

As to Nagle Park: Yes.

As to Mount Vernon: Yes.

"Did Cameron Architects contributorily infringe the copyrights...?" This is Question No. 4.

Nagle Park: Yes.

Mount Vernon: Yes.

Question No. 5. There are lots of figures in here. I will just read them out.

"Answer in dollars and cents as to each."

Nagle Park -- I am going to read numbers with a comma -- All right.

Nagle Park: Gross revenues, $68,045.00. Deductible expenses, $2,829.75.

As to Patterson Street: $147,380 as to gross revenues. The next column, deductible, $7,369.

Stanford Street: Gross revenue, $44,370. Deductible expenses, $2,218.

EaDo Place: Gross revenue, $259,540. Deductible expenses, $12,977.

As to Mount Vernon: Gross revenue, $3,439.50. Deductible expenses, zero.

No. 6. "For each project for which you found Urban Living infringed or contributorily infringed...what percentage, if any, of Urban Living's profits were

attributable to factors other than the copyrighted work?"

Nagle Park: 97 percent.

Patterson Street: 99.5 percent.

Stanford Street: 99.5 percent.

14:44 EaDo Place: 99.5 percent.

Mount Vernon: Zero.

That's Question No. 6.

"Question No. 7. For each project for which you found that Cameron...infringed...what were Cameron

14:44 Architect's gross revenues and deductible expenses...?"

Nagle Park: $22,900 in gross revenues. Deductible expenses, $12,788.11.

As to Mount Vernon: Gross revenues, $6,879. Deductible expenses, $3,439.50.

14:44 "Question 8. For each project for which you have found Cameron Architects infringed...what percentage, if any, of Cameron Architects' profits were attributable to factors other than the copyrighted work?"

Nagle Park: Zero.

14:45 Mount Vernon: Zero.

No. 9. "Did Urban Living knowingly or intentionally with the intent to induce" -- That's Question No. 9 relative to management information that had been altered or removed. Question No. 9.

14:45 Nagle Park: Yes.

Patterson Street: Withdrawn.

Stanford Street: Withdrawn.

EaDo Place: Withdrawn.

"For each project on which you answered 'Yes' on No. 9, how many times did Urban Living do so?" -- relative to number of violations.

Nagle Park: 11,516.

Patterson is withdrawn, Stanford is withdrawn and EaDo Place is withdrawn.

And I look at the last page and it has been signed by the presiding juror and dated.

Ladies and gentlemen of the jury, this needs to be a unanimous verdict. If this was not your verdict as I just read, please raise your right hand.

Let the record reflect that no hands were raised.

I now accept this as a unanimous verdict and order it filed in the records of this case.

On behalf of myself and the attorneys, I want to thank you for your service. It was a short case, but, boy, it sure had a lot to it, I am telling you, in my own experience and, certainly, I assume in yours, not being, you know, used to dealing with copyrights.

But it was interesting. We found out about how one profession earns its living and some of the industry

around the building professions.

So, we want to thank you for your service. This now completes your jury service. You may now discuss this case in as much or as little detail with anyone you want, but what I have done since I have been in federal court:

If anybody relative to this case contacts you, I am telling you they may not, because this is the procedure you work on.

If you want to visit with the jury, you make a request in writing to the case manager. I will then decide if they can do it or not. If I decide that they may speak with you, then I will send you a letter. It won't have the address. I will send you the letter stating that the lawyers or the lawyer desires to visit with you. If you want to, you call them. So, nobody is going to call you directly.

So, that's what I do in all of my cases. I don't outrightly -- I don't prohibit it outrightly, but what I do is I have them ask me. Assuming I agree with it, I then send you a letter and then you do it if you want to.

We can't do it without -- we can't have the whole jury system without cooperation of the community. Okay? I am always amazed and I am always pleased with the jury system. I think it does work. It's interesting.

Sometimes -- maybe not on this case -- I come back in and visit with you and say, well, I understand how they got there.

So, it's always informative. I have always visited with jurors.

As I mentioned, I have got my notes with me and I will come back in and visit with you about this case in less than five minutes after we adjourn.

But, in any event, as far as this is concerned, your duty here in the courtroom, with our appreciation, is completed.

Thank you and you may return to the jury room.

(Jury not present)

THE COURT: I will say this to the attorneys and pass it on to your colleagues. It was a real professional job that you did. It was an interesting case.

We got a jury verdict, but now what you do with it at this point, that's up to you and the parties. Hopefully, you can now settle it out. If you can't, at least you have got a verdict.

All right. Thank you and we'll adjourn.

MR. BONHAM: Thank you, Your Honor.

COURT REPORTER'S CERTIFICATE

I, BRUCE SLAVIN, certify that the foregoing is a correct transcript from the record of proceedings in the above entitled matter, to the best of my ability.

*s/Bruce Slavin*
BRUCE SLAVIN, RPR, CMR