**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| PRESTON WOOD | § | |
| & ASSOCIATES, LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 4:16-cv-01427 |
| | § | |
| RZ ENTERPRISES USA, INC. D/B/A | § | |
| OPPIDAN HOMES, OPPIDAN HOMES | § | Jury Trial Demanded |
| VIII LTD., CAMERON ARCHITECTS, | § | |
| INC., and UL, INC. D/B/A URBAN | § | |
| LIVING, | § | |
| | § | |
| Defendants. | § | |

## PLAINTIFF'S RESPONSE TO DEFENDANTS' COMBINED RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW AND MOTION FOR NEW TRIAL

Plaintiff Preston Wood & Associates, LLC ("PWA") files its Response to Defendants' Combined Renewed Motion for Judgment as a Matter of Law and Motion for New Trial. ("Motion," Document No. 200).

## I. SUMMARY OF ARGUMENT

Both Defendants' "renewed" motion for judgment as a matter of law and their motion for new trial objecting to the sufficiency of the evidence of PWA's claims under the Digital Millennium Copyright Act ("DMCA"), Motion, pp. 3-14,

1

should be denied. First, Defendants did not challenge the sufficiency of the evidence of PWA's DMCA claims in a motion for judgment as a matter of law before the case was submitted to the jury. They waived both their "renewed" motion for judgment as a matter of law and their motion for new trial. *Unitherm Food Systems, Inc. v. Swift-Eckrich, Inc*., 546 U.S. 394, 398, n.1, 404 (2006)

Defendants' "renewed" motion for judgment as a matter of law and motion for new trial should also be denied because the evidence fully supported the jury's findings that Urban Living violated DMCA §1202, and did so 11,516 times.

Defendants are not entitled to a new trial based on the admission of Plaintiff's Exhibit 113. Motion, pp. 14-16. First, because the jury's finding of 11,516 DMCA violations was supported by the evidence of Urban Living's 8,000 to 15,000 emails, the admission of an unrelated website exhibit was not harmful. In addition, Exhibit 113 was an ordinary business record that Urban Living used in its business. Defendants have not made the extremely strong showing that the admitted probative value of the evidence is substantially outweighed by the danger of unfair prejudice required for exclusion of evidence based on Fed. R. Evid. 403.

Defendants are not entitled to judgment as a matter of law or a new trial based on their claim that Urban Living's commissions from sales of townhouses based on PWA's designs were "indirect" profits. When an infringer's profits are

2

from sales of works that infringe copyrights, a copyright owner can recover those as "direct" profits under 17 U.S.C. §504(b) without any further proof of a "causal link" between the profits and the infringement. The Urban Living profits found by the jury were directly from Cameron Architects' copying of PWA's protected designs, and commissions paid directly to Urban Living from the sales of infringing townhouses built from those designs.

## II. ARGUMENT

### A. There Is No Basis for Judgment as a Matter of Law or for a New Trial on the DMCA Claims.

Defendants claim that the jury's findings that Urban Living violated the DMCA, and did so 11,516 times, are "not supported by legally sufficient evidence," or alternatively, are "against the great weight and preponderance of the evidence." Motion, pp. 3-14. Defendants have waived their objections to the sufficiency of the evidence on PWA's DMCA claims. In addition, the evidence supported the jury's verdict on Urban Living's DMCA violations.

#### 1. Defendants Have Waived Their Motions on the DMCA Claims Because They Did Not Move for Judgment as a Matter of Law at Trial.

Defendants style their Rule 50 motion as a "Renewed Motion for Judgment as a Matter of Law," but they never moved for judgment as a matter of law on PWA's DMCA claims during the trial. After PWA rested, Defendants moved for a

3

directed verdict on only one issue, alleging that PWA had not proved Defendants'

gross revenues under 17 U.S.C. §504(b):

> MR. STROTHER: …. We move for directed verdict on one
> very precise, specific point. Under 504(b) of the Copyright Act, it is
> true that Plaintiffs have the burden to put on some evidence of
> revenues and then the burden is supposed to shift to Defendants to put
> on the evidence of expenses that should later be deducted.

Trial Transcript, Vol. 3, pp. 29-30. (Excerpts from Volume 3 of the Trial

Transcript ("Tr.") are attached as Exhibit 1 to this Response.) After argument on

this "one very precise, specific point," *id.* at pp. 30-38, the Court overruled the

motion. *Id.* at p. 38.[1]

Defendants did not make any additional motion for directed verdict or for

judgment as a matter of law at the close of all the evidence. Tr., Vol. 4, pp. 56, 67.

