# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | | |
|---|---|---|
| PRESTON WOOD & ASSOCIATES, LLC, | § § § § | |
| *Plaintiff*, | § § | CIVIL ACTION NO. 4:16-cv-01427 |
| v. | § § § | |
| RZ ENTERPRISES USA, INC. d/b/a OPPIDAN HOMES, OPPIDAN HOMES VII LTD., CAMERON ARCHITECTS, INC., and UL, INC. d/b/a URBAN LIVING, | § § § § § § § § § | |
| *Defendants*. | § | |

# DEFENDANTS' REPLY IN SUPPORT OF COMBINED RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW AND MOTION FOR NEW TRIAL

## TABLE OF CONTENTS

**Page**

Table of Contents ..................................................................................................... i

Table of Authorities ................................................................................................ ii

Argument ................................................................................................................. 1

    I.   Defendants' DMCA arguments are both preserved and meritorious. ............ 1

        A.  Defendants properly preserved their challenges to the DMCA findings. ............................................................................ 1

        B.  Preston Wood's defense of the jury's DMCA liability and damages findings fails on the merits. ....................................... 5

    II.  Preston Wood fails to show that the improper admission of the page-views evidence was harmless. ................................................................... 8

    III. Preston Wood fails to show that Defendants' profits from the infringing plans were indirect rather than direct. ......................................... 11

Conclusion ............................................................................................................ 14

## TABLE OF AUTHORITIES

Page(s)

**CASES**

*Allied Bank-W., N.A. v. Stein*,
   996 F.2d 111 (5th Cir. 1993) ................................................................................3

*Charles v. Sanchez*,
   No. EP-13-CV-00193-DCG, 2015 WL 11439074 (W.D. Tex. Oct.
   7, 2015) ................................................................................................................2

*Conway v. Chem. Leaman Tank Lines, Inc.*,
   525 F.2d 927 (5th Cir. 1976) ..........................................................................9, 10

*Downey v. Strain*,
   510 F.3d 534 (5th Cir. 2007) ................................................................................4

*Echeverria v. Chevron USA Inc.*,
   391 F.3d 607 (5th Cir. 2004) ................................................................................1

*Home Design Servs., Inc. v. A-Plus Homes, Inc.*,
   No. 5:03-CV-255-OC-10GRJ, 2004 WL 6395365 (M.D. Fla. Dec.
   20, 2004) ............................................................................................................13

*In re DePuy Orthopaedics, Inc., Pinnacle Hip Implant Prod. Liab.
   Litig.*,
   888 F.3d 753 (5th Cir. 2018) ..............................................................................11

*Jones v. Benefit Tr. Life Ins. Co.*,
   800 F.2d 1397 (5th Cir. 1986) ..............................................................................2

*Kotteakos v. United States*,
   328 U.S. 750 (1946) ................................................................................9, 10, 11

*Navigant Consulting, Inc. v. Wilkinson*,
   508 F.3d 277 (5th Cir. 2007) ......................................................................1, 2, 3

*Prather v. Prather*,
   650 F.2d 88 (5th Cir. Unit A 1981) (per curiam) ...............................................10

*Reilly v. Commerce*,
   No. 15CV05118PAEBCM, 2016 WL 6837895 (S.D.N.Y. Oct. 31,
   2016) ................................................................................................................7

*United States v. London*,
   No. 17-20420, 2018 WL 3933753 (5th Cir. Aug. 15, 2018) ..............................11

*United States ex rel. Wallace v. Flintco Inc.*,
   143 F.3d 955 (5th Cir. 1998) ..............................................................................2

*Unitherm Food Sys., Inc. v. Swift-Eckrich, Inc.*,
   546 U.S. 394 (2006) ...........................................................................................4

**STATUTES AND RULES**

17 U.S.C. § 504 ......................................................................................................11

17 U.S.C. § 1202 ................................................................................................. 6, 8

Federal Rule of Civil Procedure 50 ........................................................... 1, 2, 3, 4, 5

Federal Rule of Civil Procedure 59 ................................................................... 4, 5

Federal Rule of Evidence 403 .................................................................................9

## ARGUMENT

**I.  Defendants' DMCA arguments are both preserved and meritorious.**

**A.  Defendants properly preserved their challenges to the DMCA findings.**

Preston Wood's chief argument—that Defendants failed to preserve their challenges to the DMCA liability and damages findings—rests on a faulty premise. *See* Doc. 216, Pl.'s Resp., at 3-6. Preston Wood claims that Defendants "never moved for judgment as a matter of law on PWA's DMCA claims before the case was submitted to the jury." *Id.* at 4. But Fifth Circuit case law does not require the filing of a formal Rule 50(a) motion for judgment as a matter of law to preserve sufficiency issues for post-judgment review.