(Excerpts from Volume 4 of the Trial Transcript are attached as Exhibit 2 to this

Response.) They never moved for judgment as a matter of law on PWA's DMCA

claims before the case was submitted to the jury.

A Rule 50(a) motion for judgment as a matter of law must be made before

the case is submitted to the jury. Fed. R. Civ. P. 50(a)(2).

> A party that fails to move for judgment as a matter of law under Rule
> 50(a) on the basis of insufficient evidence at the conclusion of all of
> the evidence waives its right to file a renewed post-verdict Rule 50(b)

---

[1] Defendants do not address this issue until the end of their Motion, at pp. 17-20. PWA responds
to this argument at pp. 13-19, below.

4

motion, and also waives its right to challenge the sufficiency of the evidence on appeal.

*United States ex rel. Wallace v. Flintco Inc.*, 143 F.3d 955, 960 (5th Cir. 1998).

"Any argument made in a renewed motion for judgment as a matter of law under Rule 50(b) must have been previously made in a motion for judgment as a matter of law under Rule 50(a)." *OneBeacon Ins. Co. v. T. Wade Welch & Assocs.*, 841 F.3d 669 (5th Cir. 2016), citing *Unitherm Food Systems, Inc. v. Swift-Eckrich, Inc.*, 546 U.S. 394, 398 n. 1 (2006) ("A post trial motion for judgment can be granted only on grounds advanced in the pre-verdict motion.") A Rule 50(a) motion at the close of the evidence is a prerequisite to the district court's review of a post-verdict Rule 50(b) motion, and is "virtually jurisdictional." *Wallace v. Methodist Hosp. Sys.*, 85 F. Supp. 2d 699, 706-07 (S.D. Tex. 2000), quoting *Allied Bank-West v. Stein*, 996 F.2d 111, 114—15 (5th Cir. 1993) and *Perricone v. Kansas City S. Ry. Co.*, 704 F.2d 1376, 1380 (5th Cir. 1983). For this reason alone, Defendants' "renewed" motion for judgment as a matter of law should be denied.

Defendants have also waived any motion for new trial based on the sufficiency of the evidence for the DMCA findings. In *Unitherm*, the court held: "if a litigant that has failed to file a Rule 50(b) motion is foreclosed from seeking the

relief it sought in its Rule 50(a) motion, then surely [it] is foreclosed from seeking a new trial…." *Id.* at 404.

Defendants do not address their failure to make a Rule 50(a) motion on the DMCA claims. *Unitherm* and the Fifth Circuit cases following it are controlling authority. Defendants owed this Court the candor to admit that they did not make this required motion, and some explanation of how they think they can nonetheless challenge the sufficiency of the evidence for the jury's DMCA findings.

### 2. The Evidence Supported the Jury's Verdict That Urban Living Committed 11,516 Violations of DMCA §1202.

In response to Question No. 9, the jury found that Urban Living violated DMCA §1202(b). Verdict, Document No. 170-1, p. 41. In response to Question No. 10, the jury found that Urban Living committed 11,516 violations of that DMCA section. *Id.*, p. 42. Although Defendants have waived their challenges to these findings, PWA will show, out of an abundance of caution, that the evidence did support both findings.[2]

---

[2] In *McLendon v. Big Lots Stores, Inc.*, 749 F.3d 373 (5th Cir. 2014) (per curiam), the court noted that some Fifth Circuit panels conducted plain error review after appellants had failed to make Rule 50(a) or 50(b) motions, although none of these panels had ever found such error. *Id.* at 575, n. 2. The court explained that the earliest Fifth Circuit cases following *Unitherm* held that a court was powerless to review issues not raised in a timely Rule 50 motion, and "we are bound by this precedent." *Id.*, citing *United States v. Broussard,* 669 F.3d 537, 554 (5th Cir. 2012) ("where two lines of Fifth Circuit cases are in conflict, the general rule is to follow the earliest case"). Under the plain error standard, "the question before this Court is not whether there was

In ruling on a motion for judgment as a matter of law, courts draw all reasonable inferences and resolve all credibility determinations in the light most favorable to the non-moving party. *Brown v. Bryan County*, 219 F.3d 450, 456 (5th Cir. 2000). Judgment as a matter of law cannot be granted unless the facts and inferences point "so strongly and overwhelmingly in the movant's favor that reasonable jurors could not reach a contrary conclusion." *Flowers v. Southern Regional Physician Services, Inc.*, 247 F.3d 229, 235 (5th Cir. 2001). Applying these standards, the evidence supported the jury's verdict on PWA's DMCA claims.