Instead, the Fifth Circuit has framed the standard for preserving sufficiency objections as whether a party has "alert[ed] the opposing party to the insufficiency before the case is submitted to the jury." *Navigant Consulting, Inc. v. Wilkinson*, 508 F.3d 277, 288 (5th Cir. 2007) (citation omitted); *see also Echeverria v. Chevron USA Inc.*, 391 F.3d 607, 611 (5th Cir. 2004) ("Rule 50 requires that the nonmoving party receive notice of the purported deficiencies in his case . . . ."). The Fifth Circuit has squarely held that raising sufficiency objections at the charge conference meets this standard, treating such objections as the equivalent of a Rule 50(a) motion and holding that they preserve the ability to file a Rule 50(b) motion after the verdict:

1

> [The defendant] objected to the court's jury instruction on damages for mental distress, arguing that the issue should not go to the jury because there was no evidence to support [the plaintiff's] claim. This objection may be fairly treated as a motion for directed verdict on the issue, thereby preserving [the defendant's] right to raise the issue in a motion for judgment n.o.v.

*Jones v. Benefit Tr. Life Ins. Co.*, 800 F.2d 1397, 1401 (5th Cir. 1986); *accord Navigant Consulting*, 508 F.3d at 289 ("We believe that objection to the jury instruction on breach of fiduciary duty damages was sufficient to alert the district court and Navigant to Wilkinson and Taulman's contention that there was insufficient evidence to find that Navigant's damages were proximately caused by a breach of fiduciary duty."); *Charles v. Sanchez*, No. EP-13-CV-00193-DCG, 2015 WL 11439074, at *4 (W.D. Tex. Oct. 7, 2015) ("object[ions] to the proposed jury instructions based on the sufficiency of the evidence" "alert[ed] the opposing party to the insufficiency [of the evidence] before the case [was] submitted to the jury" and thus preserved the party's "right to file a Rule 50(b) motion") (citation omitted).[1]

---

[1] Preston Wood's cases repeating the general rule that a Rule 50(a) motion is a prerequisite to a Rule 50(b) motion are not to the contrary. *See* Doc. 216, Pl.'s Resp., at 5. None of them involved a sufficiency objection to a jury charge or other similar act that "alert[ed] the opposing party to the insufficiency before the case is submitted to the jury." *Navigant Consulting*, 508 F.3d at 288 (citation omitted). Indeed, Preston Wood's two Fifth Circuit cases specifically noted the lack of an objection to the jury charge. *See United States ex rel. Wallace v. Flintco Inc.*, 143 F.3d 955, 961 (5th Cir. 1998) ("[Flintco] neither moved for judgment as a matter of law under Rule 50(a) at the close of Wallace's case or at the close of all the evidence. Moreover, Flintco did not challenge the sufficiency of the evidence

As Fifth Circuit precedent allows, Defendants alerted Preston Wood and the Court to its DMCA arguments at the charge conference when they objected on sufficiency grounds to the inclusion of the DMCA questions. *See* Exhibit 5, Excerpt from Trial Transcript Volume 4, at 133 (objecting to the DMCA materials in the jury charge on the basis that "they don't have evidence to support an instruction or question on this at all"); *id.* at 135 ("So, what the statute, first of all, requires is that someone intentionally and with knowledge publish or distribute . . . a work that has had its copyright management information altered or removed. So, we're going to be arguing that there's been no evidence of any alteration or removal."). Defendants thus preserved the sufficiency arguments that they now raise in the renewed motion for judgment as a matter of law and new trial. The Fifth Circuit's clear holdings foreclose Preston Wood's lead argument that the failure to file a formal Rule 50(a) motion waives the right to file a post-verdict Rule 50(b) motion and a motion for new trial challenging the sufficiency of the evidence. *See* Doc. 216, Pl.'s Resp., at 5-6.[2]

---

in connection with or as a basis for making objections to the court's jury charge."); *Allied Bank-W., N.A. v. Stein*, 996 F.2d 111, 114 (5th Cir. 1993) ("Merrill Lynch did not move for a directed verdict on the defense, ask for jury instructions on the defense, or ask for a special interrogatory on the defense.").