The Court correctly found that the evidence supported the jury's verdict. Document No. 188, pp. 5-6. There was legally sufficient evidence that Urban Living violated DMCA §1202(b)(3), as the jury found in answer to Question No. 9. PWA incorporates by reference its Motion for Entry of Judgment, in which it described in detail the evidence of Urban Living's violation of that section. Document No. 178, pp. 5-10.

Defendants argue that the only way DMCA §1202(b) can be violated is by physically removing or modifying copyright management information from a copy of the protected work. Motion, pp. 4-5. They claim that they can escape liability

---

substantial evidence to support the jury verdict, but whether there was *any* evidence to support the jury verdict." *Polanco v. City of Austin*, 78 F.3d 968, 974 (5th Cir. 1996). Because sufficient evidence supports the jury's DMCA findings, Defendants could not show plain error even if they had made this argument.
.

because they created their marketing materials by redrawing PWA's architectural works—which is "copying"-- without including PWA's copyright management information.

Question No. 9 asked the jury whether Urban Living violated DMCA §1202(b)(3). Document No. 170-1, p. 41. That subsection states:

(b) Removal or Alteration of Copyright Management Information.—
No person shall, without authority of the copyright owner or the law—

* * *

(3) distribute … copies of works … knowing that copyright management information has been removed or altered without authority of the copyright owner."

17 U.S.C. §1202(b)(3).   The evidence showed that Urban Living distributed marketing materials that were copies of PWA's protected designs. The Copyright Act defines "copies":

"Copies" are material objects, other than <u>phonorecords</u>, in which a work is fixed by any method now known or later developed, ***and from which the work can be perceived, reproduced, or otherwise communicated***, either directly or with the aid of a machine or device. The term "copies" includes the material object, other than a phonorecord, in which the work is first fixed.

17 U.S.C. § 101 (emphasis added). The evidence also showed that Urban Living removed PWA's copyright management information when it made these copies,

8

and knew it was not authorized to do this. This evidence supports the jury's finding that Urban Living violated DMCA §1202(b).

There was also legally sufficient evidence that Urban Living committed 11,516 violations of DMCA §1202(b), as the jury found in answer to Question No. 10. PWA incorporates by reference its Motion for Entry of Judgment, where it described the evidence of thousands of web site and email distributions by which Urban Living violated §1202(b). Document No. 178, pp. 10-11.

The Court held that the email evidence alone supported the jury's answer to Question No. 10. Document No. 188, p. 6. As PWA showed in its Reply in Support of its Motion for Entry of Judgment, Document No. 183, pp. 2-4, Urban Living sent between 8,000 and 15,000 emails containing marketing materials for the Nagle Street project that did not contain PWA's copyright management information. When questioned by the Court, Mr. Ramani admitted that he had no personal knowledge of the process of sending these emails. There was no evidence that the 8,000 to 15,000 emails were not "individual acts committed by a Defendant" as the Court instructed the jury at Defendants' request. Verdict, Document No. 170-1, p. 39. Because the jury is presumed to have followed this instruction, Document No. 188, pp. 5-6, the email evidence alone was legally sufficient to support the jury's answer to Question No. 10.

Defendants base their DMCA arguments on a claim that the Nagle marketing materials went on the Urban Living website in a single upload, and that there was only one "violative act" as a matter of law. There is no evidence in the trial record of this single upload.  Vinod Ramani was the only person from Urban Living who testified at trial. He did not say explain how the Nagle Park Place page was created. The word "upload" is not in the transcript of his testimony. There is no evidence in the record that there was only one act involved in putting the marketing materials on the website. When Defendants made this argument to the jury, the jury was correct to disregard it, because there was no evidence for it.

      B.    *Admission of the Google Analytics Report Actually Used by Urban Living in its Business Was Not Error.*

Defendants next claim that Plaintiff's Exhibit 113 (Motion Exhibit 4, Document No. 200-5) was unfairly prejudicial and should not have been admitted into evidence. Motion, pp. 14-16. First, because the jury's finding of 11,516 DMCA violations is entirely supported by the evidence of Urban Living's 8,000 to 15,000 emails, the admission of an unrelated website exhibit could not be harmful. Exhibit 113 was an ordinary record that Urban Living used in its business. It was not prejudicial, much less unfairly prejudicial. Exclusion of evidence based on

Rule 403 requires an extremely strong showing that the probative value of the evidence is substantially outweighed by the danger of unfair prejudice.