[2] Defendants' repeated emphasis on the DMCA sufficiency issues throughout the case—including by filing a pre-verdict bench brief on the number-of-violations point, Doc. 154, Mem. Of Law on Statutory Damages under the DMCA—further "alert[ed] the opposing party to the insufficiency before the case is submitted to the jury." *Navigant Consulting*, 508 F.3d at 288 (citation omitted); *see* Doc. 114,

3

Preston Wood's argument that Defendants are barred from filing a motion for new trial fails for an additional reason, as it rests on a gross misreading of *Unitherm Food Systems, Inc. v. Swift-Eckrich, Inc.*, 546 U.S. 394 (2006). There, the Supreme Court held that a litigant that makes *only* a pre-verdict Rule 50(a) motion *and no post-verdict motions*—under either Rule 50(b) or Rule 59—"may not challenge the sufficiency of the evidence *on appeal*." *Id.* at 404-05 (emphasis added); *see also id.* at 404 ("[A] party is not entitled to pursue a new trial on appeal unless that party makes an appropriate postverdict motion in the district court."); *Downey v. Strain*, 510 F.3d 534, 543 (5th Cir. 2007) ("In *Unitherm*, the Supreme Court held that when a party files a Rule 50(a) preverdict motion for judgment as a matter of law *but files neither a Rule 50(b) postverdict motion nor a Rule 59 motion for a new trial*, the party is precluded from seeking appellate review of the sufficiency of the evidence supporting the verdict." (emphasis added)). *Unitherm* specifically distinguished that situation from ones where "appellants moved for a new trial postverdict in the District Court." 546 U.S. at 403. *Unitherm* does not govern here because Defendants have filed a motion for new trial.

---

Defendants' Rule 12(b)(6) Motion to Dismiss and Motion for Summary Judgment, at 2-5; Exhibit 2, Excerpt from Pre-Trial Conference, at 62-63, 64, 66 (pre-trial conference); Exhibit 3, Excerpt from Trial Transcript Volume 2, at 31-32 (opening); Exhibit 4, Excerpt from Trial Transcript Volume 3 at 206-08 (argument to the court); Exhibit 6, Excerpt from Trial Transcript Volume 5, at 76-77 (closing).

In sum, Defendants are entitled to seek judgment as a matter of law under Rule 50(b) and a new trial under Rule 59 on the DMCA liability and damages findings because they raised their sufficiency arguments before the verdict.

**B.     Preston Wood's defense of the jury's DMCA liability and damages findings fails on the merits.**

1.     Putting most of its eggs in the waiver basket, Preston Wood mounts a barebones defense of the DMCA findings on the merits. Preston Wood first argues that the marketing plans Defendants distributed qualify as "copies" of Preston Wood's D5-214 architectural plans with their CMI "removed or altered." Doc. 216, Pl.'s Resp., at 7-9. In doing so, it ignores both the facts and the law.

Preston Wood asserts without citation that "Urban Living removed PWA's [CMI] when it made these copies." *Id.* at 8. But, as Defendants chronicled in detail in their Motion, the undisputed record shows that it was Cameron Architects, not Defendants, who removed Preston Wood's CMI when Cameron Architects created its architectural plans. Doc. 200, Def.'s Mot., at 7-8. Defendants then worked from those CMI-less architectural plans when they created their marketing plans and materials that were later distributed. In other words, by the time Defendants received the architectural plans, there was no CMI for them to remove or alter. *Id.* Preston Wood does not confront any of this. It simply ignores these inconvenient, but dispositive, facts.