Defendants have the burden of proving that the admission of Exhibit 113 was harmful. *Carroll v. Morgan*, 17 F.3d 787, 790 (5th Cir. 1994). An evidentiary ruling can only be cause for reversal "if a party's substantial rights are affected." *Id.*, citing Fed. R. Evid. 103(a). Exhibit 113 had nothing to do with the evidence of email distributions that the Court has found sufficient, on their own, to support the jury's answer to Question No. 10. (A copy of Plaintiff's Ex. 113 is attached as Exhibit 3 to this Motion.)

The Court correctly found that the jury's finding of the number of DMCA violations was supported by evidence of email distributions by Urban Living:

> There was testimony by Ramani at trial that Urban Living sent out between 8,000 to 15,000 emails containing these materials. Viewing the record in favor of upholding the jury verdict, the Court finds there was sufficient evidence at trial to support the jury's finding as to the number of DMCA violations.

Document No. 188, p. 5. The admission of an exhibit that was not material to the jury's verdict could not be harmful error.

Exhibit 113 also was not unfairly prejudicial to Defendants. It was a Google analytics report for the web pages on the Urban Living website with marketing materials for the townhouse projects at issue in this lawsuit. Vinod Ramani

testified that it was produced by "our media" in this lawsuit, and that such reports were used by his marketing team. Ex. 2, Tr., Vol. 4, p. 22. The "unique page view" total for the Nagle Park Place page on the Urban Living website showed that remote computers connecting to that page were sent images of the page 8,578 times. *Id.*, p. 23.

This was highly probative evidence of the number of times Urban Living distributed these images, the specific violation of DMCA §1202(b).  The Fifth Circuit sets a very high bar for any evidence to be excluded because its probative value is substantially outweighed by the danger of unfair prejudice:

> One purpose of Rule 403 is to prevent evidence from "inducing decision on a purely emotional basis." FED. R. EVID. 403 (Advisory Committee Notes). However, to warrant exclusion, the danger of unfair prejudice--on this ground or any other--must *substantially* outweigh the probative value of the evidence. Accordingly, we have recognized that Rule 403's scope is narrow. "[T]he application of Rule 403 must be cautious and sparing. Its major function is limited to excluding matter of scant or cumulative probative force, dragged in by the heels for the sake of its prejudicial effect." *United States v. Pace,* 10 F.3d 1106, 1116 (5th Cir. 1993).

*United States v. Fields*, 418 F.3d 318, 354 (5th Cir. 2007)(emphasis in original).

There is nothing emotional about the Google analytics report. Nobody cried, gasped or fainted when it was shown to the jury. Plaintiff's Ex. 113 was an ordinary business record, used by  Urban Living's marketing department. It is ludicrous to claim that Ex. 113 posed any danger of unfair prejudice.

Defendants do not show how the Court allegedly committed an abuse of discretion in admitting Exhibit 113. The bar here is also very high:

> …we will not lightly second-guess a district court's decision to admit relevant evidence over a Rule 403 objection. Although reviewing courts use a great variety of verbal formulae to express this fact, all agree that we must afford an especially high level of deference to district courts in such circumstances. Thus, a district court's decision on Rule 403 grounds is disturbed "rarely" and only when there has been "a clear abuse of discretion."

*United States v. Fields*, 418 F.3d at 354 (citations omitted).

Finally, as PWA has shown above, Defendants' argument that there was only one "violative act" as a matter of law depends on the nonexistent evidence that the marketing materials were placed on the Urban Living website in a single upload. There is no evidence in the record that there was only one act involved in putting the marketing materials on the website.

### C.    Urban Living's Commissions Were Direct Profits Requiring No Additional Evidence of a "Causal Link."

In the last part of their Motion, Defendants argue that PWA failed to prove a "causal link" between Urban Living's copyright infringement and its profits. Motion, pp. 17-20. In the Fifth Circuit, a defendant's revenues from sales of infringing products are direct profits requiring no such proof. *M.G.E. UPS Systems, Inc. v. G.E. Consumer & Industrial, Inc.,* 612 F.3d 760, 767 (5th Cir.

2010). Defendants agree that when an infringer's revenues come from sales of infringing works themselves, the copyright owner does not need to prove any additional causal link. Motion at p. 19. Defendants claim, however, that Urban Living's commissions from the sale of infringing townhomes were indirect profits, not direct profits, and that PWA was required to prove an extra causal link. Motion at p. 20.