5

Preston Wood takes this willful blindness to a new level on the legal points. Defendants marshaled the relevant "removed or altered" case law and treatises in their Motion. *Id.* at 3-6. Those authorities establish that the DMCA targets defendants who duplicate works and strip out the CMI; by contrast, no CMI is "removed or altered" for DMCA purposes when a defendant creates a new work by redrawing or borrowing from a copyrighted work. *Id.* Preston Wood does not even acknowledge those authorities, much less dispute them. Indeed, Preston Wood attempts to evade the "removed or altered" requirement entirely. It claims that the marketing plans and materials Defendants distributed qualify as "copies" of Preston Woods' D5-214 architectural plans and acts as if that settles the question. Doc. 216, Pl.'s Resp., at 6-8. It does not. Under the DMCA, the issue is not whether the distributed materials are "copies"—although Defendants' derivative, non-identical marketing materials plainly are not exact "copies"—but rather whether any "[CMI] has been removed or altered." 17 U.S.C. § 1202(b)(3). While creating copies may violate the Copyright Act, it does not violate the DMCA. Merely creating a new work, as Defendants did here, without removing CMI, falls outside the DMCA's scope—regardless of whether the new work qualifies as an infringing "copy." Doc. 200, Def.'s Mot., at 3-9.

2. Turning to the jury's finding of 11,516 DMCA violations, Preston Wood again ignores the governing law. *See* Doc. 216, Pl.'s Resp., at 9-10.

Defendants compiled the legal authorities establishing that the number of webpage viewers and recipients of a single blast email is legally irrelevant to determining the number of DMCA violations. Doc. 200, Def.'s Mot., at 9-14. Rather, each individual act *by the defendant* constitutes a DMCA violation. Preston Wood does not even acknowledge this consensus, much less contest it.

That rule of law is dispositive on this record, which contains no evidence that Defendants committed more than two individual acts—much less 11,516. Preston Wood thus improperly tries to shift the evidentiary burden to establish the number of DMCA violations to Defendants. It argues that "[t]here was no evidence that the 8,000 to 15,000 emails were not 'individual acts committed by a Defendant'" and that "[t]here is no evidence in the trial record of this single upload." Doc. 216, Pl.'s Resp., at 9-10. Both are non sequiturs: Preston Wood, not Defendants, bears the burden of producing sufficient evidence of the number of DMCA violations. Thus, Preston Wood was required to show that Defendants individually sent 8,000 to 15,000 emails rather than a single blast or that Defendants made numerous website uploads (rather than one). *See Reilly v. Commerce*, No. 15CV05118PAEBCM, 2016 WL 6837895, at *11 (S.D.N.Y. Oct. 31, 2016) (refusing to find more than one DMCA violation for a website upload because "the plaintiff—who bears the burden of proof as to damages—has not . . . established that Plot Commerce uploaded the Photograph more than once").

7

Plaintiffs cannot meet that burden—and reap windfall damages—merely by claiming that Defendants produced "no evidence" of the opposite proposition.

In any event, as detailed in the Motion, the record testimony and exhibits establish that there was only a single blast email and a single upload to Urban Living's website. *See* Doc. 200, Def.'s Mot, at 9-14 (collecting citations); *accord* Exhibit 1, Exhibit 105 (contents of the singular "Email Blast" and website upload); Exhibit 5, Excerpt from Trial Transcript Volume 4, at 16-18, 54 (Preston Wood's counsel asking about "this particular e-mail blast" and Ramani later making clear that "an e-mail blast is a one-time e-mail sent; essentially press a button and it goes to a bunch of people" and "not a few hundred e-mails sent out individually"). Accordingly, even if Defendants violated § 1202, Preston Wood has carried its burden only to show, at most, two violations.[3]

## II. Preston Wood fails to show that the improper admission of the page-views evidence was harmless.

In defending the admission of Exhibit 113, a document showing that 8,578 people had viewed the marketing materials on Urban Living's website, Preston Wood concedes that Defendants preserved the point and instead focuses almost

---

[3] Preston Wood asserts that the Court already "found that the jury's finding of the number of DMCA violations was supported by evidence of email distributions by Urban Living." Doc. 216, Pl.'s Resp., at 11. In the cited ruling, the Court simply stated that "[t]here was testimony by Ramani at trial that Urban Living sent out between 8,000 to 15,000 emails containing these materials." *Id.* at 5. But that undisputed fact does not resolve the relevant legal question: Whether Urban Living sent those emails in a single blast or in thousands of separate transmissions.