The distinction between direct and indirect infringer profits was addressed in *Interplan Architects, Inc. v. C.L. Thomas, Inc.*, No. 4:08-cv-03181, 2010 U.S. Dist. LEXIS 107941 (S.D. Tex. Oct. 8, 2010). Judge Ellison explained that an infringer's profits "may be direct or indirect." *Id. at* \*10.  Revenues of some defendants from infringing design and drafting services were direct profits that required no additional evidence of a causal link. *Id.* at \*14-15. In contrast, the revenues of a store owner from the operations of the allegedly infringing stores, such as gasoline and grocery sales, were indirect profits that required additional evidence that these revenues were the result of the infringement of the plaintiff's protected building designs. *Id. at* \*15. Judge Ellison quoted *William A. Graham Co. v. Haughey*, 68 F. 3d 425, 442 (3d Cir. 2009), that indirect profits are "profits earned not by selling an infringing product, but rather earned from the infringer's operations that were enhanced by the infringement." *Id*. He then discussed cases

14

including *Mackie v. Rieser,* 296 F.3d 909 (9th Cir. 2002), *cert. denied*, 537 U.S. 1189 (2003); *Polar Bear Productions v. Timex Corp.*, 384 F.3d 700 (9th Cir. 2004), and *Andreas v. Volkswagen of America, Inc.*, 336 F.3d 789 (8th Cir. 2003), where the infringing material was used by the defendants in advertising, and the plaintiffs sought revenues from sales of noninfringing products generated by the advertising, not from sales of infringing copies themselves. These revenues were indirect profits, and  the copyright owners were required to show a causal link between the use of the infringing material and the sales of noninfringing products. *Id. at* *17-19.

Defendants claim that "[t]his is plainly an indirect profits case," arguing that Urban Living did not sell infringing copies of PWA's plans. Motion at p. 20. First, this is not true: Urban Living did receive revenues from Cameron Architects for making copies of PWA's townhouse designs. Angela Cameron testified to "a 50-50 referral agreement." Ex. 1, Tr., Vol. 3, p. 87. She gave a specific example: "The $11,450 was paid to Cameron Architects. However, at a later date, we wrote a check to Urban Living for 5,725. That's 50%." *Id.* at p. 92. Defendants' claim that Urban Living did not sell any infringing plans, Motion at p. 19, is directly contrary to the trial testimony.

But in addition, Urban Living's commissions from the sales of townhouses

were also directly from the sales of infringing copies of PWA's designs. The Court instructed the jury: "An architectural work may be copied by constructing or selling a building that is based on the protected design." Document No. 170, p. 10. During the charge conference, Defendants agreed that this was an accurate statement of the law:

> THE COURT: Okay. So, "An architectural work may be copied by constructing or selling a building that is based on the protected design."
>
> MR. BONHAM: Again, Your Honor, it is an accurate statement of the law.
>
> THE COURT: "An architectural work may be copied by constructing or selling…" Okay. All right. Now, why do you want that out?
>
> MR. STROTHER: I think it's clutter. I don't disagree that that is an accurate statement of the law.
>
> THE COURT: You don't disagree?
>
> MR. STROTHER: I don't. I just think it's clutter.
>
> THE COURT: All right. Then, it's going in.

Ex. 2, Tr., Vol. 4, p. 84.

The instruction was accurate. Houses constructed in violation of an architectural works copyright are infringing "copies" of the architectural work. *See Palmetto Builders & Designer v. Unireal, Inc.,*  342 F. Supp. 2d 468, 473