8

entirely on a harmless-error argument. Indeed, Preston Wood barely defends the admission of that evidence on the merits. It notes the general Rule 403 standard that "the probative value of the evidence [must be] substantially outweighed by the danger of unfair prejudice." Doc. 216, Pl.'s Resp., at 11. But Preston Wood ignores the body of law establishing that that number of page views is legally irrelevant in determining the number of DMCA violations, *see* Doc. 200, Def.'s Mot., at 9-14, meaning that Exhibit 113 had zero probative value.

Preston Wood bases its harmlessness argument on the assertion that the finding of 11,516 violations is "supported by the evidence of Urban Living's 8,000 to 15,000 emails." Doc. 216, Pl.'s Resp., at 10. Putting aside the reasons why the blast-email evidence cannot support that finding, *see* Doc. 200, Def.'s Mot., at 9-14; *supra* Section I.B. Preston Wood's larger problem is that its underlying premise is faulty. The mere presence of evidence sufficient to support a jury finding does not render harmless improperly admitted evidence. Instead, as the Supreme Court has explained, "if one cannot say, with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error, it is impossible to conclude that substantial rights were not affected." *Kotteakos v. United States*, 328 U.S. 750, 765 (1946); *see also Conway v. Chem. Leaman Tank Lines, Inc.*, 525

F.2d 927, 929-30 & n.3 (5th Cir. 1976) (holding that *Kotteakos* standard applies to civil cases).

*Prather v. Prather*, 650 F.2d 88 (5th Cir. Unit A 1981) (per curiam), is instructive. There, the "sole issue being litigated was the terms of the contract between appellee and appellant." *Id.* at 90. "Both parties testified as to their respective understanding of the terms of the agreement." *Id.* at 90-91. But the district court also improperly allowed hearsay testimony from witnesses who testified "consistent with appellee's testimony concerning the terms of the agreement." *Id.* at 91. The jury found for appellee. Even though appellee's own testimony presumably was sufficient to support the verdict, the Fifth Circuit held that the admission of the hearsay testimony was nevertheless "prejudicial and affected appellant's substantial rights." *Id.*; *see also id.* ("[T]he jury was likely influenced by the improperly admitted testimony in reaching its verdict.").

That analysis governs here. While it is conceivable that the jury based its finding of 11,516 violations on the evidence that there were "between 8,000 and 15,000" recipients of the blast email, Exhibit 5, Excerpt from Trial Transcript Volume 4, at 16-18, the more concrete and precise evidence of 8,578 page views likely played some role. Preston Wood's emphasis on that page-views evidence in closing makes that all the more likely. *See* Exhibit 6, Excerpt from Trial Transcript Volume 5, at 49-50 ("Now, how many times? That's the last question.

10

. . . [F]or the website, this is the Plaintiff's Exhibit 113. It has the page views and 8,500 for Nagle . . . ."). Indeed, Preston Wood does not contest that counsel's featuring of inadmissible evidence in closing strongly indicates prejudice. *See In re DePuy Orthopaedics, Inc., Pinnacle Hip Implant Prod. Liab. Litig.*, 888 F.3d 753, 785 (5th Cir. 2018) (emphasizing inadmissible evidence during closing arguments "tainted the result" and "provides grounds for a new trial"); *United States v. London*, No. 17-20420, 2018 WL 3933753, at *5 (5th Cir. Aug. 15, 2018) (the "harmless error argument is hampered by the fact that the inadmissible [evidence was] highlighted to the jury" and "referenced . . . in closing arguments"). Because it cannot be said "with fair assurance" that the admission of the page-views evidence did not affect the verdict, a new trial is required. *Kotteakos*, 328 U.S. at 765.

### III. Preston Wood fails to show that Defendants' profits from the infringing plans were indirect rather than direct.

On Preston Wood's § 504 copyright infringement claim, the parties are in agreement on many points. Preston Wood concedes that Defendants preserved their challenge on this point. Doc. 216, Pl.'s Resp. at 3-4. Preston Wood further agrees with Defendants that a plaintiff's evidentiary burden differs depending on whether the case involves the defendant's direct or indirect profits resulting from the infringement. *Id.* at 13-15. The parties also agree that Preston Wood met the burden applicable to direct-profits cases but did not meet the higher burden

11

applicable to indirect-profits cases. *Id.* at 19. The only disputed issue is whether this case involves direct or indirect profits. If the former, then the claim survives. If the latter, then it must fail for lack of sufficient evidence.