(D.S.C. 2004). Courts including the Fifth Circuit consistently hold that proceeds from the sale or rental of infringing buildings are infringer profits under 17 U.S.C. §504(b). *Powell v. Penhollow*, 260 Fed. App'x 683, 686 (5th Cir. 2007). *See also Thomas M. Gilbert Architects, P.C. v. Accent Builders and Developers, LLC*, 377 Fed. App'x 303, 310 (4th Cir. 2010) (revenues from sales of infringing townhouse units); *Bonner v. Dawson*, 404 F.3d 290, 294 (4th Cir. 2005) (rentals from infringing customer service center); *Looney Ricks Kiss Architects, Inc. v. Bryan*, No. 07-572, 2010 U.S. Dist. LEXIS 129200, *13-14 (W.D. La. Dec. 7, 2010) (revenues from infringing buildings); *Looney Ricks Kiss Architects, Inc. v. Bryan*, No. 07-572, 2010 U.S. Dist. LEXIS 129347, *12-14 (W.D. La. Dec. 7, 2010) (rentals from apartments in infringing apartment complexes); *George F. Tibsheraney, Inc. v. Midby Cos.*, No. 2:05-cv-0613-LDG (GWF), 2007 U.S. Dist. LEXIS 72897, *8-9 (D. Nev. Sept. 28, 2007) (revenues from infringing apartment complex as a whole); *Arthur Rutenberg Homes, Inc. v. Maloney*, 891 F. Supp. 1560 (M.D. Fla. 1995) (sales price of infringing house); *Richmond Homes Management, Inc. v. Raintree, Inc.*, 862 F. Supp. 1517, 1522-23, 1529-30 (W.D. Va. 1994), *aff'd in pertinent part,* 66 F.3d 316 (4th Cir. 1995) (full opinion at 1995 U.S. App. LEXIS 26452) (sales prices of infringing houses).

The jury answered Question No. 5 with a gross revenue figure for each of

17

the five of the projects at issue, because it found that Urban Living infringed or contributorily infringed PWA's copyrights with respect to each project. Document No. 170-1, p. 37. Four of these gross revenue answers included the commissions that were agreed and stipulated facts. *Id.* at pp. 9-10, Nos. 28-31. For each of these, Defendants agreed and stipulated that Urban Living received the commissions "in connection with the sales of townhouses" in each of the projects. *Id.*

In addition to these stipulated facts, the evidence at trial included the closing statements for every one of the townhouse sales on which Urban Living received a commission. Plaintiff's Exhibits 117-136. These exhibits were admitted into evidence without any objection.

Vinod Ramani testified about these closing statements. He explained that Defendants' Trial Exhibit 4 (attached to this Response as Exhibit 3) was a closing statement for the sale of a townhouse at 405 North Nagle Street, Unit A. Ex. 1, Trial Transcript Vol. 3, p. 177. With the closing statement, he was "able to tie into the commission checks that they pay us." *Id.* "So, you'll have the supporting information to see what dollar amount came to us." *Id.* The closing statement showed that the sales price was $324,500.00. Ex. 3, p. 1. Under the heading "Due From Seller At Closing," line 02 states "Closing Costs Paid at Closing" of $25,314.66. These are itemized on the second page, which shows a commission

18

paid to Urban Living under the heading "H. Other":

    07   Real Estate Commission-Listing      to www.urban.inc  $9,735.00

*Id.*, p. 2. Mr. Ramani next identified Defendants' Trial Exhibit 5 (attached to this Response as Exhibit 4) as a bank record of a wire transfer from the title company from the same closing, in the same amount of $9,735.00. Ex. 1, Trial Transcript Vol. 3, p. 177-78.

The undisputed evidence was that the commissions that Urban Living stipulated that it received in connection with sales of townhouses were paid to Urban Living at the closings of each sale, directly from the amount received by the seller at the closing. These were gross revenues from sales of infringing works, and were direct profits, not indirect profits. PWA had no obligation to offer any additional proof of a causal link to Defendants' infringement, because, as Defendants agree, all of these revenues are "reasonably related to the infringement." Motion at p. 19. Defendants' Motion on this final issue should be denied.

### III.  CONCLUSION AND PRAYER

For all of the foregoing reasons, Plaintiff Preston Wood & Associates, LLC, moves and prays that Defendants' Combined Renewed Motion for Judgment as a Matter of Law and Motion for New Trial be denied.

Respectfully submitted,

*/s/ Patrick Zummo*
Patrick Zummo
State Bar No. 22293450
Law Offices of Patrick Zummo
Two HoustonCenter
909 Fannin, Suite 3500
Houston, Texas77010
(713) 651-0590 (Telephone)
(713) 651-0597 (Facsimile)
pzummo@zoomlaw.com

Louis K. Bonham
State Bar No. 02597700
Osha Liang L.L.P.
909 Fannin Street, Suite 3500
Houston, Texas 77010
(713) 228-8600 (Telephone)
(713) 228-8778 (Facsimile)
bonham@oshaliang.com

ATTORNEYS FOR PLAINTIFF
PRESTON WOOD & ASSOCIATES, LLC

## Certificate of Service

I hereby certify that a true and correct copy of the foregoing has been served on counsel of record via electronic filing, on December 26, 2018.

/s/ Patrick Zummo
Patrick Zummo