In arguing that this is a direct-profits case, Preston Wood first asserts that "Defendants' claim that Urban Living did not sell any infringing plans is directly contrary to the trial testimony." *Id.* at 15 (citation omitted). But the trial testimony it cites does not support its assertion. Preston Wood relies on testimony that *Cameron Architects*, not Urban Living, sold infringing plans. *Id.* That Cameron Architects later paid Urban Living part of the sales price pursuant to a general "50-50 referral agreement" does not change the fact that Urban Living was not the seller. *Id.* The key point is that any funds Urban Living received from the sale came *indirectly* through Cameron Architects and the referral agreement. And, in any event, the jury's finding of $68,045 in gross revenue cannot be supported by the $5,725 Urban Living received from that sale of the plans alone. *See* Doc. 200-2, Jury Charge and Questions, at 37; Doc. 216, Pl.'s Resp., at 15.

Preston Wood also argues that this is a direct-profits case because Defendants received commissions from the sales of the townhomes built from the infringing plans. Doc. 216, Pl.'s Resp., at 15-19. It relies heavily on the uncontested points that Defendants received those commissions and that buildings may constitute infringements. *Id.* at 16-19. Those facts, however, do not make

12

this a direct-profits case for at least two reasons. First, Preston Wood completely ignores Defendants' authority that funds received from the sale of a building built with infringing plans are indirect profits. *See* Doc. 200, Def.'s Mot., at 20 (citing *Home Design Services, Inc. v. A-Plus Homes, Inc.*, No. 5:03-CV-255-OC-10GRJ, 2004 WL 6395365, at *4 (M.D. Fla. Dec. 20, 2004) (holding that the plaintiff was "required to prove a causal connection between the Defendants' infringing activities and the . . . profits earned by the Defendants from building and selling infringing homes" that were based on infringing plans). Second, even if that were not the law, the funds from this particular sale would still not be direct profits. Direct profits occur when the defendant receives funds *directly from the buyer* of the infringing work. Here, in contrast, those commissions came not from the buyer, but from the seller.[4] The seller's middleman role renders any profits from the commissions indirect rather than direct.[5]

---

[4] Preston Wood has conceded this point. *See* Doc. 216, Pl.'s Resp., at 19 ("The undisputed evidence was that the commissions that Urban Living stipulated that it received in connection with the sale of the townhomes were paid to Urban Living at the closings of each sale, directly from the amount received by the seller at the closing.").

[5] None of Preston Wood's cited cases hold otherwise. At best, they stand only for the uncontested proposition that funds the seller receives from the buyer of an infringing work constitute direct profits. *See* Doc. 216, Pl.'s Resp., at 16-17. None hold that funds that go through one or more middlemen still somehow qualify as *direct* profits.

13

## CONCLUSION

For the reasons stated above and those in the Motion, Defendants pray that the Court vacate the Final Judgment and Permanent Injunction, grant them judgment as a matter of law on all claims, and enter a take-nothing judgment against Preston Wood. Alternatively, Defendants request that the Court grant them a new trial. Defendants also request any further relief to which they are entitled.

Respectfully Submitted,

*/s/ Justin Strother*
Justin Strother
Texas Bar No. 24008100
STROTHER LAW FIRM
13000 Weslayan St., Suite 348
Houston, Texas  77027
(713) 545-4937
jstrother@strotherlawfirm.com

Aaron M. Streett
Texas Bar No. 24037561
J. Mark Little
Texas Bar No. 24078869
BAKER BOTTS L.L.P.
910 Louisiana Street
Houston, Texas  77002
(713) 229-1234
(713) 229-7855 (Facsimile)
aaron.streett@bakerbotts.com
mark.little@bakerbotts.com

ATTORNEYS FOR DEFENDANTS UL, INC. D/B/A URBAN LIVING AND VINOD RAMANI

15

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the above and foregoing has been served upon all counsel of record by electronic filing on this 2nd day of January, 2019.

*/s/ Aaron M. Streett*
Aaron M. Streett